IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) | CRIMINAL NO. 22-00048 JMS-WRP |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING DEFENDANT |
| vs. | ) | DENNIS MITSUNAGA'S MOTION |
| | ) | TO STRIKE SURPLUSAGE FROM |
| KEITH MITSUYOSHI | ) | THE FIRST SUPERSEDING |
| KANESHIRO, ET AL., | ) | INDICTMENT AND JOINDERS |
| | ) | THERETO |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT DENNIS MITSUNAGA'S
MOTION TO STRIKE SURPLUSAGE FROM THE
FIRST SUPERSEDING INDICTMENT AND JOINDERS THERETO

Before the Court is Defendant Dennis Kuniyuki Mitsunaga's Motion

to Strike Surplusage from the First Superseding Indictment (Motion). See ECF

No. 116. Defendants Terri Ann Otani, Sheri Jean Tanaka, Aaron Shunichi Fujii

and Keith Mitsuyoshi Kaneshiro filed Joinders to the Motion. See ECF Nos. 141,

151, 157, 158. The Government filed an opposition to the Motion, see ECF No.

138, and Defendant Mitsunaga filed a reply memorandum. See ECF No. 160.

A hearing was held on February 21, 2023. See ECF No. 164. After

careful consideration of the submissions of the parties, the arguments of counsel,

and relevant legal authority, the Court DENIES the Motion and Joinders thereto.

BACKGROUND

The First Superseding Indictment (FSI) alleges Defendants Kaneshiro, Mitsunaga, Otani, Fujii, Tanaka and Chad Michael McDonald conspired to commit honest services fraud and federal program bribery under 18 U.S.C. § 371 and conspired against rights in violation of 18 U.S.C. § 241.  See FSI, ECF No. 70.  The FSI alleges the efforts of Defendant Mitsunaga and others at Mitsunaga and Associates, Inc. (MAI) to retaliate against and intimidate former MAI employee, L.J.M. by, among other things, bribing Defendant Kaneshiro, then-prosecuting attorney for the Department of the Prosecuting Attorney (DPA), to prosecute L.J.M. on fraudulent theft offenses.

According to the FSI, the alleged victim in this case identified as L.J.M. was hired as a project architect at MAI.  See id. at 3.  In November 2011, after voicing her disagreement with claims Defendant Mitsunaga made about her, MAI terminated L.J.M.  See id.  The FSI alleges that MAI, through Defendants Tanaka, Otani, and Fujii, contested L.J.M.'s request for unemployment benefits, but the First Circuit Court for the State of Hawaii (First Circuit Court) ultimately determined L.J.M. was entitled to such benefits.  See id.

On or about July 27, 2012, Defendant Fujii filed a police report with the Honolulu Police Department (HPD) alleging that L.J.M. and a local Honolulu attorney identified as S.M., who had filed a lawsuit against MAI in 2012,

committed theft against MAI.  See id. at 4.

On or about August 20, 2012, L.J.M. filed a lawsuit against MAI in the District Court for the District of Hawaii, alleging claims under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. See id.

On or about October 4, 2012, Defendants Mitsunaga and Tanaka met with Defendant Kaneshiro to persuade him to investigate and prosecute L.J.M. for theft against MAI.  See id.  Between October 2012 and October 2016, Defendants Kaneshiro, Mitsunaga, Otani, Fujii, McDonald, and Tanaka contributed approximately $45,000 to Defendant Kaneshiro's re-election campaigns.  See id. at 5.  In or about December 2014, L.J.M. was arrested and arraigned on a felony information.  See id. at 6.

On or about September 15, 2017, Judge Karen T. Nakasone of the First Circuit Court issued an order dismissing the felony information against L.J.M with prejudice, finding a lack of probable cause for the charges against L.J.M. and significant irregularities in the DPA's investigation and prosecution of L.J.M, including the "one-sided nature of the investigation" and that the DPA "was little more than acting as the recipient of, and a conduit for, MAI's submissions."  See id. at 6.

