```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF HAWAII

 3
       UNITED STATES OF AMERICA,     ) CRIMINAL NO. 22-00048JMS-WRP
 4                                    )
                  Plaintiff,          ) Honolulu, Hawaii
 5            vs.                     ) April 27, 2023
                                      )
 6                                    )
       (1) KEITH MITSUYOSHI KANESHIRO,) DEFENDANT SHERI J. TANAKA'S
 7     (2) DENNIS KUNIYUKI MITSUNAGA,)  MOTION TO DISMISS COUNT 2
       (3) TERRI ANN OTANI,           )  OF THE FIRST SUPERSEDING
 8     (4) AARON SHUNICHI FUJII,      )  INDICTMENT
       (5) CHAD MICHAEL MCDONALD,     ) DEFENDANT NUMBERS ONE
 9     (6) SHERI JEAN TANAKA,         )  THROUGH FIVE NOTICE OF
                                      )  JOINDER
10                Defendants.         )
       _____)
11                      TRANSCRIPT OF PROCEEDINGS
12            BEFORE THE HONORABLE J. MICHAEL SEABRIGHT
                   UNITED STATES DISTRICT JUDGE
13
       APPEARANCES:
14
         For the Government:       MICHAEL G. WHEAT, ESQ.
15                                 ANDREW CHIANG, ESQ.
                                   Office of the United States Attorney
16                                 Southern District of California
                                   800 Front Street, Room 6293
17                                 San Diego, California  92101

18
         For Defendant (1)        BIRNEY B. BERVAR, ESQ.
19       Keith Mitsuyoshi          Bervar & Jones
         Kaneshiro:               1100 Alakea Street, 20th Floor
20                                 Honolulu, Hawaii  96813

21
         For Defendant (2)        NINA MARINO, ESQ.
22       Dennis Kuniyuki           Kaplan Marino
         Mitsunaga:               1546 N. Fairfax Avenue
23                                 Los Angeles, California  90046

24                                 JOHN M. SCHUM, ESQ.
                                   Law Office of John Schum
25                                 P.O. Box 1241
                                   Honolulu, Hawaii  96807
```

```
 1    APPEARANCES CONT'D:

 2    For Defendant (3)        DORIS LUM, ESQ.
      Terri Ann Otani:         Law Office of Doris Lum, LLLC
 3                             1001 Bishop Street, Suite 710
                               Honolulu, Hawaii  96813
 4

 5    For Defendant (4)        ANDREW M. KENNEDY, ESQ.
      Aaron Shunichi Fujii:    Schlueter, Kwiat & Kennedy LLLP
 6                             75-167 Kalani Street, Suite 201
                               Kailua-Kona, Hawaii  96740
 7

 8    For Defendant (5)        THOMAS M. OTAKE, ESQ.
      Chad Michael McDonald:   Thomas M. Otake AAL, ALC
 9                             851 Fort Street Mall, Suite 400
                               Honolulu, Hawaii  96813
10

11    For Defendant (6)        MARK MERMELSTEIN, ESQ.
      Sheri Jean Tanaka:       ANDREW S. COWAN, ESQ. (By phone)
12                             Holmes, Taylor, Athey, Cowan,
                               Mermelstein & Jones LLP
13                             811 Wilshire Blvd., Ste. 1460
                               Los Angeles, California  90017
14
                               CRYSTAL GAIL K. GLENDON, ESQ.
15                             Law Office of Crystal Glendon, LLLC
                               1130 N. Nimitz Hwy., Ste. B-299
16                             Honolulu, Hawaii  96817

17

18

19

20    Official Court          Cynthia Fazio, RMR, CRR, CRC
      Reporter:                United States District Court
21                             300 Ala Moana Blvd., C-270
                               Honolulu, Hawaii  96850
22

23

24
      Proceedings recorded by machine shorthand, transcript produced
25    with computer-aided transcription (CAT).
```

1    THURSDAY, APRIL 27, 2023                    10:01 A.M.

2              THE COURTROOM MANAGER:  Criminal Number

3    22-00048JMS-WRP, United States of America versus Defendant --

4    versus Keith Mitsuyoshi Kaneshiro, et al.

5              This case has been called for a hearing on Defendant

6    Sheri J. Tanaka's Motion to Dismiss Count 2 of the First

7    Superseding Indictment and defendant numbers one through five

8    notice of joinder.

9              Counsel, please make your appearance for the record.

10             MR. CHIANG:  Good morning, Your Honor.  Andrew Chiang

11   and Michael Wheat appearing for the United States.

12             THE COURT:  Yes.

13             MR. BERVAR:  Good morning, Your Honor.  Birney Bervar

14   for Keith Kaneshiro, who's present.

15             THE COURT:  Yes, thank you.

16             MS. MARINO:  Good morning, Your Honor.  Nina Marino

17   for Mr. Mitsunaga.  Also in the courtroom is John Schum.

18             THE COURT:  Yes, I see him.  Thank you.

19             MS. LUM:  And good morning, Your Honor.  Doris Lum on

20   behalf of Terri Ann Otani.  With the Court's permission, we

21   request she appear via phone.

22             THE COURT:  Right.  Ms. Otani, can you hear us okay?

23             DEFENDANT OTANI:  Yes, thank you.

24             MR. KENNEDY:  Andrew Kennedy on behalf of Aaron Fujii.

25   Good morning, Your Honor.

1        THE COURT:  Yes, good morning.

2        MR. OTAKE:  Good morning, Your Honor.  Thomas Otake on

3  behalf of Mr. Chad McDonald, who's present.

4        THE COURT:  All right.  Thank you.

5        MR. MERMELSTEIN:  Good morning, Your Honor.  Mark

6  Mermelstein present with Ms. Tanaka who is in court.

7  Mr. Cowan, my colleague, is -- with the Court's permission

8  would appear by telephone, and Ms. Glendon is in the gallery.

9        THE COURT:  All right.  Can you hear us, Mr. Cowan?

10        MR. COWAN:  Yes, Your Honor.  Good morning.

11        THE COURT:  All right.  Yes, thank you.

12        Okay.  Please be seated, first of all.  And secondly,

13  because we have people on the phone, they can only hear us

14  through the mic system.  So if you're speaking, I really don't

15  mind if you stay seated, but if you stand it's probably best to

16  use the lectern because that way it will pick you up best.

17        So, Mr. Mermelstein, you file interesting motions and

18  let's have you start off with motion number two here.

19        MR. MERMELSTEIN:  Thank you, Your Honor.  I will go to

20  the podium.

21        Thank you, Your Honor.  I think that with respect to

22  the issue of Count 2, the Section 241, the standard that the

23  court has -- Supreme Court has laid out is clear.  Not only has

24  to be a right, it has to be a specific and definite right.  And

25  that's laid out in abundant case law.

