**SEALED**
BY ORDER OF THE COURT

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Feb 15, 2024, 11:40 am
Lucy H. Carrillo, Clerk of Court

UNSEALED BY ORDER OF THE COURT
DATE: 2/17/2026, ECF No. 5,
MC 26-00010 SASP-KJM

MERRICK B. GARLAND
Attorney General
MICHAEL G. WHEAT, CBN 118598
JOSEPH J.M. ORABONA, CBN 223317
JANAKI G. CHOPRA, CBN 272246
COLIN M. MCDONALD, CBN 286561
ANDREW Y. CHIANG, NYBN 4765012
Special Attorneys of the United States
880 Front Street, Room 6293
San Diego, CA 92101
619-546-8437/7951/8817/9144/8756
Andrew.Chiang@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>　　　　　　　Defendants. | CR No. 22-00048-TMB-NC<br><br>UNITED STATES' UNREDACTED RESPONSE IN OPPOSITION TO TANAKA'S MOTION TO SEVER AND RELATED JOINDERS; POSITION ON CONTINUANCE OF TRIAL [ECF 404, 405, 417, 418]<br><br>Date:　February 26, 2024<br>Time:　9:00 a.m.<br>Judge:　Hon. Timothy M. Burgess<br><br>[**UNDER SEAL**] |

UNITED STATES' UNREDACTED RESPONSE IN OPPOSITION
TO TANAKA'S MOTION TO SEVER AND RELATED
JOINDERS; POSITION ON CONTINUANCE OF TRIAL

I

INTRODUCTION

Severing Sheri Tanaka from her co-conspirators in this complex conspiracy would be a profound miscarriage of justice. An investigation is underway into whether Tanaka sought to do violence to Judge Seabright and a member of this prosecution team prior to the date she was supposed to stand trial. If Tanaka's conduct is substantiated, the ramifications of a severance would be disquieting.

First, Tanaka would be responsible for recusing a judge who was deeply familiar with the parties and the facts of this case, who had rejected Tanaka's four motions to dismiss the indictment, ECF 120, 165, 205, 228, and who had deemed Tanaka's sprawling allegations of prosecutorial misconduct (jointly made with her co-defendants) "separately and collectively—overblown." ECF 315 at 11.

Second, Tanaka would have won a severance despite misdeeds wholly of her own doing. It would create a perverse windfall for Tanaka, "randomly favoring the last-tried defendant[] who [has] the advantage of knowing the prosecution's case beforehand," as well as for her co-defendants, due to the distortive effects of severance on "accurate assessment of relative culpability." *Richardson v. Marsh*, 481 U.S. 200, 210 (1997). Left holding the bag would be the United States, the Court, the public, and the victim in this case. Particularly in a months-long trial, severance "would impair both the efficiency and the fairness of the criminal justice system," requiring "prosecutors [to] bring separate proceedings, presenting the same evidence

1

again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying," and potentially subjecting the public to "the scandal and inequity of inconsistent verdicts." *Id.*

Third, severance would be all the more unjust because the very focus of this case is on the defendants' manipulation of the criminal justice system to achieve their corrupt objectives. The First Superseding Indictment (FSI) alleges that Tanaka and her MAI co-conspirators conspired to bribe Keith Kaneshiro to prosecute the victim in this case, L.J.M., in order "to injure, oppress, threaten, and intimidate L.J.M." because she sought legal recourse against MAI in federal court. See FSI ¶¶ 21(3), 24. Tanaka was a key participant in this plot. According to Judge Nakasone (the judge who ultimately dismissed the charges against L.J.M. for lack of probable cause), Tanaka was the one who "orchestrated the vast majority of the investigation" underpinning the baseless charges against L.J.M. ECF 383 at 6. Tanaka then obstructed the grand jury investigation in *this* case by, among other things, helping witnesses from MAI prepare false, scripted speeches designed to block the grand jury's inquiry into the charged conspiracies. See ECF 288, United States' Unredacted Consolidated Response to Misconduct Motions at 10–21 (describing Tanaka's and her co-conspirators' obstruction of the grand jury investigation); see also ECF 422, United States' Unredacted Response to Motion *in Limine* No. 12 (broadly describing Tanaka's orchestration of obstruction of justice in the grand jury). Moreover, Tanaka was MAI's attorney acting on behalf of her co-