The FSI charges all six Defendants with two counts of conspiracy.

Count I charges Defendants with conspiracy to commit an offense against the

United States or to defraud the United States in violation of 18 U.S.C. § 371.

Count II alleges that Defendants violated 18 U.S.C. § 241 by conspiring to:

> injure, oppress, threaten, or intimidate L.J.M. . . . in the
> free exercise or enjoyment of any right or privilege
> secured to her by the Constitution and laws of the United
> States, and because of her having so exercised the same,
> namely, [1] the right under the Fourth and Fourteenth
> Amendment to be free from unreasonable seizures by one
> acting under color of law, and [2] the right to file a lawsuit
> in federal court alleging claims under Title VII of the Civil
> Rights Act and the Age Discrimination in Employment
> Act, in violation of Title 18, United States Code, Section
> 241.

In the present Motion, Defendant Mitsunaga moves to strike various

terms and phrases from the FSI, asserting they are irrelevant, inflammatory, and

prejudicial.  Defendants Kaneshiro, Otani, Fujii, and Tanaka join in the Motion.

## DISCUSSION

Federal Rule of Criminal Procedure 7(c) requires an indictment to be

a "plain, concise, and definite written statement of the essential facts constituting

the offense charged . . . ."  Fed. R. Crim. P. 7(c).  Under Rule 7(d), a defendant

may move to strike surplusage from an indictment.  Fed. R. Crim. P. 7(d).  "The

purpose of a motion to strike under [Rule] 7(d) is to protect a defendant against

'prejudicial or inflammatory allegations that are neither relevant nor material to the

charges.'" United States v. Terrigno, 838 F.2d 371, 373 (9th Cir. 1988) (citing United States v. Ramirez, 710 F.2d 535, 544-45 (9th Cir.1983)).  It is within the court's discretion whether to strike surplusage from an indictment.  United States v. Laurienti, 611 F.3d 530, 546-47 (9th Cir. 2010).

"A motion to strike surplusage should be granted only if it is clear that the allegations are not relevant to the charges(s) and are inflammatory and prejudicial."  United States v. Gerlay, No. 3:09-CR-085-JWS-JDR, 2009 WL 3872143, at *3 (D. Alaska Nov. 17, 2009); see United States v. Hedgepeth, 434 F.3d 609, 612 (3d Cir. 2006) ("Logic demands the conjunctive standard: information that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand and information that is irrelevant need not be struck if there is no evidence that the defendant was prejudiced by its inclusion." (citations omitted)); United States v. Larkin, No. 2:12-CR-319-JCM-GWF, 2017 WL 379415, at *2 (D. Nev. Jan. 24, 2017) ("the test for striking surplusage requires that the material be both irrelevant and prejudicial").  "Where the allegations are relevant, however, they are not surplusage, even if otherwise prejudicial."  United States v. Gonzalez, No. 216CR00265GMNCWH, 2018 WL 6834315, at *3 (D. Nev. Dec. 28, 2018) (citations omitted).  Inflammatory language is language that "generates strong feelings of anger, indignation, or passion likely to outweigh its probative value."  Larkin, 2017 WL 379415, at *2.

"An indictment is inculpatory by nature and a defendant must demonstrate how an individual statement is improperly inflammatory or prejudicial."  Gonzalez, 2018 WL 6834315, at *3 (citing United States v. Whittemore, No. 3:12–CR–0058–LRH–WGC, 2013 WL 1181915, at *1, *5 (D. Nev. Mar. 19, 2013)).  Allegations that "may be somewhat prejudicial" should not be stricken if they are relevant and material to the charged offenses.  Terrigno, 838 F.2d at 373.  Further, "if language in the indictment constitutes information that the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be as long as the information is legally relevant."  Gerlay, 2009 WL 3872143 at *1.