1          And when you look at the legislation and cases that
2    have interpreted, in the particular the ADEA, the word "right"
3    as used in that -- in Section 241, the right that the
4    government has put at issue here, the right to file a lawsuit,
5    is not a right within the meaning of Section 241.
6          THE COURT:  And what's your best argument for that?  I
7    mean you make several different arguments.  Is it the *Kozminski*
8    case, is it the arbitration cases you cite?  What do you see as
9    your best -- or is it just a combination of all of that?
10          MR. MERMELSTEIN:  I think the *Kozminski* case lays out
11    the standard.  That it has to be not only a right --
12          THE COURT:  It can't be any right, it has to be made
13    specific by the express terms of the Constitution or laws or
14    cases interpreting them.
15          MR. MERMELSTEIN:  Right.  And then there's other Ninth
16    Circuit case law under *Reese* that the right must be, quote,
17    clearly delineated.  So there's a variety of ways in which the
18    courts have articulated that there has to be a degree of
19    precision here.  And I will say the word "right" has carried a
20    lot of meanings over the years and a lot of --
21          THE COURT:  -- word jurisdiction, it's a word with a
22    lot of meanings.
23          MR. MERMELSTEIN:  Yes.
24          THE COURT:  Yeah.
25          MR. MERMELSTEIN:  I'm reminded, my father, after I was

1   misbehaving and with respect to a car --

2            THE COURT:  Just recently or a while ago?

3            MR. MERMELSTEIN:  No, this is a couple years back.

4            THE COURT:  Okay.  Okay.

5            MR. MERMELSTEIN:  And he told me, Son, driving my car

6   is -- is a privilege, not a right.  And your privilege has been

7   suspended.  Right?  So, he had a view of -- a different view of

8   a right.

9            The issue here, and I don't mean to make light of the

10  situation because this is a significant situation here, we have

11  a system that is set up that when there's a clearly delineated

12  line, our system of criminal laws, you have a clearly

13  delineated line that a defendant clearly steps over.  And that

14  is the hallmark of criminal law.  And what we have here is

15  anything but a clearly delineated line when it comes to 241.

16           We have a statute that was passed 150 years ago that

17  was clearly targeted.  The motivating factor for it was to

18  criminalize conduct related to a specific substantive right,

19  which was the right to vote.  This was a statute that was

20  passed because the Ku Klux Klan was targeting --

21           THE COURT:  I'm familiar with the case.

22           MR. MERMELSTEIN:  Clearly -- and so it was clearly

23  motivated -- the motivating factor was the substantive right

24  and over the years it's only been enforced with respect to

25  substantive rights.  And so the question then is, how is a

1   defendant on fair notice, how is this statute to put someone of

2   ordinary intelligence on fair notice, to bleed into the void

3   for vagueness, but it's essentially the same issue that -- that

4   there just is no guidance out there to suggest to someone that

5   a right includes what it seems to me is a judicial remedy.

6           THE COURT:  But if we back up for a minute from the

7   specifics of the case, the vagueness as applied argument for a

8   minute, and just this issue you've raised as to the difference

9   between sort of a judicial, what do you call it, enforcement

10  right or judicial remedy versus the substantive right, right,

11  you draw that distinction.  Can you have one without the other?

12  I mean that's where I have some issue.

13          MR. MERMELSTEIN:  Of course.  Of course.

14          THE COURT:  Because the substantive right seems sort

15  of illusory if you don't have a right to come into court and

16  enforce that -- that substantive right.

17          MR. MERMELSTEIN:  Well, talk to any of the folks who

18  were involved in *U.S. v. Bivens* case before *U.S. v. Bivens*

19  existed.  There are plenty of rights without remedies.  There

20  are plenty of situations where there is a right under law, but

21  there is no cause of action.

22          THE COURT:  Right, but what I'm saying is if there is

23  a substantive right, if Congress clearly -- you admit that the

24  substantive right afforded by ADEA and Title VII would qualify

25  under 241?

1              MR. MERMELSTEIN:  Yes.

2              THE COURT:  Okay.  Okay.  I guess what I'm saying is,

3    help me with the area I'm struggling a little bit, which is if

4    you take away the right for someone to come into court, you're

5    taking away the substantive right because how do you enforce

6    it.

7              MR. MERMELSTEIN:  I guess what I'm -- what I'm saying

8    is, if there was conduct that was -- that infringed on

9    someone's substantive right to be free from discrimination, to

10   be free from age discrimination, to be free from gender

11   discrimination, then that would be enforceable under 241.  But

12   to say that the right in 241 is the right to file a lawsuit,

13   that is a bridge too far.

14             THE COURT:  But you could keep someone from ever

15   realizing their substantive rights by keeping them from filing

16   a lawsuit, because absent a lawsuit you can't enforce those

17   substantive rights.  Right?  So that's the question I have.

18   Are they sufficiently inextricably intertwined or inextricably

19   linked that you can't make the argument or not, that's the way

20   I'm looking --

21             MR. MERMELSTEIN:  Well, I think the issue manifests in

22   this case because there is no allegation that Ms. Tanaka did

23   anything to interfere with -- to interfere with her right,

24   Ms. Mau's right to be free from age discrimination.  She was

25   not her employer, she was not -- she did not -- she's not

1    alleged to have done anything.  I mean we had a civil trial

2    here with respect to whether --

3         THE COURT:  By the way, before you go on, I want to

4    disclose something I found out recently.  I don't think it

5    matters, but just like I did with my sister-in-law, I believe

6    my brother-in-law was a juror on that case.  I assume no one

7    cares about that, but I didn't want that -- I wanted that out

8    there.  He told me he was a juror and I went back and looked

9    because I remember it was a long time ago and I remember it was

10   Judge Watson.  So I looked and I believe -- he's now divorced

11   from my sister-in-law, it's my wife's sister's ex-husband that

12   was on the jury.  If anyone has a problem with that, please let

13   me know at some point in time.  I can't imagine anyone would

14   call jurors in that case as a witness or anything in this case.

15   But it's just one of those weird circumstances.  I thought I

16   would just let everyone know.

17        MR. MERMELSTEIN:  I expect there may be evidence with

18   respect to what happened in that trial, but I don't think

19   it'll -- it would come from the transcripts or whatnot, it

20   would not come from juror testimony.

21        THE COURT:  Right.

22        MR. MERMELSTEIN:  I think one of the issues here, Your

23   Honor, is that Ms. Mau did push forward on her argument that

24   she was discriminated against and the jury found against her.