2

defendants—officers and executives of MAI—during the course of the charged offenses. As the FSI makes clear, Tanaka was MAI's primary tool in facilitating the charged conspiracies. All of the defendants' relative culpabilities must therefore be assessed and decided together. If there were ever a case exemplifying "a preference in the federal system for joint trials" and its "vital role in the criminal justice system," it is this one. *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

      This prosecution team aims do everything it can do to preserve a joint trial for all six defendants. But because the alleged threat was directed at one of the prosecution team, we are not involved in the threat investigation. That is being handled by prosecutors from the District of Arizona. For the same reason, we do not have any evidence from that investigation and therefore will not use any such evidence in a joint trial of this case.[1] Our executive management has also notified the District of Arizona about Tanaka's claims of prejudice resulting from the seizure of her electronic devices and the alleged impact on her trial preparation. It is their understanding that the District of Arizona and Tanaka's attorney are communicating on the subject. This prosecution team and its office have refrained from any further involvement, however, to avoid even the appearance that we are handling or involved in the threat investigation and might need to be disqualified.[2]

---

[1] As Tanaka's attorney represented at last week's status hearing, such a commitment greatly alleviates his concerns about prejudice to Tanaka and her co-defendants.

[2] Indeed, beyond the brief statement in our Notice filed at ECF 356, we only know some specifics about the District of Arizona's investigation because they are stated

3

In the event the Court believes Tanaka's professed prejudice cannot be resolved in time—a claim this Court should view skeptically—the United States requests that the Court continue the trial for all defendants to preserve a joint trial. The remaining five defendants have each made or acceded to multiple motions to continue this trial, each is free on bond, and each has "agreed that the case should be deemed complex" under 18 U.S.C. § 3161(h)(7)(B)(ii). ECF 135 at 2. Failure to grant a continuance would result in a miscarriage of justice under § 3161(h)(7)(B)(i). The Court may also exclude time under § 3161(h)(6), under which "[e]very circuit to consider this section has concluded that 'an exclusion to one defendant applies to all co-defendants." *United States v. Butz*, 982 F.2d 1378, 1381 (9th Cir. 1993). In short, the Speedy Trial Act is designed to support a continuance for all defendants to effectuate a joint trial in the circumstances presented here.

Although the loss of the current jury pool would be unfortunate, at least a final panel of jurors has not been selected or begun their months-long service. Severing Tanaka in lieu of continuing all defendants would produce a *worse* outcome—requiring two fully screened juries to complete two multiple month trials. Judicial efficiency, basic principles of justice, and the law on severance, all support denying Tanaka's motion. She should not be severed out of this conspiracy, even if it means continuing the trial for all of the defendants together.

---

in *Tanaka's* filings, e.g., some items seized in that case, see ECF 360–62, or that the District of Arizona could keep seized electronic devices for up to 60 days and had assigned a filter attorney to review devices. See ECF 404, Mot. to Cont. at 8

II

DISCUSSION

Tanaka has not met her heavy burden of showing that severance is the only option under the circumstances. On the contrary, the circumstances fall strongly in favor of maintaining joinder. The Court should therefore preserve the properly joined defendants for a single trial. Moreover, it can easily do so by maintaining the current trial date or by ordering a continuance for all of the defendants.

A. DIFFICULT STANDARD FOR SEVERANCE

"Severance under Rule 14 is proper only when the defendant carries the difficult burden of demonstrating undue prejudice resulting from a joint trial." *United States v. Davis*, 663 F.2d 824, 832 (9th Cir. 1981). This is because "'[j]oinder is the rule rather than the exception.'" *United States v. Kaplan*, 895 F.2d 618, 621 (9th Cir. 1990) (internal quotations omitted). "Generally speaking, defendants jointly charged are to be jointly tried." *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980). Moreover, "a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004).

5

The Supreme Court has often underscored the "preference in the federal system for joint trials" and its "vital role in the criminal justice system," *Zafiro*, 506 U.S. at 537, describing the damage done when defendants are severed:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice and avoiding inconsistent verdicts and enabling more accurate assessment of relatively culpability—advantages which sometimes operate to the defendant's benefit. Even part from these tactical considerations, joint trial generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

*Richardson*, 481 U.S. at 210.