Where a conspiracy is charged, allegations in an indictment that relate to "the formation of the conspiracy, acts done pursuant to the conspiracy, and the effects of the conspiracy" need not be stricken as surplusage.  United States v. R. P. Oldham Co., 152 F. Supp. 818, 824 (N.D. Cal. 1957); see also Gonzalez, 2018 WL 6834315, at *3 ("The challenged provisions allege facts which, if proven at trial, will establish the purpose, means, and methods of the Vagos enterprise.").  Additionally, "[l]anguage in an indictment need not be essential to the charges, but can be generally relevant to the overall scheme charged."  United States v. Johnson, 262 F.R.D. 410, 414 (D. Del. 2009).

### A. Defendant Mitsunaga May Challenge the FSI Even Though It Will Not Be Read to the Jury

As an initial matter, the Court informed the parties at the hearing and notes here that the FSI will not be read to the jury in this case. Defendant Mitsunaga argues that, even if the FSI is not shared with the jury, the language in the FSI may be prejudicial because the FSI is a publicly filed document and this case has been highly publicized. See ECF. Nos. 116-1 at 9-10; 160 at 6. The Government asserts that the FSI is not prejudicial because it will not be shared with the jury and, thus, "obviates Mitsunaga's requests to strike." ECF No. 138 at 23.

A motion to strike surplusage is the proper vehicle to challenge and "protect a defendant against 'prejudicial or inflammatory allegations that are neither relevant nor material to the charges.'" Terrigno, 838 F.2d at 373. Because the Government drafts the indictment, it must operate within the bounds of Rule 7(c) by ensuring the indictment is a "plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Civ. P. 7(c). Thus, even if an indictment is not read to the jury, a criminal defendant is permitted to challenge an indictment that may violate Rule 7(c)'s requirements by moving to strike surplusage from the indictment. See Fed. R. Crim. P. 7(d). That is especially the case here, where this case has been highly publicized and the FSI is a speaking indictment in which the government alleges conspiracies.

7

Consequently, although this Court's decision not to share the FSI with the jury may soften any prejudicial impact of language in the FSI, the Court concludes that Defendant Mitsunaga may nevertheless challenge the FSI under Rule 7(d).

Accordingly, the Court addresses below each specific term or phrase challenged by Defendant Mitsunaga as inflammatory, prejudicial, and irrelevant.

### B. Specific Language Challenged by Defendant Mitsunaga

#### 1. Use of the Term "Significant" in Introductory Allegation Paragraphs 3 and 17

Defendant Mitsunaga challenges the use of the word "significant" in Introductory Allegation, paragraphs 3 and 17.  See ECF No. 116-1 at 7-8.

> Paragraph 3 states that "MAI derived its <u>significant</u> revenue from a combination of public and private jobs throughout the state of Hawaii."

> Paragraph 17 states that "Judge Karen T. Nakasone of the First Circuit Court for the State of Hawaii entered a written order dismissing the felony information against L.J.M. with prejudice, finding a lack of probable cause for the charges against L.J.M and <u>significant</u> irregularities in the DPA's investigation and prosecution of L.J.M."

<u>See</u> FSI, ECF No. 70 at 2 (Introductory Allegation ¶ 3), at 6 (Introductory Allegation ¶ 17) (emphases added).

Defendant Mitsunaga argues that the use of the word "significant" in paragraph 3 is "inflammatory and prejudicial in that it could lead a jury to harbor prejudice against MAI for being wealthy and/or successful and lead to a prejudicial

spillover effect onto Mr. Mitsunaga." See ECF No. 116-1 at 7. Defendant

Mitsunaga contends the word "significant" as used in paragraph 17 is

inflammatory, irrelevant, and improperly expresses an opinion. See id. at 8.