25   The jury found that she was not discriminated against.  Her

 1   claim was -- was non-suited or denied.  And so it's a curious

 2   thing where you have a series of folks that are accused of

 3   doing something to infringe on someone's right and even as you

 4   say if it's kind of derivative of the substantive right to be

 5   free from -- free from discrimination, when a jury has already

 6   found that she was not -- that that substantive right was not

 7   denied, she -- she was not discriminated against.

 8        The other point I would make is that when you look at

 9   it from the perspective of you have the Supreme Court weigh in

10   and drawing a very sharp distinction between the substantive

11   rights and the judicial remedies, and making clear that --

12        THE COURT:  You're talking the arbitration, *14 Penn*

13   *Plaza* cases.

14        MR. MERMELSTEIN:  The whole -- that whole line of --

15   the whole line of cases with respect to a series of

16   different --

17        THE COURT:  So help me with the relevance of those

18   cases because it seems to me what those cases say, essentially

19   are you can waive your right to have a judicial forum and

20   that's not a waiver of your substantive right, essentially, to

21   do that.

22        MR. MERMELSTEIN:  I don't read it as them recognizing

23   that the right to a judicial forum is a substantive right that

24   can be waived.  That's the government's argument.

25        THE COURT:  Well, no, I don't -- that may be so, but

1    I'm just trying to understand why it's helpful to you.  I'm not

2    sure the cases are that helpful to the government.  I'm not

3    sure they're helpful to me is my point because I think what

4    those cases say -- and tell me if I'm wrong, if you believe I'm

5    wrong -- what those cases stand for is through, for instance, a

6    collective bargaining agreement, you can waive your right, and

7    there's always a lot of tension, often tension in the law

8    between some rights and collective bargaining rights, but here

9    that you can waive your right to have a judicial forum for a

10   Title VII or ADEA claim and instead have that arbitrated and

11   that doesn't deprive you of your -- of your sort of substantive

12   rights.

13         And so to me it's just sort of saying you can waive

14   that.  And you could waive a jury trial.  I mean you could

15   waive something that clearly is one of the most fundamental

16   rights in the Constitution and there's no problem with that.

17   So --

18         MR. MERMELSTEIN:  But it's the reason, Your Honor.

19         THE COURT:  -- I'm not seeing the nexus between --

20         MR. MERMELSTEIN:  The reasoning behind those cases --

21   I'm sorry to talk over you.

22         THE COURT:  No, no.

23         MR. MERMELSTEIN:  The reasoning behind that whole line

24   of cases is that -- there is a non-waiver provision that

25   backstops this.  That's what starts the whole dialogue is there

```
 1    is a non-waiver provision.  And so the question is, which
 2    rights, notwithstanding the non-waiver provision, which rights
 3    can you still waive.  And what the court has said, the Supreme
 4    Court has said is that it's only substantive rights that --
 5    that can be -- that -- it's only substantive rights that are --
 6    are in the non-waiver provision.  Meaning that --
 7          THE COURT:  You can waive your right to the forum
 8    essentially, right?  Arbitration versus a court.
 9          MR. MERMELSTEIN:  I think -- I think what the court is
10    doing is it's drawing a sharp distinction and it's identifying
11    what are the rights under the ADEA, and it's saying that the --
12    and I'm going to use the word "different" than "right" because
13    if we use "right" for everything it's hard to differentiate --
14    but it's saying that the remedy is not a substantive right
15    under the ADEA.  It's --
16          THE COURT:  I don't have a problem with -- I don't
17    have a huge problem saying a right to sue is not a substantive
18    right, because it's not, it's a procedural right.  The question
19    is you're giving two different labels and you're automatically
20    saying, And once you have those two different labels a judicial
21    remedy doesn't work, you know, it's not a right.  I'm just not
22    so sure that's true.  I'm not saying you're wrong, I'm just
23    saying you can't just create the labels and say one fits and
24    one doesn't fit.
25          MR. MERMELSTEIN:  Of course.  Of course.  But the
```

1    question is, once you understand that there are two different

2    things, embedded within this word "right" there are two

3    different things, substantive rights and something else,

4    whether we call them judicial remedies, call them procedural

5    rights, something --

6            THE COURT:  Well, how about if we call it a right to

7    sue that you can waive?

8            MR. MERMELSTEIN:  I think --

9            THE COURT:  Because that is what the EEOC letter calls

10   it.

11           MR. MERMELSTEIN:  That is what the EEOC letter, for

12   sure.  But when the Supreme Court is addressing this issue and

13   the Supreme Court is looking at the ADEA, and the Supreme Court

14   has a right to sue letter in front of it, it is still saying

15   that even though it's a right to sue, that's still something

16   that is not a non-waivable right for purposes of the ADEA

17   because it's not one of the substantive rights that the ADEA is

18   protecting.

19           THE COURT:  Do you think you could go into a

20   workplace -- I don't know, you're your own partner, I think,

21   but if you went to work for a firm and you weren't, you know,

22   your own boss essentially, do you think they could have a

23   contract with you that says you waive your right to bring any

24   sort of Title VII claim by arbitration, in court, anywhere?

25           MR. MERMELSTEIN:  I'm not an employment lawyer.

```
 1              THE COURT:  No, no, but kind of, you know, gets to
 2    this question, right?  You know, can you outright in an
 3    employment contract, collective bargaining agreement, whatever
 4    it may be, just say, I give it up.  I'm giving up any ability,
 5    let's call it --
 6              MR. MERMELSTEIN:  Okay.
 7              THE COURT:  -- to file suit or arbitration or any
 8    other sort of remedy under Title VII, ADEA, ADA, whatever the
 9    case may be.  I mean I don't know the answer to that, but I
10    suspect the answer is no, you couldn't do that.
11              MR. MERMELSTEIN:  Well, I think the question is
12    whether it's knowing and --
13              THE COURT:  Yeah, but say it's knowing.  You sign off
14    on it.  You're a lawyer, you sign off on it.
15              MR. MERMELSTEIN:  Well, I think the answer is that if
16    it falls within the certain rights that are non-waivable, then
17    you cannot.  If it doesn't fall within the rights that are
18    non-waivable --
19              THE COURT:  I mean I'm pretty sure the Ninth Circuit
20    at least would say that's a policy, you know, you can't do
21    that, you can't contract away that right.  Pretty confident of
22    that.
23              MR. MERMELSTEIN:  But the point is that those
24    non-waivable rights are in fact the substantive rights that the
25    statute is protecting.  So there's this -- that's what the
```

1   Supreme Court is saying when it says there are certain

2   non-waivable rights, those are the substantive rights that the

3   statute is protecting.  What we're dealing with here today is

4   something else.  It's not in those non-waivable rights, it's

5   not in those substantive rights that the statute is protecting.

6            THE COURT:  Okay.  Let's move on to the vagueness.

7   And I think what I'll do again is I'll break this up into the

8   sort of 241 argument on the judicial remedy versus the

9   substantive rights and the Fourth Amendment separately, we'll

10  argue those.