Consequently, the Ninth Circuit has left no doubt that the burden for a severance is extremely difficult. "Clearly, this is not an easy burden to meet." *Escalante*, 637 F.2d at 1201. It is a "heavy burden," *United States v. Patterson*, 819 F.2d 1495, 1502 (9th Cir. 1987); "difficult," *United States v. Brady*, 579 F.2d 1121, 1127 (9th Cir. 1978); necessitating "a high standard for a showing of prejudice." *United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994).

"The test for abuse of discretion by the district court is whether a joint trial was *so manifestly prejudicial* as to require the trial judge to exercise his discretion *in but one way*, by ordering a separate trial." *Fernandez*, 388 F.3d at 1241 (emphases added; internal quotations omitted). Put it another way, the prejudice to the defendant must be "of such magnitude that the defendant was denied a fair trial,"

6

*Vasquez-Velasco*, 15 F.3d at 846 (internal quotations omitted), "outweigh[ing] the dominant concern with judicial economy" such that it "*compelled* the exercise of the court's discretion to sever." *Kaplan*, 895 F.2d at 621 (emphasis added).

### B.    TANAKA FAILS THE HIGH STANDARD

Tanaka falls well short of this "heavy burden." *Patterson*, 819 F.2d at 1502. She—joined by her co-defendants—presents two primary grounds for severance. The first ground alleges a host of prejudicial effects that could ensue "if the government mid-trial drops bombshell evidence of the Alleged Tanaka Conduct." ECF 405, Mot. to Sever at 8. The second asserts that the District of Arizona's seizure of Tanaka's electronic devices has compromised her ability to prepare for the upcoming trial. ECF 405, Mot. to Sever at 5. Both arguments are unpersuasive.

#### 1.    *Evidence From Threat Investigation*

The United States does not have and will not use—in a joint trial with Tanaka—evidence from the District of Arizona's threat investigation. This moots most of the arguments presented in Tanaka's motion to sever, including:

- Purported prejudice to Tanaka from her inability to review the evidence, move to compel discovery, or move to suppress the evidence.

- Purported prejudice to Tanaka due to insufficient time to review the evidence and litigate *Brady* and *Jencks* issues.

- Purported prejudice to Tanaka due to potential cross-examination about the evidence, which would impact her decision whether or not to testify.

- Purported prejudice to the other five co-defendants "due to the extraordinary nature of the allegations."

7

ECF 405, Mot. to Sever at 6–7; ECF 417, Joinder to Mot. to Sever at 4 (advocating for severance "because the government refuses to provide assurances regarding their intention to introduce this evidence").

### 2. Seizure of Tanaka's Electronic Devices

The Court should reject Tanaka's argument that she cannot prepare for trial because the District of Arizona seized her two iPhones, her computer, and a USB drive. Her claim makes no sense. She has been a party to this case since September 2022—comprising over 16 months of trial preparation. In fact, Tanaka has easily been the most litigious defendant in this case, filing four failed motions to dismiss the indictment. See ECF 120, 165, 205, and 228. One of those motions involved Tanaka's unsuccessful attempt to disqualify this team from prosecuting her. ECF 228 at 7–9. She also joined a massive prosecutorial misconduct motion (also unsuccessful) impugning the prosecutors' actions during a 16 month grand jury investigation. See ECF 273. And she has filed seven of the defendants' sixteen collective motions *in limine* pending before the Court. See ECF 344–46.

It is not plausible that the seizure of Tanaka's devices, one month before trial, suddenly deprived her of essential material she did not already provide to her attorney in the previous year-and-a-half of intense pretrial litigation. Tanaka has not detailed to this Court (in any filing we can see) precisely what information she and her attorneys now lack that is so critical that they cannot defend against the charges without it, or that she was the only person in possession of that information.

The Ninth Circuit generally follows a four factor test for assessing the prejudicial effect of a joint trial, including: (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether the defendant can show a particularized risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. *Fernandez*, 388 F.3d at 1241. "The first two factors are the most important in this inquiry." *Id.*; see *United States v. Gaines*, 563 F.2d 1352, 1355 (9th Cir. 1977) ("the prime consideration is whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants in the light of its volume and the limited admissibility").