      The Government asserts that "significant" as used in paragraph 3 is

relevant to the conspiracy charged because it establishes that MAI's revenue is

notably not related to the investigation or prosecution of criminal offenses and

therefore raises the question of why MAI started contributing substantial funds to

Kaneshiro shortly after L.J.M. filed a federal case against it. See ECF No. 138

at 12. With respect to paragraph 17, the Government argues that the term

"significant" properly characterizes Judge Nakasone's order concerning

irregularities in the investigation and prosecution of L.J.M. See id. at 18.

      Paragraph 3 introduces MAI as a business and explains that it is an

engineering and architectural firm. See FSI, ECF No. 70 at 2. That MAI derives a

significant portion of its revenue from public and private engineering and

architectural jobs establishes that MAI is not in the business of financially

supporting the investigation or prosecution of criminal cases. This allegation is

relevant to the Government's conspiracy charges, which allege that payments to

Kaneshiro were not part of MAI's normal course of business but rather, were

bribes made in furtherance of Defendants' conspiracy to wrongfully prosecute

L.J.M.

Paragraph 17 accurately describes Judge Nakasone's finding of significant irregularities in her order dismissing the felony information against L.J.M.  See FSI, ECF No. 70 at 6 (Introductory Allegation ¶ 17).  For instance, Judge Nakasone's order stated that the case was "highly unusual" and included a "flawed process and . . . flawed proof" that "compromised the integrity of the charges against [L.J.M.]"  See ECF No. 138-1 at 4-5.  Judge Nakasone also noted that "[n]o law enforcement organization or entity was involved in the investigation other than a single investigator employed by the [DPA], who did minimal investigation."  See id. at 5.  Additionally, she observed that "[n]either the Oahu Grand Jury, nor a district judge presiding in a preliminary hearing for probable cause, were used in this case."  See id. at 6.  Judge Nakasone also described the investigation as "one-sided" and noted that the "[DPA]'s participation was little more than acting as the recipient of, and conduit for, MAI's submissions."  See id. at 4.

In both paragraphs 3 and 17, the Government's use of the word "significant" is relevant to the means, methods and acts used by Defendants in furtherance of the conspiracy against L.J.M.  See R. P. Oldham Co., 152 F. Supp. 818 at 824 (acts done pursuant to a conspiracy and the effects of the conspiracy need not be stricken as surplusage); see also Gonzalez, 2018 WL 6834315, at *3 (declining to strike language "which, if proven at trial, will establish the purpose,

means, and methods of the . . . enterprise").  Further, the word "significant" does not generate strong feelings of anger, indignation, or passion.  See Larkin, 2017 WL 379415, at *2.  Given the relevance of the term and that it is neither inflammatory nor prejudicial, the Court declines to strike the word "significant" from Introductory Allegation paragraphs 3 and 17.

### 2. Allegations Relating to Defendant Fujii's Police Report Based on Theft against MAI

Defendant Mitsunaga next challenges the underscored language below from Introductory Allegation ¶ 9, which relates to Defendant Fujii's police report filed with HPD:

> 9. On or about July 17, 2012, FUJII filed a report with the Honolulu Police Department ("HPD") alleging that L.J.M. and a local Honolulu attorney, S.M.–who had filed a lawsuit against MAI earlier in 2012–had committed theft against MAI.  Despite multiple attempts, the assigned HPD Officer was largely unsuccessful in obtaining follow-up information from FUJII and others at MAI about the alleged theft.

See FSI, ECF No. 70 at 4 (Introductory Allegation ¶ 9) (emphases added).

Defendant Mitsunaga asserts that the language regarding S.M. is irrelevant and that HPD's inability to follow-up with Defendant Fujii about the police report is inflammatory because "it suggests that MAI failed to perform some required function."  See ECF No. 116-1 at 6-8.  The Government argues that this

language is relevant to the charged crimes because Defendant Fujii's police report and his subsequent failure to respond to HPD laid the groundwork to wrongfully prosecute L.J.M.  See ECF No. 138 at 15-17.