11            But on the vague -- and let me say something maybe

12  neither of you are prepared to hear me say on this, but I'm not

13  so sure that if I deny your motion, the first part of the

14  motion you just argued, if I grant it, the mootness -- I'm

15  sorry, the vagueness becomes moot.  But if I deny it, then I

16  don't have to wait for trial.  I see a number of cases where

17  this comes up in a Rule 29 setting, and there are cases that

18  say this is really so fact intensive that for an as-applied

19  challenge you should wait.  And so, you know, I don't know if

20  that's something you agree with, disagree with, I don't know if

21  it's something you've thought about at all.  But I'm sort of

22  leaning towards that direction that if I deny the first part of

23  your motion I would say that you would have to wait and

24  everyone who joined would have to wait for the actual evidence

25  for me to make a determination.

1          MR. MERMELSTEIN:  That's helpful framing for the
2    argument.
3          On the void for vagueness, I think the issue is
4    whether the defendant is on fair notice, defendant of ordinary
5    intelligence is on fair notice that the conduct at issue is
6    prohibited by the statute.  Not just prohibited generally or
7    not just criminal generally but prohibited by the statute.
8          And when you look at the statute itself, you look at
9    the fact that the Supreme Court has said that this is not a
10   right that falls within the non-waivable provision.  So all
11   that, that arbitration line of cases, that all has said that
12   the right to sue is not one of those non-waivable substantive
13   rights.
14         You look at 150 years of enforcement history where
15   we've never seen a case like this.  I will also layer on top of
16   that, last time we were in court we were talking a lot about
17   1983 claims.  Well, 1983 claims use slightly different
18   phraseology, but it's the only things that are actionable are
19   rights, privileges, and immunities that are protected under
20   federal law, and it has to be a clearly established right as
21   opposed to specific and delineated.  But there's a lot of
22   parallels.
23         You also -- you go through the history of 1983 claims.
24   We also do not see, I haven't seen, government certainly hasn't
25   referenced any instances where the right to sue under the --

1    any right to sue, whether it's under the ADA, employment

2    discrimination, is a right that is protected under federal law

3    for purposes of 1983.  That statute too has been around for a

4    very long time, reconstruction era statute passed specifically

5    related to protecting certain civil rights.

6              So we have enforcement history for 150 years, a couple

7    different statutes, and no indication that this -- that the

8    word "right" in the statute could be used to criminalize the

9    conduct at issue.

10             And so what's the government's response?  Government's

11   response is everybody knows that bribery is criminal and

12   everybody knows that bribery is wrong.  So there's no issue

13   here.  The problem with that argument is that when you look at

14   the elements of 241, it doesn't actually require any of the

15   oppressive conduct or injurious conduct to be corrupt, to be

16   bribery laden.  All it says is you have to engage in certain

17   conduct that is -- constitutes injury or oppression and that it

18   interferes with someone's rights.

19             And so if you take the bribery for a moment out of

20   this, and you just say, Hey, these are folks, my client was

21   hired to do a criminal referral, right?  And she diligently

22   walked evidence over to the Prosecutor's Office and diligently

23   exercised that duty.  The fear is that the jury convicts based

24   on some showing less than the bribery, less than the specific

25   quid pro quo that would need to be presented for a Count 1

1    conviction, for Count 1.  And so --

2              THE COURT:  I understand the argument.  I really do.

3    I'm just -- you're almost reinforcing that, I think, I sort of

4    need to wait and hear what the actual evidence is to make the

5    decision.  And I don't know ultimately I agree with you or

6    disagree with you, but, you know, to see exactly how that

7    evidence plays out.

8              MR. MERMELSTEIN:  I guess the -- I guess the question

9    then is how -- how -- I'm not sure the -- so we have evidence

10   that the government presents, but I'm not sure how this picture

11   becomes clearer at the end of the prosecution's case.

12             THE COURT:  I think it's always clear.  I mean

13   otherwise we'd do Rule 29s now and we'd have summary judgment

14   motions in, you know, criminal cases, but we don't.  You know,

15   we wait for the evidence and then when the government rests,

16   you know, everyone on this side can make your Rule 29 motions

17   on various matters, and the Ninth Circuit has, I believe, you

18   know, taken up this very issue in the context of a Rule 29

19   motion, that is a void for vagueness challenge that is made in

20   a 29 motion and then it's brought up on appeal when denied.

21             And, you know, I understand I'm throwing this -- this

22   is sort of out of left field, this -- this -- because none of

23   you briefed this or had a discussion as to whether or not it

24   might be appropriate to wait.  So, I don't expect you to have

25   done the research, Mr. Mermelstein.

1            MR. MERMELSTEIN:  Yeah, no, I think that --

2            THE COURT:  I don't mean to put you, you know, on the

3    spot here.  But, you know, I mean there's always surprises at

4    trial, as you know.  You've done a number of trials.  You know

5    there's always things that come up and it's like, Wow, I didn't

6    expect that.  We don't know what might happen.  We have a sense

7    of what the evidence will be I suspect but --

8            MR. MERMELSTEIN:  Well, I think the -- I guess I

9    would -- and I guess I don't disagree that we would have more

10   information, there's always going to be more information later

11   on.

12           THE COURT:  Right.

13           MR. MERMELSTEIN:  But if what we're assessing at this

14   point is whether a defendant would be on fair notice that this

15   conduct would violate 241, the government has a sort of slight

16   of hand where they say obviously a defendant would know this

17   conduct is criminal, but that's not the standard.  The standard

18   is whether the defendant would know that this conduct violates

19   the particular statute that we're talking about.  That's the

20   void for vagueness analysis.

21           And it seems to me that there is sufficient evidence

22   before you at this point to say that no defendant of ordinary

23   intelligence, given the history here, given that this fact --

24           THE COURT:  Let me ask you one more question.  I found

25   some cases, and this was all new to me because I've never seen

1    these types of cases before, where there are very technical

2    regulatory requirements.  Maybe a requirement if you and I read

3    it we'd be a little bit lost on what it means for, you know, an

4    engineering something or who knows what.  And I saw some cases

5    where the courts say, Well, it's not void for vagueness for

6    that engineer that was on trial because he understood all of

7    that.  Whereas, the ordinary person may not, but that engineer

8    would understand.  I can't remember if it was an engineer, but

9    something of that sort.

10        How does that play in with a lawyer here?  Is there a

11   difference there or -- and if so, how does it shake out?