Tanaka's argument does not fall under the two "most important" factors of the prejudice inquiry. Instead, it falls under the final prong—"whether the defendant can show a particularized risk that the joint trial would compromise a specific trial right." *Fernandez*, 388 F.3d at 1241. The Court should not accept vague and implausible assertions of prejudice, submitted in *ex parte* filings the United States cannot see, as basis for severing Tanaka. Such a consequential decision cannot be made on so little support, especially when Tanaka's own conduct may well have been the reason her devices were seized in the first place. The ramifications of

9

severing this complex conspiracy would be significant—requiring a second months-long trial, ordering 80 witnesses return to court for testimony, see ECF 324 at 2, forcing the victim relive the trauma of another public proceeding, distorting the jury's "assessment of relative culpability" among the conspirators, and risking "the scandal and inequity of inconsistent verdicts." *Richardson*, 481 U.S. at 210.

Tanaka therefore cannot show that joinder is "so manifestly prejudicial" that it "outweigh[s] the dominant concern with judicial economy and compel[s] exercise of the court's discretion to sever." *Kaplan*, 895 F.2d at 621. Here, the concern with judicial economy is unquestionably "dominant"—the scale of the conspiracies charged, the size of the upcoming trial, and the number of witnesses expected to be called, all tip heavily in favor of a joint trial that "expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burdens upon citizens to sacrifice time and money to serve on juries and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once." *United States v. Brady*, 579 F.2d 1121, 1128 (9th Cir. 1978).

On the other hand, the seizure of Tanaka's devices, one month before trial, is not "manifestly prejudicial" at all. She had been preparing for trial for 16 months at the time her house was searched. The volume, consistency, and aggressiveness of her pretrial filings strongly indicates her attorney was in already in possession of the materials he needed in order to mount a trial defense. Tanaka also has not made any "particularized" showings of what she needs that cannot be obtained except from the

four devices she cites (e.g. materials might be saved on cloud services). *Fernandez*, 388 F.3d at 1241. This Court should not accept vague and conclusory representations made in *ex parte* submissions that the United States cannot assess or dispute.

Finally, the Court's exercise of discretion should be guided by the fact that this prosecution team has done everything in its power to mitigate Tanaka's claims of prejudice under extraordinary circumstances we neither control nor are responsible for. We have provided assurances that evidence from the threat investigation will not be used in a joint trial. And we have done all we realistically and responsibility can to help Tanaka obtain copies of her devices, without undermining our ability to continue prosecuting this case.

For these reasons, the Court should deny Tanaka's motion to sever.

C.  IF NECESSARY, TRIAL CONTINUANCE IS THE PROPER OPTION, NOT SEVERANCE

If the Court concludes that more time is required for Tanaka to prepare for trial, that would still not justify severing her out. Severance is warranted only when "a joint trial would be so prejudicial that the trial judge *could exercise his discretion in only one way*." *Escalante*, 637 F.2d at 1201 (emphasis added). In other words, the decision to sever must be "compelled" by the circumstances. *Kaplan*, 895 F.2d at 621. Here, the Court has options besides the drastic recourse of severance.

Specifically, the Court can continue the trial for all defendants until Tanaka is ready to stand trial. Numerous provisions of the Speedy Trial statute support this approach.

11

First, § 3161(h)(6) provides for a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." "Every circuit to consider this section has concluded that 'an exclusion to one defendant applies to all co-defendants." *Butz*, 982 F.2d at 1381. Under this well-established ground for excluding time, this Court can justifiably continue the trial for a reasonable period of time until Tanaka is ready to proceed.

Second, all defendants have "agreed that the case should be deemed complex" under 18 U.S.C. § 3161(h)(7)(B)(ii). See ECF 135 at 2–3. Given the extraordinary recent developments in this case, outside most parties' control, including the abrupt recusal of Judge Seabright, this case is now even more "unusual" and "complex" and certainly raises "novel questions of fact or law" that would justify additional exclusions of time under the Speedy Trial statute.

Third, failure to grant a continuance would "result in a miscarriage of justice" under § 3161(h)(7)(B)(i). As the United States has argued throughout this response, severing Tanaka from her co-conspirators would constitute a miscarriage of justice. If the Court believes the only alternative to severance is to continue the trial, then the failure to grant such a continuance in the proceeding would result in a miscarriage of justice as well. Accordingly, for similar reasons, the ends of justice would also support a continuance under § 3161(h)(7)(A).