The police report was essential to prosecute L.J.M. for theft, and filing the police report was an act done in furtherance of the conspiracy to wrongly prosecute L.J.M.  The police report filed by Defendant Fujii concerned not only L.J.M. but also an attorney, S.M., who had filed a lawsuit against MAI in 2012. See FSI, ECF No. 70 at 4.  The police report alleged that both L.J.M. and S.M. intentionally used MAI's office, equipment, and resources for S.M.'s personal benefit at the expense of MAI.  See ECF No. 138 at 14-15.  That S.M. had also sued MAI is relevant and supports the purpose of the conspiracy – i.e., wrongful prosecution as retaliation for suing MAI.  See R. P. Oldham Co., 152 F. Supp. 818 at 824 (acts done pursuant to a conspiracy and the effects of the conspiracy need not be stricken as surplusage); see also Gonzalez, 2018 WL 6834315, at *3 (declining to strike language "which, if proven at trial, will establish the purpose, means, and methods of the . . . enterprise").  Also, the Government intends to prove that Defendant Fujii's non-responsiveness to the police investigation was consistent with Defendants' knowledge that the claims against L.J.M. would not withstand scrutiny by legitimate law enforcement.  See ECF No. 138 at 16.  Given

12

the relevance to the crimes charged, the Court declines to strike any language from Introductory Allegation ¶ 9 of the FSI.

### 3. Allegation Relating to Defendant Otani's Tax Fraud Complaint

Defendant Mitsunaga moves to strike the entirety of paragraph 22(28) of Count 1 Overt Acts of the FSI, which states:  "On or about August 7, 2014, OTANI emailed a complaint to the Tax Division of the Hawaii Attorney General's Office, alleging that L.J.M. had committed tax fraud."  See FSI, ECF No. 70 at 15 (Count 1 Overt Act ¶ 22(28)).

Defendant Mitsunaga argues that the language above "is not relevant to the crimes charged and is inflammatory and prejudicial because it alleges uncharged crimes and/or other bad acts."  ECF No. 116-1 at 5.  The Government asserts that this language is relevant to the overall scheme because filing the tax fraud complaint was done in furtherance of the conspiracy against L.J.M.  See ECF No. 138 at 21.

The FSI alleges that Defendants conspired to pursue a wrongful prosecution of L.J.M.  See FSI, ECF No. 70 at 3.  In furtherance of that goal, the Government alleges that Defendants not only sought prosecution by the DPA but also brought a complaint against L.J.M. for tax fraud for the same underlying conduct as the DPA felony information – i.e., theft.  See ECF No. 138 at 21-22. This allegation in Overt Act ¶ 22(28) is relevant to the efforts of Defendants in

13

pursuing prosecution of L.J.M. for theft and establishes the means, methods and acts done in furtherance of the conspiracy.  R. P. Oldham Co., 152 F. Supp. at 824; see also Gonzalez, 2018 WL 6834315, at *3 ("The challenged provisions allege facts which, if proven at trial, will establish the purpose, means, and methods of the Vagos enterprise.").  Accordingly, the Court also declines to strike this language from the FSI because it is relevant.

### 4. Allegations Relating to the Expiration of the Appeal Period for Judge Nakasone's Order

Defendant Mitsunaga also moves to strike references in the FSI alleging that the time to appeal Judge Nakasone's order had lapsed and the DPA did not appeal.  To that end, Defendant Mitsunaga seeks to strike the underscored language below from Introductory Allegation ¶ 18, Count 1 Manner and Means of the Conspiracy ¶ 3, and Count 1 Overt Acts ¶ 22 (52):

> 18. On or about October 15, 2017, following internal discussions at the DPA pertaining to appealing Judge Nakasone's order of dismissal, the time period for filing a notice of appeal of Judge Nakasone's order lapsed, and further prosecution of L.J.M. was not attempted by the DPA.
> . . . .
>
> 3. . . .  The prosecution of L.J.M. continued until her case was dismissed with prejudice in a written order by Judge Karen T. Nakasone on September 15, 2017, and the time to appeal lapsed on or about October 15, 2017.
> . . . .