12        MR. MERMELSTEIN:  I don't think so, Your Honor.  I

13   think that the evidence, I'll proffer some evidence that will

14   ultimately come out.  At the time -- this was Ms. Tanaka's

15   first foray into the criminal litigation world at all.  She was

16   a very junior lawyer to begin with when -- at the time.  This

17   was the first time she had, I think in federal -- I guess the

18   federal court was the civil -- the civil proceeding.  And so

19   even if those cases stand for the proposition that Ms. Tanaka

20   is -- is more intelligent than your average criminal defendant

21   or more knowledgeable with respect to --

22        THE COURT:  Yeah, I would never say lawyers are more

23   intelligent than other people.  That's probably not something

24   we want to say.  More knowledgeable in the law.

25        MR. MERMELSTEIN:  I don't think that that speaks at

1   all to the issue of interpreting Section 241.  Because unless

2   the government's going to point to -- I mean in law school, I

3   confess I've been doing this 25 years, I'd never looked at 241

4   as a -- as a statute, and I've been in this world for a long

5   time.

6         So even if, you know, Ms. Tanaka has a law degree, the

7   idea that she's subject to at all a heightened standard because

8   of that, I -- I just don't see how you would get there from an

9   evidentiary point of view.

10        THE COURT:  Well, and maybe it's the opposite.  Maybe

11  she's a lawyer and so you expect her to throw hard punches in

12  cases and do things.  That's what lawyers do.  I don't know how

13  it plays out.

14        MR. MERMELSTEIN:  Well, I guess what I would say is,

15  if you look at -- you could say that she's a lawyer familiar

16  with 150 years of enforcement history and the complete lack of

17  any case that's ever been brought under 241 --

18        THE COURT:  Then you get into fiction though, right,

19  because, you know --

20        MR. MERMELSTEIN:  Well, it's all -- it's all a

21  hypothetical situation because we're talking about the person

22  of ordinary intelligence, right?  We're talking about the

23  hypothetical reasonable man standard.  And that's why I think

24  it becomes problematic to get into that.

25        THE COURT:  Let's do this, let me have you stop now.

1    Let me see if anyone wants to add anything on your side.  I'll
2    hear from Mr. Chiang on this issue and then we'll come back to
3    the Fourth Amendment.  Okay?  Thank you.
4              Mr. Bervar?
5              MR. BERVAR:  Nothing to add.
6              THE COURT:  Ms. Marino.
7              MS. MARINO:  You know, if the Court will indulge me
8    for a second.
9              THE COURT:  Sure.
10             MS. MARINO:  Thank you.  I appreciate that.  You know,
11   I really struggle with this.  I've obviously never seen a
12   charge for 241 either.  It's very unusual.  But, you know, the
13   way I look at it, Your Honor, is there's the right to exercise
14   freely your constitutional rights, one of which would be to not
15   be discriminated against, for example.  And then there's -- and
16   then there's this issue of, well, if you want to enforce that
17   right, does that now create a whole new right.  That's the way
18   I look at it.  And maybe that's wrong.
19             THE COURT:  No, I understand what you're saying and
20   I'm not saying it's not an interesting and difficult issue.  I
21   guess, you know, what I'm struggling with is, how you enforce a
22   substantive right without the right to come into court and do
23   so.  And, you know, I'm sitting as a judge, right, where these
24   things happen and somebody could be discriminated against left
25   and right, but if they don't have an ability to come into

1    court, what's it mean?

2         MS. MARINO:  You know, what the Court said before

3    really got me thinking about that, what you just said now.

4    When you posed the question, Your Honor, to Mr. Mermelstein and

5    you said -- I forgot what you said, but his answer is I'm not a

6    labor lawyer --

7         THE COURT:  I think the question was whether he could

8    just contract away totally his right to bring a Title VII.

9         MS. MARINO:  That's right.  And so I think the answer

10   to that question is, I think you could sign a waiver that says

11   I give up my right to not be discriminated against.  Because

12   you have a right to not be discriminated.  But again, I think

13   that that's the distinction.  That's where the right is, that's

14   where the right is that's contemplated by 241, not the right to

15   enforce that right.

16        It's like -- they just -- they have to be separate

17   because otherwise 241 would read differently.  241 would then

18   say, You have the right to be free from, blah, blah, blah,

19   discrimination, and if that's violated, you have the right to

20   sue because of that.  I mean I just don't think it goes there.

21        THE COURT:  Well, it does talk in context, I forget

22   the language, enjoyment of the right, right?  And so how do you

23   enjoy the right without bringing a case in court.  That's the

24   counter-argument, right?  It does sort of include something

25   beyond just the right in the language itself.

```
 1          MS. MARINO:  I don't think it -- I don't think it
 2  contemplates enforcement.  I think it -- by its very language
 3  it doesn't contemplate enforcement.  It contemplates the right
 4  of enjoyment.  It doesn't contemplate, and, and if you don't
 5  get to have that, then you can do something to enforce it.
 6  That's not what 241 says.  I'm not saying that someone couldn't
 7  draft or redraft 241 to say that, but as we all sit here today
 8  in this courtroom that is just not what it says.
 9          THE COURT:  Okay.  Thank you.
10          MS. MARINO:  Thank you.
11          THE COURT:  Okay.  Ms. Lum?
12          MS. LUM:  Nothing further, Your Honor.
13          MR. KENNEDY:  I have nothing further, Your Honor.
14          MR. OTAKE:  Nothing to add.  Thank you.
15          THE COURT:  Okay.
16          MR. CHIANG:  I just want to start with first
17  principles and look at what the language of 241 --
18          THE COURT:  I read it.  You don't need to start with
19  the language.
20          MR. CHIANG:  Okay.  So then I would just say this:
21  You know, my friend Mr. Mermelstein has talked at length
22  about --
23          THE COURT:  Are you really friends?
24          MR. CHIANG:  It's a term of endearment.
25          THE COURT:  All right.  I just -- yeah.
```

1          MR. CHIANG:  I'm sure we could be friends if we --

2          THE COURT:  Yeah, probably.

3          MR. CHIANG:  He's emphasized the 150-year enforcement

4    history, but I, you know, I think that in the 150 years that

5    this statute has been in existence, the meaning of the word

6    "right" has not changed.  It still means a power or privilege

7    that is conferred by law.  And the right to file a lawsuit

8    under Title VII and ADEA is plainly a right or privilege that

9    is conferred by the law.  And the only way that the defendants

10   can say that this right is not subsumed under the 241 statute

11   is to somehow exclude this procedural right, this right to a

12   judicial forum from this extremely broad language of 241.  And

13   I don't think that they have presented anything persuasive in

14   order to do that.

15         You know, courts that have interpreted 241 have said

16   that this is an extremely broad right.  The United States

17   Supreme Court in *Price* said that the language in 241 is plain

18   and unlimited.  It includes, you know, every right, any right

19   that is --

20         THE COURT:  Yeah, but the Supreme Court has limited

21   it, right?  In, what is it, *Kozminski?*

22         MR. CHIANG:  Well, in *Kozminski* they said that it has

23   to be a specific right.