"It is clear that the STA was not intended to alter existing rules of joinder." *United States v. King*, 483 F.3d 969, 974 (9th Cir. 2007). "Congress recognized the utility of multi-defendants trials to effectuate the prompt efficient disposition of criminal justice. It felt that the efficiency and economy of joint trials far outweighed the desirability of granting severance where the criterion was simply the passage of time." *Id.* (internal quotations omitted). Thus nothing in the Speedy Trial statute prevents the Court from continuing the trial as to all defendants—"the proper test is whether the totality of the circumstances warrants a conclusion that the delay was unreasonable." *United States v. Messer*, 197 F.3d 330, 338 (9th Cir. 1999).

Continuing the trial and excluding time under the Speedy Trial is manifestly reasonable here. Keeping the defendants together "is particularly appropriate where the co-defendants are charged with conspiracy," *Fernandez*, 388 F.3d at 1243, and where "the joined counts are logically related, and there is a large area of overlapping proof." *United States v. Anderson*, 642 F.2d 281, 284 (9th Cir. 1981). Particularly in a conspiracy as complex as this one, necessitating a two month trial with an anticipated 80 witnesses, including the victim, "the dominant concern with judicial economy" must prevail. *Kaplan*, 895 F.2d at 621.

In addition, any continuance would not be lengthy—just whatever time Tanaka needs to work with the District of Arizona to obtain her purportedly critical trial materials. To be sure, Tanaka has other options, too. She has indicated that the search warrant specifies a 60 day timeframe for the return of her property. See 404,

13

Mot. to Cont. at 8. She also has recourse in the District of Arizona to file a motion under Fed. R. Crim. P. 41(g) for the return of her property.

The remaining five defendants have not articulated any concrete injuries that would bar a reasonable continuance. In fact, each of Tanaka's co-defendants have made, or at least acceded to, multiple motions to continue this trial—five continuances in all—reaching all the way up to the March 12, 2024 trial date. See ECF 57, 69, 135, 198, and 406. No unreasonable or prejudicial delay arises when the defendants have previously "affirmatively indicated during much of this period that [they were] willing to countenance extensive pretrial delays." *United States v. Vasquez*, 918 F.2d 329, 337 (2d Cir. 1990). Moreover, each of the defendants in this case are free on bond, not in custody. The Ninth Circuit, along with "a number of circuits, have recognized that the fact that the defendant is not incarcerated weighs against a finding of prejudice." *Messer*, 197 F.3d at 340.

Finally, if the price of not continuing the trial is severance, then this decision would significantly "impair both the efficiency and the fairness of the criminal justice system." *Richardson*, 481 U.S. at 210. Tanaka would—quite perversely—receive the windfall of being "the last-tried defendant[] who [has] the advantage of knowing the prosecution's case beforehand." *Id.* Moreover, without Tanaka in the courtroom, her co-defendants would benefit from the distortion in the "accurate assessment of relative culpability." *Id.* Prosecutors would have to present "the same evidence again and again" in two multi-month trials, forcing "victims and witnesses

14

to repeat the inconvenience (and sometimes trauma) of testifying." *Id.* In addition to the significant strain on social and judicial resources, the risk associated with inconsistent verdicts would inure to the public's detriment. *Id.*

\* \* \*

In the face of these considerations, the defendants have not offered any persuasive reasons against a trial continuance.

First, they argue that it would be unfair to lose the prospective jurors the Court and the parties have expended resources to screen. ECF 418, Def. Opp. to Cont. at 4. At the outset, this is not the "prejudice" contemplated by severance jurisprudence. "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 *only if* there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539 (emphasis added). For this reason alone, this argument should be rejected out of hand. Moreover, the defendants fail to recognize that severing Tanaka would produce a worse outcome with an even greater social cost. In such a case, two fully screened and empaneled juries would have to sit for months-long trials, whereas only one trial would be required were a continuance granted in this case.

Second, they claim that a continuance would cause "severe economic hardship." ECF 418, Def. Opp. to Cont. at 4. Again, this does not engage with the "prejudice" required in the severance context. See *Zafiro*, 506 U.S. at 539. In any

15

event, the claim also seems overstated. The cost of pre-screening jurors is a marginal expense relative to the cost of all the heavy pretrial litigation that has occurred in this case, and the cost of the upcoming trial. Moreover, although "the retention of counsel is frequently an inconvenience and an expense, the Speedy Trial Clause's core concern is impairment of liberty; it does not shield a suspect or a defendant from every expense or inconvenience associated with criminal defense." *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986).