52. <u>On or about October 15, 2017, the time period for
filing an appeal of the dismissal order lapsed.</u>

<u>See</u> FSI, ECF No. 70 at 6 (Introductory Allegation ¶ 18), at 9 (Count 1 Manner and

Means of the Conspiracy ¶ 3), at 20 (Count 1 Overt Acts ¶ 22(52)) (emphases

added).

Defendant Mitsunaga argues that language regarding the expiration of

the appeal period and the DPA's decision not to appeal is irrelevant and prejudicial

because it concerns "efforts *not taken.*" <u>See</u> ECF No. 116-1 at 8-9 (emphasis in

original). The Government contends that the DPA's decision not to appeal Judge

Nakasone's order is probative of whether L.J.M.'s prosecution was a sham. <u>See</u>

ECF No. 138 at 19-20.

The conspiracy detailed in the FSI concerns an alleged sham

prosecution of L.J.M., resulting from bribery and efforts to retaliate against L.J.M.

According to the FSI, Kaneshiro accepted campaign contributions in exchange for

official action to open an investigation and prosecute L.J.M. <u>See</u> FSI, ECF No. 70

at 9. The case was ultimately dismissed by Judge Nakasone's order, which noted

that the case was "highly unusual" and included a "flawed process and . . . flawed

proof" that "compromised the integrity of the charges against [L.J.M.]" <u>See</u> ECF

No. 138-1 at 4-5. Judge Nakasone also pointed out that the "one-sided nature of

the investigation was especially striking" and that the "[DPA]'s participation was

little more than acting as the recipient of, and conduit for, MAI's submissions."
See id. at 4.

According to the Government, the decision not to appeal is relevant
because it is probative of whether L.J.M.'s prosecution was a sham and part of the
overall conspiracy.  See ECF No. 138 at 19-20.  Given the flaws noted in Judge
Nakasone's order dismissing the case, the DPA could have appealed and defended
the prosecution if the charges were legitimate.  That the DPA decided not to appeal
is relevant to the Government's charge that the prosecution was a sham and was a
means and method of the overall conspiracy against L.J.M.  Further, the decision
not to appeal was an affirmative act, contrary to Defendant Mitsunaga's argument
that it was mere inaction.  See ECF No. 116-1 at 8-9.  Given its relevance to the
conspiracy, the Court declines to strike the challenged language from Introductory
Allegation ¶ 18, Count 1 Manner and Means of the Conspiracy ¶ 3, and Count 1
Overt Acts ¶ 22(52).  See Gonzalez, 2018 WL 6834315, at *3 (declining to strike
language "which, if proven at trial, will establish the purpose, means, and methods
of the . . . enterprise").

In sum, Defendant Mitsunaga fails to meet his burden to establish that
the challenged words and phrases in the FSI are "prejudicial or inflammatory
allegations that are neither relevant nor material to the charges."  See Terrigno, 838

16

F.2d at 37.  The Court therefore exercises its discretion in declining to strike any language from the FSI.

CONCLUSION

For the foregoing reasons, the Court DENIES the following motion and joinders thereto:  Defendant Dennis Kuniyuki Mitsunaga's Motion to Strike Surplusage from the First Superseding Indictment, ECF No. 116, Defendant Terri Ann Otani's Joinder, ECF No. 141, Defendant Sheri Jean Tanaka's Joinder, ECF No. 151, Defendant Aaron Shunichi Fujii's Joinder, ECF No. 157, and Defendant Keith Mitsuyoshi Kaneshiro's Joinder, ECF No. 158.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 3, 2023.



Wes Reber Porter
United States Magistrate Judge

USA v. Kaneshiro, et al.; Criminal No. 22-00048 JMS-WRP; Order Denying Defendant Dennis Mitsunaga's Motion to Strike Surplusage from the First Superseding Indictment and Joinders Thereto.