24         THE COURT:  Right, either by the express terms of the

25   Constitution or the law or decisions interpreting the

1    Constitution or laws.

2              MR. CHIANG:  That's right.  And, you know, we will

3    candidly say that we have not found an interpretive decision

4    that says that, you know, the right to file a lawsuit is a

5    right specifically, but if you look at the statute itself, it's

6    made specific under the statute, under Title VII and ADEA.

7              THE COURT:  How much weight do I give the fact that,

8    you know, 150 years here we are for the first time having this

9    discussion, apparently in the nation, how do I -- how do I

10   weigh that?

11             MR. CHIANG:  I don't think you give any weight to it,

12   Your Honor, and I think the reason is that the statute's

13   enforcement history is not one of the tools of statutory

14   interpretation that this Court uses.  And, you know, candidly

15   we're happy that in 150 years we have not seen a group of

16   people allegedly conspire in order to retaliate against a

17   person's right to file a lawsuit.

18             But I think that there is a first time for everything.

19   And when we see facts that squarely meet the contours of the

20   words of a statute, then we have to -- we have to charge it,

21   and this is what we did in this case.

22             I don't think that --

23             THE COURT:  You don't have to charge it, but you're

24   saying you can charge it.

25             MR. CHIANG:  We can charge it and we --

1       THE COURT:  And it's not you, it's the grand jury, but
2    go ahead.
3       MR. CHIANG:  Yes.  And the grand jury has returned an
4    indictment.
5       So, I don't think the Court should -- should look at
6    the enforcement history.  I think the Court should look at the
7    text, the structure and the purpose of statute.
8       And, you know, I think that the defendants really have
9    not presented anything to demonstrate to the Court that a right
10   to file a lawsuit falls out of 241.  I think they have to sort
11   of reach to these cases in the arbitration context in order to
12   try to say, Well, you know, in the arbitration context at least
13   the Supreme Court has made this distinction between a right to
14   file a lawsuit which can be waived and a substantive right
15   which cannot be waived.  But this distinction really only
16   matters in the question that was presented to the Supreme Court
17   at that time, which is can you waive your right to a federal
18   judicial forum in order to litigate substantive rights under
19   the discrimination statutes.  And the Supreme Court said, Yes,
20   you can waive it.  But that doesn't make a right that is waived
21   any less of a right.  It's still a right.  You can just waive
22   it.
23      And so I don't think those cases help them much at
24   all.  And, you know, I think, again, we really just urge the
25   Court to stick to the ordinary principles of statutory

1   interpretation in this case.  And I'm happy to answer the

2   Court's questions if you have any.

3            THE COURT:  All right.  Thank you.

4            All right, Mr. Mermelstein, I'll give you just a

5   minute or so on that if you wish, but I really do want to turn

6   to the Fourth Amendment because we've been going about

7   40 minutes here.

8            MR. MERMELSTEIN:  Thank you, Your Honor.  Just very

9   briefly in response.  The very fact that we're here debating

10  this issue speaks to the uncertainty here.  Right?  The

11  government says that it's our burden, the defense burden to

12  prove to Your Honor that this is something that wasn't

13  contemplated.  I don't see it that way at all.  The government

14  has charged a crime here.  To me it's the government's burden

15  to establish that they have actually charged a crime and that

16  the defendant is on fair notice of a crime.

17           THE COURT:  Okay.  I understand those arguments.

18  Let's move to the Fourth Amendment.

19           MR. MERMELSTEIN:  On the Fourth Amendment, Your Honor,

20  we did have -- we had -- it was a bit of a procedurally tricky

21  situation because we had filed this motion before we heard

22  arguments on the prior motion.  And I understand the Court's --

23  the Court's prior rulings and I don't intend to revisit that

24  issue.

25           I do think it would be helpful to have some clarity on

1   what is the seizure that we're talking about here because --

2          THE COURT:  Well, let me ask you this:  So, you know,

3   I think I fell a little short of making a absolute ruling as to

4   what a seizure was and wasn't in my oral ruling.  But how much

5   of that is a question for the jury?  That's part of why I'm

6   being careful here.  How much of that might be a question for

7   the jury as opposed to me making a legal determination and

8   telling the jury that?

9          Like, you know, we're in trial and at the end of the

10  trial we start talking about jury instructions.  Does the jury

11  make a determination?  Do I give them an instruction as to what

12  a seizure generally is and some outlines to it and then they

13  make that decision, or is that a purely legal decision that I

14  make in the course of the trial?

15         MR. MERMELSTEIN:  I think there's a threshold legal

16  determination that the Court needs to make whether certain

17  facts could constitute a seizure if the jury then found they

18  were.  So the Court is kind of the gatekeeper here.

19         THE COURT:  Right, and I found already that it could

20  be a seizure, right?  Using your language, using your verb, in

21  the context of the initial conditions of release, we'll call

22  it.  Not the personal recognizance, right?

23         MR. MERMELSTEIN:  Right.

24         THE COURT:  The bail, the travel restriction.

25         MR. MERMELSTEIN:  But those were out of statute.  So I

 1    thought that where we left things was that the -- where the

 2    rubber meets the road here is that the only --

 3          THE COURT:  Oh, out of statute of limitations you

 4    mean?

 5          MR. MERMELSTEIN:  Yes, sorry for the imprecision.

 6          THE COURT:  Yeah.

 7          MR. MERMELSTEIN:  I thought where we left things was

 8    that we've sort of heard articulations of three different

 9    buckets of seizure, if you will.  The initial bail conditions

10    that are out of statute of limitations, the release on their --

11    on her own recognizance, and then the prosecution generally as

12    sort of three different --

13          THE COURT:  And where the prosecution might lead.

14          MR. MERMELSTEIN:  Right.  And I had understood that

15    the import of the Court's initial thoughts --

16          THE COURT:  Yeah.

17          MR. MERMELSTEIN:  -- were that the initial restraints

18    could conceivably be a seizure, but that they were out of

19    statute of limitations.

20          THE COURT:  Correct.

21          MR. MERMELSTEIN:  And so it would be inappropriate for

22    the government to argue those were the seizures at issue here.

23          THE COURT:  For purposes of the statute of

24    limitations.

25          MR. MERMELSTEIN:  Right, because it would -- right,

1    they would have to prove up some other seizure within the

2    statute.

3              THE COURT:  Right.

4              MR. MERMELSTEIN:  I had also understood that the

5    subsequent bail conditions, the OR release would not be

6    considered a seizure.