Last, the defendants suggest that their anxiety and concern about their trial forecloses a continuance. "Conclusory allegations of general anxiety and depression are present in almost every criminal prosecution." *United States v. Simmons*, 536 F.2d 827, 831 (9th Cir. 1976). Such allegations "constitute a showing of minimal prejudice of a type normally attending criminal prosecution." *Id.* In addition, their multiple motions to continue this case—five in all—belie the contention they cannot endure a reasonable continuance to account for the recent surprise developments.

### D.   PROSECUTOR DISQUALIFICATION

The defendants finally suggest that the special attorney allegedly endangered by Tanaka might be laboring under a personal conflict of interest and could be subject to recusal under 28 U.S.C. § 528. ECF 417, Def. Joinder to Mot. to Sever at 7. As described above, however, the prophylactic steps taken to date have insulated the prosecution team from the threat investigation, information about the threat investigation, and the office conducting the threat investigation—extinguishing any

16

need for recusal. Additional steps were taken to address any possible personal conflict, which we are willing to share *ex parte* and in camera if the Court requires.

Of note—arguments like this are what make the strict barrier between this team of prosecutors and the District of Arizona necessary.[3]

III

CONCLUSION

The Court should deny Tanaka's motion to sever as well as the related joinders (ECF 415 and 417). If the Court finds that Tanaka cannot be ready for trial on March 12, 2024, the Court should grant Tanaka's motion to continue (ECF 404), excluding time under the Speedy Trial Act under the applicable provisions cited above.

Dated: February 14, 2024          Respectfully submitted,

                                  MERRICK B. GARLAND
                                  Attorney General

                                  */s/ Andrew Y. Chiang*
                                  MICHAEL G. WHEAT
                                  JOSEPH J.M. ORABONA
                                  JANAKI G. CHOPRA
                                  COLIN M. MCDONALD
                                  ANDREW Y. CHIANG
                                  Special Attorneys of the United States

---

[3] Tanaka and her co-defendants also claim that severance is warranted because of anticipated publicity about her conduct. Not only is this argument speculative, it is not clear how severance would resolve the issue of adverse publicity. In any event, publicity concerns are typically addressed in *voir dire*, not with a severance. See *Semler v. United States*, 332 F.2d 6, 7 (9th Cir. 1964). To the extent that the defendants believe adverse publicity is imminent, then this would support a trial continuance to avoid impaneling a jury that is then exposed to negative publicity.

17

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>　　　　　　　Defendants. | CR No. 22-00048-TMB-NC<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED that:

　　I, Andrew Y. Chiang, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893.

　　I am not a party to the above-entitled action. Upon filing on February 14, 2024, I have contemporaneously caused service of the foregoing United States' Unredacted Response in Opposition to Tanaka's Motion to Sever and Related Joinders; Position on Continuance of Trial; upon the following via e-mail communication and/or an electronic file transfer service:

Birney B. Bervar
Attorney for Keith M. Kaneshiro
bbb@bervar-jones.com

18

Jennifer Leiser
John Schum
Nina Marino
Ryan Mitsos
Jessica Ann Szemkow
Attorneys for Dennis K. Mitsunaga
lieser@kaplanmarino.com
John@JohnSchum.com
marino@kaplanmarino.com
ja.szemkow@outlook.com
mitsos@kaplanmarino.com

Doris Lum
Attorney for Terri Ann Otani
doris@dorislumlaw.com

Andrew M. Kennedy
Attorney for Aaron S. Fujii
Andrew@kona-lawyer.com

Thomas M. Otake
Attorney for Chad Michael McDonald
thomas@otakelaw.com

Andrew S. Cowan
Crystal Gail K. Glendon
Mark Mermelstein
Attorneys for Sheri Jean Tanaka
acowan@holmesathey.com
crystalglendonlaw@gmail.com
mmermelstein@holmesathey.com


    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on February 14, 2024.

                                                /s/ *Andrew Y. Chiang*
                                                ANDREW Y. CHIANG