7              THE COURT:  That was my view at least, right.

8              MR. MERMELSTEIN:  And that what is essentially left is

9    payment for a prosecution and if the prosecution could

10   eventually lead to a seizure.

11             THE COURT:  Right.

12             MR. MERMELSTEIN:  My understanding is essentially

13   that's what we're trying.

14             THE COURT:  I think that's right.  That's where I am

15   as well as far as -- I mean I reread it this morning and that's

16   what I think I said.

17             MR. MERMELSTEIN:  Okay.  And I mean I can offer more

18   thoughts on that, but I think Your Honor has largely indicated

19   that that -- whether --

20             THE COURT:  But those lines I've drawn for purposes of

21   the motion.  You know, where do those lines then fit in with

22   the jury I guess is part of what I'm -- I'm not certain of the

23   answer to that.

24             MR. MERMELSTEIN:  Well, I would think that that leaves

25   us with the government is permitted to argue the payment for

1   prosecution and the seizure that might ultimately follow from
2   that, that that's the seizure that's fair game here.  And if
3   the jury ultimately concludes that when in 2012 when an
4   agreement was struck, allegedly, that folks were contemplating
5   a situation many years down the road where a prosecution could
6   come about and that ultimately notwithstanding a judicial
7   review of the evidence and a jury review of the evidence, if
8   that ultimately led to a conviction, then that could lead to a
9   seizure.  You and I disagreed as to whether the judicial
10  involvement would be an intervening factor that would
11  essentially moot any unreasonable seizure.  We disagreed, I --
12  I understand that, but I think that's the issue as --
13          THE COURT:  Okay.  So where does that leave us with
14  your motion now then I guess.  Let me cut into the chase.  You
15  know, for the present motion, now that you have the benefit of
16  what I've said before and you know my thought process.
17          MR. MERMELSTEIN:  Right.
18          THE COURT:  Where do you believe that leaves us?
19          MR. MERMELSTEIN:  The -- the one other issue I think
20  that is ripe for determination at this point is the government
21  doesn't allege in their complaint -- in the indictments that
22  the -- they allege that there was an undefined seizure, but
23  they don't allege anything with respect to probable cause.  And
24  I think that what is required is an allegation that the seizure
25  was done unreasonably, that is without probable cause.  And I

1   think that's the ultimate issue that --

2          THE COURT:  So have you looked at this case I found, I

3   don't know if you've seen it, *United States versus S-E-A-S-E*,

4   *Sease*, 659 F.3d 519, a Sixth Circuit case from 2011.  And let

5   me just give you the facts as I understand them in this case,

6   which is a police officer, he was an acting police officer,

7   staged drug buys, and for the purpose of then stealing the

8   drugs and the money, right.  So it wasn't like it went into the

9   police station and the evidence room and so forth.  It was just

10  a illegal effort to line the police officer, I don't know if

11  there's more than one, pocket.  And ultimately were convicted

12  under both 241 and 242.  And he argued, that is the defendant

13  in that case, that there was insufficient evidence to support

14  the conviction because he didn't violate the rights of the

15  participants because there was probable cause.  And the Sixth

16  Circuit kind of like blew that off and said, Well, that may be

17  true, and although the exclusionary rule usually is based on

18  sort of objective standards and not subjective, right, and

19  Fourth Amendment typically is with very few exception, that

20  that's not really relevant in this case where the whole reason

21  for the conduct or what the police did was illegal to start

22  with.

23         And so, yeah, they say there was probable cause.  Of

24  course there was.  These people had drugs and that's the whole

25  reason the thing was set up, but it doesn't sort of act as a

1    superseding cause or however you might look at it.

2            So that's one case I found.  I didn't find -- and some

3    district court cases as well including the one I told you about

4    an immigration officer who charged somebody, I can't remember

5    the exact, but because she wouldn't have sex with him or

6    something of that sort.

7            MR. MERMELSTEIN:  Yeah, I did -- I did look into the

8    other case, I think it was a Southern District of Texas case

9    that you referenced last time with respect to an immigration

10   officer who was essentially arrested an illegal immigrant for

11   the purpose of sexual interest and raped her.  And I think Your

12   Honor's conclusion was that, well, whether she was

13   appropriately arrested or not, whether there was probable cause

14   to arrest her or not wasn't really the point.  Respectfully I

15   read that case differently.

16           THE COURT:  Okay.

17           MR. MERMELSTEIN:  The seizure that I think they were

18   talking about in that case was not the arrest, it was the rape.

19   The case describes at length how rape is the ultimate form of a

20   seizure and the ultimate deprivation of someone's rights.  And

21   so --

22           THE COURT:  Well, that may be true, but we still have

23   the Sixth Circuit case that seems sort of on point.

24           MR. MERMELSTEIN:  Well, I confess I have not read the

25   Sixth Circuit case and we may -- we may be discussing this one

1   again.

2            THE COURT:  Right.

3            MR. MERMELSTEIN:  But it -- I guess then it's hard for

4   me to -- if probable cause is not part of the equation, then I

5   guess I don't understand exactly how this would work with

6   respect to someone in Ms. Tanaka's shoes who is presenting the

7   evidence to the prosecutor and let's say she has a good faith

8   belief that there was probable cause for -- for the referral,

9   for the criminal referral.  So she would be -- she would not --

10  she could have the specific intent to have -- have Ms. Mau

11  deprived of her rights, but because she believes there is a

12  lawful basis to have Ms. Mau deprived of her rights, she in

13  good faith believes -- she believes there is probable cause.

14           THE COURT:  I'm not going to rule now because it

15  sounds like, you know, something we may be talking about later

16  if she testifies and this comes out this way, but, you know,

17  you may be then able to argue she didn't have the specific

18  intent necessary to violate the statute.  I don't know where

19  that leads you as far as an argument goes.  But what I'm saying

20  is, for the argument that you're making that if there's

21  probable cause and a finding of probable cause that wipes the

22  slate clean is something I'm not willing to accept.

23           MR. MERMELSTEIN:  No, and I understand that, Your

24  Honor, but I think the issue of probable cause and the issue

25  of -- I see the Fourth Amendment, I -- my understanding is that

 1    when the Fourth Amendment uses the word "unreasonable,"
 2    unreasonable search and seizure, that except for something like
 3    Terry stops where you're talking about reasonable suspicion,
 4    except for that situation, I can't think of any -- anywhere
 5    where unreasonable means anything different than without
 6    probable cause.
 7          And so it seems to me that what we're talking about
 8    here is the government proving up that this was -- that these
 9    folks intended a seizure that was without probable cause.
10          THE COURT:  Yeah, and I'm just saying based on my
11    reading of the law right now I reject that and probably will
12    reject it when it comes time for jury instructions.
13          MR. MERMELSTEIN:  Okay.
14          THE COURT:  Okay.  So I'm not sure what that does,
15    again, to your motion.  And, you know, obviously if I feel that
16    way, then it seems to me you have a hard time on this motion,
17    right?
18          MR. MERMELSTEIN:  I don't disagree with that
19    conclusion, Your Honor.
20          THE COURT:  Okay.  Okay.  All right.
21          MR. MERMELSTEIN:  I think that's --
22          THE COURT:  Okay.  All right.  Thank you.  All right.
23    So let me just go back around the room.
24          MR. BERVAR:  Nothing to add.
25          MS. MARINO:  No, thank you, Your Honor.

1           MS. LUM:  No, Your Honor.

2           MR. KENNEDY:  Nothing to add, Your Honor.

3           MR. OTAKE:  Nothing to add.

4           THE COURT:  All right.

5           MR. CHIANG:  Your Honor, we accept your view that

6    probable cause doesn't wipe the slate clean.  So --

7           THE COURT:  Thank you.

8           MR. CHIANG:  -- that's not something that -- you know,

9    that's not something that we're going to argue against.

10          The only point I do want to make, though, just to

11   respond to Mr. Mermelstein is that even despite that, we do

12   allege in the indictment that there was not probable cause.  I

13   think if you -- if you look at the introductory allegations,

14   I'm not going to belabor them, I think that it's fairly clear,

15   including the allegation that, you know, Judge Nakasone

16   eventually dismissed the case with prejudice because there was

17   no probable cause, I think we've alleged that.

18          And so I think the next question, I don't know if the

19   Court wants to get into it, is the matter of, you know, what

20   questions are for the jury and what questions are legal rulings

21   for the Court.  And I think the Court had indicated certain

22   legal perspectives from the previous hearing that we accept as

23   well.  We're not going to --

24          THE COURT:  Well, it didn't necessarily sound like you

25   accepted it in your opposition.  I'm glad to hear you do now.

1          MR. CHIANG:  Well, so, if I can make that clear.  I

2     understood the Court to say that, you know, release on a

3     person's own recognizance and travel restrictions did not

4     amount to a seizure.  And we accept that.  We also heard the

5     Court to say, well, you know, if there was a cash bail, 20,000

6     cash bail, that that would be a seizure.  We accept that as

7     well.

8          We understand that the cash bail was removed prior to

9     the statute of limitations.  Our position only is that

10    regardless of what specific seizure the victim here was

11    actually exposed to, it's a jury question to decide whether or

12    not the defendants had -- still had the plan to subject her to

13    certain escalating seizures within the statute of limitations.

14         THE COURT:  No, I understand that's a jury question.

15         MR. CHIANG:  Yeah.

16         THE COURT:  And if you're not going to argue or try to

17    argue that the personal recognizance, own recognizance period

18    was a seizure --

19         MR. CHIANG:  We're not going to argue that.

20         THE COURT:  -- maybe and the jury being told that's

21    not a seizure, you know, so that the lines are very clear and

22    there's no confusion.

23         MR. CHIANG:  Right.

24         THE COURT:  Those of you that have tried cases before

25    me, I mean heard me say this many times, with jury instructions

1   I really focus on making sure the jury understands what I'm
2   telling them.
3          MR. CHIANG:  Right.
4          THE COURT:  You know, really work hard on that because
5   jury instructions can be so difficult to follow, right?  So I
6   work really hard on fidelity to the law but also so the jury
7   can understand it, and I don't want to be in a position where
8   they don't even know what we're talking about, right?  Are we
9   talking way back here, are we talking about own recognizance,
10  are we talking about what might happen in the future.
11         MR. CHIANG:  Right.
12         THE COURT:  So that's just something to keep in mind.
13         MR. CHIANG:  Right.  Right.  But I think that, you
14  know, and if this is something that we can discuss as we get
15  further down in the proceedings, but I think we should be able
16  to present evidence to the jury as to whether or not the
17  defendants still intended to subject the victim here to bail
18  conditions, even stricter seizures such as a detention, and
19  ultimately incarceration within the statute of limitations.
20         THE COURT:  All right.  Okay.  Thank you.
21         MR. CHIANG:  Thank you.
22         THE COURT:  You can just from there if you have
23  anything, Mr. Mermelstein.
24         MR. MERMELSTEIN:  No, Your Honor.
25         THE COURT:  All right.  So we're all together.  Is

```
 1    there anything else -- I'll take this under advisement and put
 2    out a written order.  Is there anything else though that you
 3    folks want to talk about while we're all together?  Let me
 4    start with the prosecution side.  I'll just call out names so
 5    that we're --
 6              MR. CHIANG:  No, nothing further from the United
 7    States.  Thank you very much.
 8              THE COURT:  Mr. Bervar?
 9              MR. BERVAR:  No, Your Honor.
10              THE COURT:  Ms. Marino?
11              MS. MARINO:  Not on behalf of Mr. Mitsunaga.
12              THE COURT:  All right.  Thank you.  Ms. Lum?
13              MS. LUM:  No, Your Honor.
14              THE COURT:  Mr. Kennedy?
15              MR. KENNEDY:  No thank you, Your Honor.
16              THE COURT:  Mr. Otake?
17              MR. OTAKE:  No, Your Honor.
18              THE COURT:  Mr. Mermelstein?
19              MR. MERMELSTEIN:  No again, Your Honor.
20              THE COURT:  All right.  Very good.  Okay.  All right.
21    So, let me do this, let me have a -- are you okay if we come to
22    sidebar and have an off-the-record discussion for just a moment
23    about what's going to happen next?
24              MS. MARINO:  Yes.
25              THE COURT:  With you and Mr. Schum?
```

1              MS. MARINO:  Yes, of course.

2              THE COURT:  Okay.  Why don't we do that.  So I'm going

3     to recess this and have a separate hearing just with Mr. Schum

4     and Ms. Marino and potentially Mr. Mitsunaga for a minute.

5              Okay.  So, Mr. Schum, Ms. Marino, if you can come over

6     here.

7              (The proceedings concluded at 10:57 a.m., April 27,

8     2023.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    COURT REPORTER'S CERTIFICATE

2

3          I, CYNTHIA FAZIO, Official Court Reporter, United

4    States District Court, District of Hawaii, do hereby certify

5    that pursuant to 28 U.S.C. §753 the foregoing pages is a

6    complete, true, and correct transcript of the stenographically

7    reported proceedings held in the above-entitled matter and that

8    the transcript page format is in conformance with the

9    regulations of the Judicial Conference of the United States.

10         DATED at Honolulu, Hawaii, May 29, 2023.

11

12

13         _/s/ Cynthia Fazio_____
           CYNTHIA FAZIO, RMR, CRR, CRC
14

15

16

17

18

19

20

21

22

23

24

25