UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>                    Defendants. | Case No. 1:22-cr-00048-TMB-NC<br><br>ORDER ON DEFENDANTS'<br>MOTIONS *IN LIMINE* NO. 1–4 AND<br>UNITED STATES' MOTION *IN<br>LIMINE* NO. 2<br>**(DKTS. 346 and 341)** |

## I.    INTRODUCTION

Before the Court are Defendants Keith Mitsuyoshi Kaneshiro, Dennis Kuniyuki Mitsunaga, Terri Ann Otani, Aaron Shunichi Fujii, Chad Michael McDonald, and Sheri Jean Tanaka's ("Defendants") "Motions *in Limine* No. 1–4 to Exclude Reference to Prior Verdicts, Judicial and Administrative Orders and Findings of Fact" (the "Defendants' Motions No. 1–4")[1] and the United States' "Motion *in Limine* No. 2: to Admit Evidence Relating to the *L.J.M. v. MAI* Civil Trial" (the "United States' Motion No. 2").[2] The Defendants ask the Court "to exclude at trial evidence, questioning and argument relating to multiple prior judicial and administrative rulings, orders, findings of fact, and verdicts."[3]

---

[1] Dkt. 346 (Defendants' Motions *in Limine* No. 1–4).
[2] Dkt. 341 (United States' Motion *in Limine* No. 2).
[3] Dkt. 346 at 2.

The United States opposes the Defendants' Motions,[4] and asks the Court to admit the special verdict form, the civil judgment, and Defendants' statements, pleadings, and testimonies from the *L.J.M. v. MAI* Civil Trial.[5]

The matter is fully briefed, and a public hearing was held on February 26, 2024.[6] For the following reasons, the Court **GRANTS in part and DENIES in part** Defendants' Motions, and **GRANTS in part and DENIES in part** the United States' Motion. The Court directs the Parties to confer and submit proposed limiting instructions as set out below to guide the jury's consideration of the evidence and cure any risk of unfair prejudice where appropriate.

## II.   BACKGROUND

Defendants are charged with being members of an alleged conspiracy to persuade City and County of Honolulu Department of Prosecuting Attorney's Prosecuting Attorney Keith Kaneshiro ("Kaneshiro") and the Department of the Prosecuting Attorney ("DPA") to investigate and prosecute a former employee ("L.J.M.") at the Honolulu architecture firm Mitsunaga and Associates, Inc. ("MAI") for theft.[7] The Defendants are jointly charged by a Superseding Indictment with Conspiracy to Commit Honest Services Wire Fraud and Federal Program Bribery, in violation of 18 U.S.C. § 371 (Count 1), and Conspiracy

---

[4] Dkts. 383 (United States' Opposition to Defendants' Motion *in Limine* No. 1); 384 (United States' Opposition to Defendants' Motion *in Limine* No. 2); 382 (United States' Opposition to Defendants' Motion *in Limine* No. 3); 386 (United States' Opposition to Defendants' Motion *in Limine* No. 4).

[5] Dkt. 341 at 2.

[6] Dkt. 462 (Motion Hearing).

[7] Dkt. 70 (First Superseding Indictment).

Against Rights, in violation of 18 U.S.C. § 241 (Count 2).[8] Trial on these charges is set to begin on March 12, 2024.[9]

In 1996, L.J.M. was hired as an architect for MAI.[10] In November 2011, L.J.M. submitted a letter to MAI's President and Chief Executive Officer Dennis Mitsunaga ("Mitsunaga") expressing disagreement with claims Mitsunaga made about her.[11] That same day, MAI terminated L.J.M.'s employment.[12]

A series of administrative and legal actions followed that contextualize the conduct giving rise to these charges. In December 2011, after her termination, L.J.M. sought unemployment benefits from the State of Hawaii.[13] On December 8, 2011, a hearing officer with the Unemployment Insurance Division issued a decision confirming that L.J.M. was eligible for unemployment benefits.[14] MAI appealed this decision, and on January 27, 2012, Appeals Officer Carole Richelieu ("Richelieu") with the Employment Security Appeals Referees' Office subsequently affirmed the hearing officer's decision.[15] MAI appealed Richelieu's ruling to the Hawaii Circuit Court, which also affirmed L.J.M.'s eligibility for unemployment benefits and dismissed the appeal.[16]

---

[8] *Id.* at 1.
[9] Dkt. 413 (Amended Trial Scheduling Order) at 2.
[10] Dkt. 70 at 3.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *See* Dkt. 346-5 (Notice of Unemployment Insurance Decision).
[15] *See* Dkt. 346-6 (Richelieu Decision) at 6.
[16] Dkt. 70 at 3.

On July 17, 2012, MAI Executive Vice President and Chief Operating Officer Aaron Fujii ("Fujii") filed a police report alleging that L.J.M. and Stanford Masui, an attorney for whom L.J.M. had allegedly performed work, committed theft against MAI.[17]

On August 20, 2012, after receiving a right to sue letter from the U.S. Equal Employment Opportunity Commission, L.J.M. filed a lawsuit against MAI alleging claims under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967.[18] As part of this action, L.J.M. also pursued claims related to sexual harassment she alleged she had experienced at work from certain MAI employees in 2000 and 2004.[19]

The conduct giving rise to these charges allegedly occurred between October 2012 and continued through October 2017.[20] On or about October 4, 2012, Mitsunaga and Sheri Jean Tanaka ("Tanaka"), MAI's attorney, met with Kaneshiro and Kaneshiro's Executive Assistant ("EA-1").[21] At this meeting, Mitsunaga and Tanaka allegedly encouraged Kaneshiro and the DPA to investigate and prosecute L.J.M. for committing theft by working unauthorized "side jobs" while billing time to MAI and using MAI resources.[22]

---

[17] *Id.* at 4; Dkt. 336 (United States' 404(b) Notice) at 2–3; Dkt. 342 (Defendants' Motion *in Limine* No. 14 & 15) at 4.

[18] Dkt. 70 at 4. L.J.M. subsequently dropped her age discrimination claim. *See Mau v. Mitsunaga & Assocs., Inc.*, No. CIV. 12-00468 DKW, 2014 WL 5593834, at *1 (D. Haw. Nov. 3, 2014), *aff'd*, 742 F. App'x 279 (9th Cir. 2018) (noting that L.J.M. dismissed her age discrimination claims before trial).

[19] Dkt. 324 (Notice of Joint Trial Presentation Statement) at 3; Dkt. 339 (Defendants' Motions *in Limine* No. 6–9) at 14.

[20] Dkt. 70 at 2–6 (Count 1), 7–9 (Count 2).

[21] *Id.* at 4.

[22] *Id.*

4

Within weeks of this meeting, the Defendants and other MAI employees, affiliates, sub-contractors, and relatives (collectively, the "MAI Donors") began making first-time contributions to Kaneshiro's reelection campaign.[23] Altogether, Kaneshiro, Mitsunaga, Fujii, Tanaka, MAI's Corporate Secretary Terri Ann Otani ("Otani"), MAI employee and later Senior Vice President Chad Michael McDonald ("McDonald"), and the MAI Donors contributed over $45,000 between October 2012 and October 2016.[24] It is undisputed that MAI Defendants, employees, and affiliates have historically donated to politicians, and that they made numerous campaign contributions to various candidates for public office over time.[25]

Certain events relevant to the DPA's investigation and prosecution of L.J.M. roughly coincided in time with L.J.M.'s ongoing civil lawsuit. Eventually, the DPA opened an investigation into L.J.M. and assigned her case to a senior-ranking Deputy Prosecuting Attorney.[26] In or about June 2014, that senior-ranking Deputy Prosecuting Attorney recommended against filing charges against L.J.M.[27] Kaneshiro subsequently reassigned L.J.M.'s prosecution to Jacob Delaplane ("Delaplane"), a newly hired prosecutor assigned to the Career Criminal Unit.[28]

---

[23] *Id.* at 4–5.

[24] *Id.* at 5.

[25] Dkt. 348 (United States' Motion *in Limine* No. 4) at 2–3; Dkt. 377 (Defendants' Opposition to United States' Motion *in Limine* No. 4) at 2.

[26] *See* Dkt. 70 at 5.

[27] *Id.*

[28] Dkt. 70 at 15 (noting that Kaneshiro reassigned the L.J.M. case to "recently hired Deputy Prosecuting Attorney J.D., who was then assigned to the Career Criminal Unit of the DPA."); *see also id.* at 5–6; Dkt. 375 (United States' Opposition to Defendants' Motion *in*

Then, in July 2014, L.J.M.'s federal civil lawsuit against MAI proceeded to trial.[29] MAI filed several counterclaims, including breach of loyalty, intentional interference with prospective business advantage, conversion, and fraud.[30] On July 25, 2014, a jury found neither L.J.M. nor MAI liable on any claim or counterclaim, except for MAI's counterclaim against L.J.M. for breach of loyalty, for which the jury awarded MAI one dollar ($1.00) in nominal damages.[31]

On August 7, 2014, two weeks after the civil trial ended, Otani emailed a complaint to the State of Hawaii Department of Taxation alleging that L.J.M. had committed tax fraud.[32] Otani's complaint did not inform the investigator of the civil trial that had just ended between MAI and L.J.M., but alleged that L.J.M. "was performing 'side jobs' while employed at MAI without MAI's consent, authority, approval, or knowledge" and that MAI had discovered after her termination that she "received payment from these 'side job' clients, but failed to report the income on her taxes."[33] This referral instigated a formal audit and several months long investigation into L.J.M.'s financial activity and tax compliance by the Department of Taxation.[34] On October 6, 2014, finding no improprieties in L.J.M.'s financial activity, the Department of Taxation closed the case.[35]

---

*Limine* No. 11) at 4 (noting Kaneshiro assigned L.J.M.'s prosecution to Delaplane); Dkt. 383-2 (Felony Information) at 1, 3 (identifying Delaplane and Kaneshiro as signatories).
[29] Dkt. 70 at 5; *see Mau v. Mitsunaga & Assocs., Inc.*, 1:12-cv-00468 DKW-BMK (District of Hawaii 2014).
[30] Dkt. 70 at 5.
[31] *Id.*
[32] Dkt. 343-1 (Otani's Referral of L.J.M. to Hawaii Tax Division) at 2–4.
[33] *See id.*
[34] Dkt. 343 (United States' Motion *in Limine* No. 3) at 4.
[35] *Id.*

On December 1, 2014, Delaplane filed a felony information against L.J.M. alleging four counts of second-degree theft under Hawaii law.[36] On September 15, 2017, Judge Karen T. Nakasone dismissed the felony information against L.J.M. with prejudice based on a lack of probable cause for charges against L.J.M. and irregularities in the DPA's investigation and prosecution.[37] The notice of appeal period lapsed on October 15, 2017, and further prosecution was not pursued.[38]

At some point prior to 2021, the United States began investigating the conduct giving rise to these conspiracy charges.[39] In 2021, the United States began to subpoena MAI employees and witnesses to appear before a grand jury; a formal investigation spanned approximately 16 months and included substantial grand jury investigation.[40] The grand jury was shown more than 200 exhibits and more than 80 witnesses testified in connection with this case, resulting in more than 4,000 pages of witness testimony.[41] While testifying before the grand jury, Otani and other witnesses frequently invoked their Fifth Amendment privileges against self-incrimination.[42] In response, United States District Judges Leslie E. Kobayashi, Derrick K. Watson, and J. Michael Seabright issued orders

---

[36] Dkt. 70 at 5–6.

[37] *Id.* at 6.

[38] *Id.*

[39] Dkt. 247 (Otani's Motion to Dismiss) at 8.

[40] Dkt. 285-1 (Declaration of Janaki G. Chopra) at 2.

[41] *Id.*

[42] *See* Dkt. 285 (United States' Consolidated Opposition to Motions Alleging Prosecutorial Misconduct); Dkt. 346 (Defendants' Motion *in Limine* No. 1–4) at 33.

directing Otani and other witnesses to answer questions after they had invoked their Fifth Amendment privileges.[43]

On June 2, 2022, the grand jury returned an Indictment against Kaneshiro, Mistunaga, Otani, Fujii, and McDonald with these charges.[44] On September 8, 2022, the grand jury returned a Superseding Indictment adding Tanaka as a defendant.[45]

Relevant here, Defendants submit four consolidated motions *in limine* to exclude "evidence, questioning and argument relating to multiple prior judicial and administrative rulings, orders, findings of fact, and verdicts":[46]

- **Motion No. 1:** "to exclude at trial any reference to the findings of fact, conclusions of law, and legal reasoning set forth in the September 25, 2017 order by Hawaii Circuit Judge Karen Nakasone dismissing the felony information against L.J.M." ("Nakasone Order"). [47]

- **Motion No. 2:** "to exclude at trial any reference to the underlying findings of fact, legal reasoning, or conclusions of law related to the verdict or any judicial order in the civil case of *L.J.M. v. Mitsunaga & Associates, Inc.*, Civil Case No. 12-00468(DKW-BMK) (District of Hawaii 2012)" ("L.J.M. Civil Case").[48]

- **Motion No. 3:** "to exclude at trial any reference to findings of fact or conclusions of law from any administrative decision or ruling related to L.J.M.'s application for

---

[43] Dkt. 346 at 32–33.
[44] Dkt. 285-1 at 2; *see* Dkt. 1 (Indictment).
[45] Dkt. 285-1 at 2; *see* Dkt. 70.
[46] Dkt. 346 at 2.
[47] *Id.* at 3.
[48] *Id.*

Unemployment Insurance Benefits (UIB)" ("UIB Decisions") and "to exclude any operative legal conduct by counsel for the parties in the UIB proceedings, together with any briefing they submitted or oral arguments they made."[49]

- **Motion No. 4:** "to exclude at trial any reference to any order or factual finding by any United States District Judge related to any motion to compel grand jury testimony in this matter" ("Grand Jury Orders").[50]

The Defendants clarify that they "do not seek to exclude evidence of the pure fact of these rulings, orders, and verdicts" only "the factual findings and legal reasoning contained in them."[51] Further, Defendants acknowledge that "the basic nature of these dispositions may be admissible for legitimate non-hearsay purposes, such as their effect on the listener or impeachment."[52]

The United States submits Motion *in Limine* No. 2 to admit evidence from the L.J.M. Civil Case, including the special verdict form, civil judgment, and pleadings and statements from MAI Defendants McDonald, Otani, Fujii, and Tanaka.[53]

---

[49] *Id.*
[50] *Id.* at 4.
[51] *Id.* at 3.
[52] *Id.*
[53] Dkt. 341 at 2.

### III.   LEGAL STANDARD

*A.  Motions* in Limine

"A motion *in limine* is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence"[54] and may be used to request evidence be either excluded or admitted before trial.[55] Motions *in limine* are appropriate when the "mere mention of evidence during trial would be highly prejudicial."[56] "*[I]n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."[57]

A party seeking to exclude evidence through a motion *in limine* must satisfy a "high standard" and show the evidence is inadmissible on all potential grounds.[58] Otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[59]

---

[54] *Barnard v. Las Vegas Metro. Police Dep't*, No. 2:03-cv-01524-RCJ-LRL, 2011 WL 221710, at *1 (D. Nev. Jan. 21. 2011); *Research Corp. Techs. v. Microsoft Corp.*, No. CV-01-658-TUC-RCJ, 2009 WL 2971755, at *1 (D. Ariz. Aug. 19, 2009).

[55] *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Fed. R. Evid. 609).

[56] *Barnard*, 2011 WL 221710, at *1 (quoting BLACK'S LAW DICTIONARY 1109 (9th ed. 2009)); *Research Corp.*, 2009 WL 2971755, at *1.

[57] *Ohler v. United States*, 529 U.S. 753, 758, n.3 (2000).

[58] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF Ry. Co. v. Quad City Testing Lab'y, Inc.*, No. CV-07-170-BLG-RFC, 2010 WL 4534406, at *1 (D. Mont. Oct. 28, 2010) (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

[59] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF*, 2010 WL 4534406, at *1 (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

### B.  Hearsay

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[60] Statements not offered for the truth of the matter asserted are not hearsay.[61] Under Federal Rule of Evidence ("Rule") 802, hearsay is inadmissible unless an exclusion or an exception applies. "A court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.'"[62] "One common application of this principle is admitting a declarant's out-of-court statement for the purpose of establishing what effect it had on the listener."[63]

Under Rule 801(d)(2)(A), an opposing party's statement, when "offered against an opposing party and[] . . . made by the party in an individual or representative capacity" is not hearsay and thus excluded from Rule 801's prohibition, even if offered for the truth of the matter asserted.[64] Rule 803 establishes various exceptions to the rule against hearsay.[65]

### C.  Relevance and Prejudice

Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence[] and . . . the fact is of consequence in

---

[60] Fed. R. Evid. 801(c).
[61] Fed. R. Evid. 801; *United States v. Moran*, 493 F.3d 1002, 1013 (9th Cir. 2007).
[62] *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) (quoting *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004)).
[63] *United States v. Lopez*, 913 F.3d 807, 826 (9th Cir. 2019).
[64] *United States v. Thompson*, 538 F. Supp. 3d 1122, 1129 (D. Nev. 2021) ("Statements made by a party opponent are not hearsay, even if offered for the truth of the matter asserted.").
[65] Fed R. Evid. 803(6).

determining the action."[66] Relevant evidence is admissible unless the United States Constitution, a federal statute, the rules of evidence, or the Supreme Court provide otherwise; irrelevant evidence is inadmissible.[67] However, relevant evidence may still be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[68]

### D. Character Evidence

Under Rule 608, "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked."[69] Further, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about."[70]

---

[66] Fed. R. Evid. 401.
[67] Fed. R. Evid. 402.
[68] Fed. R. Evid. 403.
[69] Fed. R. Evid. 608(a).
[70] Fed. R. Evid. 608(b).

# IV.   DISCUSSION

A. *Defendants' Motion* in Limine *No. 1 is GRANTED in part and DENIED in part,
such that the oral Nakasone Order is admissible for the limited purpose of
showing effect on a listener, subject to a limiting instruction.*

The United States has expressed intent to establish at trial that "there was no
probable cause" for the theft charges MAI sought to be filed by the DPA against L.J.M.[71]
Defendants argue that "probable cause is critically relevant to Defendants' defense, which
will establish that they had a good faith basis for the L.J.M. criminal referral and
prosecution."[72] Defendants suggest the United States will seek to use the Nakasone Order,
which dismissed the felony information against L.J.M., to prove lack of probable cause.[73]
Therefore, Defendants seek to exclude Judge Nakasone's oral and written orders
dismissing the felony information against L.J.M. on the basis that the United States will
seek to use it to establish lack of probable cause.[74]

Defendants submit that the Nakasone Order is inadmissible to establish lack of
probable cause for L.J.M.'s prosecution because it is hearsay under Rules 801 and 802 and
does not fall within a recognized hearsay exception.[75] Defendants argue that *United States
v. Sine*[76] proscribes the use of "discrete judicial factfindings and analysis . . . to prove the
truth of those findings and that analysis" "unless a specific hearsay exception exists."[77]

---

[71] Dkt. 108 (Response in Opposition) at 3 n.2.
[72] Dkt. 346 at 5.
[73] *Id.*
[74] *Id.* at 5–6.
[75] *Id.* at 6–7.
[76] 493 F.3d 1021 (9th Cir. 2007).
[77] Dkt. 346 at 8 (quoting *Sine*, 493 F.3d at 1036).

Further, Defendants argue that the Nakasone Order "cannot be offered for the non-hearsay purpose of showing [its] effect on the listener" because the Order was issued "at the tail end of the alleged conspiracies, and the [G]overnment does not allege that any defendant took relevant action in response to its contents."[78] And, even if a hearsay exception does apply, Defendants submit that the Nakasone Order should be excluded under Rule 403 because "jurors would give 'undue weight'" to its findings, and its probative value is therefore outweighed by the danger of unfair prejudice to Defendants.[79] Finally, Defendants contend that the Confrontation Clause of the Sixth Amendment bars admission of the Nakasone Order because the Order contains testimonial evidence that the United States "seeks to use . . . against [D]efendants."[80]

The United States represents that it seeks to admit the Nakasone Order not to prove lack of probable cause for L.J.M.'s prosecution, but to demonstrate effect on a listener.[81] It submits that it will use Judge Nakasone's oral order "for the non-hearsay purpose of showing its effect on Kaneshiro" and her written order "to show its effect on the [DPA] chiefs who refused to authorize an appeal, and . . . on Kaneshiro himself," which it argues is "important evidence of the [D]efendants' corrupt intent and of the corrupt *quid pro quo*."[82] The United States further argues that the Nakasone Order is not "substantially outweighed by the danger of unfair prejudice" and should not be excluded under Rule 403

---

[78] *Id.* at 9.
[79] *Id.* at 12 (quoting *Sine*, 493 F.3d at 1033).
[80] *Id.* at 15.
[81] Dkt. 383 at 3.
[82] *Id.* at 8–9.

because Kaneshiro's reactions to the Nakasone Order "evidence . . . the [D]efendants' intent and the existence of an illegal agreement."[83] Moreover, it asserts that "any potential prejudice . . . can be mitigated with strong limiting instructions, proper use of evidence, and independent facts establishing the absence of probable cause."[84] It states that it "will ask this Court to read a limiting instruction at the time of admission, to emphasize to the jury the limited purpose for which the order[] [is] admitted."[85]

The Court finds that the oral Nakasone Order, but not the written Order, may be admitted for the limited purpose of showing how Kaneshiro and DPA officials reacted to Judge Nakasone's finding that there was a lack of probable cause to file theft charges against L.J.M. Further, the Court directs the Parties to craft a limiting instruction to the jury directing that the oral Nakasone Order may only be considered for its effect on Kaneshiro and other DPA officials, not for the truth of the matters asserted. If Defendants open the door to the written Nakasone Order, the Court may issue a limiting instruction to the jury directing that it may only be considered for this limited purpose.

1.    <u>The Nakasone Order is not hearsay.</u>

First, the Court finds that the Nakasone Order is not hearsay to the extent the United States seeks to use it to show its effect on Kaneshiro and other DPA officials in responding to the investigation against L.J.M. An out-of-court statement is not hearsay if it is offered for a purpose other than to prove the truth of the matter asserted.[86] "One common

---

[83] *Id.* at 10.
[84] *Id.* at 11.
[85] *Id.* at 3.
[86] *See* Fed. R. Evid. 801(c)(2); *United States v. Lopez*, 913 F.3d 807, 826 (9th Cir. 2019).

application of this principle is admitting a declarant's out-of-court statement for the purpose of establishing what effect it had on the listener."[87]

Here, the United States seeks to use the Nakasone Order to show disparate DPA responses to her ruling dismissing the felony information against L.J.M., not to prove the truth of the factual findings or legal reasoning found therein (i.e., that there was lack of probable cause in pursuing criminal charges against L.J.M.). It argues Kaneshiro's response to Nakasone's Order, and the responses of the Chief of Appeals and the Chief of the Career Criminal Unit, both of whom refused to authorize Kaneshiro's appeal, are probative because they offer "strong evidence that [Kaneshiro] was not acting for legitimate prosecutorial objectives, but under a corrupt arrangement with the MAI [D]efendants."[88] The Court agrees that showing the Nakasone Order's effect on Kaneshiro and other DPA officials is a non-hearsay purpose used to establish effect on the listener. Thus, *Sine* is distinguishable on the facts because the United States does not seek to present the Nakasone Order to prove the truth of its factual findings or legal reasoning.

The Defendants further argue that the Order cannot be offered for the purpose of showing effect on the listener because it was issued during the end of the alleged conspiracy and the United States "does not allege that any defendant took relevant action in response to its contents."[89] At the February 26, 2024, hearing, Defendants noted there was genuine disagreement between DPA officials as to whether sufficient probable cause existed to

---

[87] *Lopez*, 913 F.3d at 826.
[88] Dkt. 383 at 8.
[89] Dkt. 346 at 9.

pursue criminal charges against L.J.M. after Judge Nakasone issued her order, and insinuated that the purpose of showing its effect on Kaneshiro and two DPA officials was misleading. Moreover, Defendants raised the concern that any effect shown on Kaneshiro could be imputed to the other Defendants. However, the United States purports to use the Nakasone Order to show Kaneshiro's "unwillingness to accept [Nakasone's rulings]" (i.e., his internal request to appeal the Order) and the "opposite response[s] from other supervisors in his office" (i.e., their refusal to authorize Kaneshiro's appeal).[90] These disparate responses are probative and central to the United States' claim that Kaneshiro sought to prosecute L.J.M. as part of an alleged *quid pro quo*, and they occurred during the period of the alleged conspiracy to prosecute L.J.M. Therefore, the Court finds the Nakasone Order is relevant to the alleged conspiracy charges under Rule 401 and is being offered for a non-hearsay purpose.

2.      The probative value of the written Nakasone Order is substantially outweighed by the risk of unfair prejudice, but the oral order is admissible.

Second, the Court finds that the probative value of the written Nakasone Order is substantially outweighed by the risk of unfair prejudice under Rule 403. The Nakasone Order dismissing the felony information against L.J.M. is probative and central to the United States' argument that Kaneshiro's response was "not consistent with how an uncompromised prosecutor would behave" and is "evidence of the defendants' intent and the existence of an illegal agreement."[91] Nonetheless, the Court agrees with Defendants

---

[90] Dkt. 383 at 9–10.
[91] *Id.* at 10.

that admitting the written Nakasone Order itself, especially considering its strong language critiquing the L.J.M. criminal investigation, may "unduly prejudice the jury's factfinding process as to whether the Defendants had a good faith basis to believe that L.J.M. had committed a crime" because the jury might "defer to [Judge Nakasone] as 'an authoritative, professional factfinder rather than determine those issues for themselves.'"[92] Therefore, the Court finds that the written Nakasone Order is inadmissible under Rule 403.

However, the United States may introduce a transcript of the oral Nakasone Order to demonstrate its effect on Kaneshiro and other DPA officials. The Court finds that the oral Nakasone Order has similar probative value to the written order but has a mitigated risk of unfair prejudice to Defendants or confusing the issues for a jury. The Court also finds that a limiting instruction can be used to effectively guide the jury's consideration of the oral order only for its effect on Kaneshiro and other DPA officials, not for the truth of the matter asserted. The Court further notes that if Defendants open the door to the written Nakasone Order, the written order may be admitted with the use of a limiting instruction, to mitigate the risk of unfair prejudice to Defendants.

3.   The oral Nakasone Order is not barred by the Confrontation Clause.

Finally, the Court finds that the oral Nakasone Order is not barred by the Confrontation Clause. "[T]estimonial, out-of-court statements by witnesses are barred under the Confrontation Clause unless the witnesses are unavailable and the defendant had

---

[92] Dkt. 346 at 12 (quoting *United States v. Sine*, 493 F.3d 1021, 1033 (9th Cir. 2007)).

a prior opportunity to cross-examine them."[93] The Ninth Circuit has held that documents "not made in anticipation of litigation,"[94] including memoranda of oral decisions "that give[] a record of the parties and decision," are nontestimonial in nature.[95] As a public order dismissing L.J.M.'s felony information that was not made for the purpose of future litigation, the Nakasone Order is nontestimonial under Ninth Circuit precedent. Moreover, the United States is barred from using the oral Nakasone Order to prove the truth of the matter asserted.[96]

For these reasons, the Court **GRANTS in part and DENIES in part** the Defendants' Motion *in Limine* No. 1 and permits the United States to use the oral Nakasone Order for the limited purpose of showing its effect on Kaneshiro and other DPA officials in investigating L.J.M., with an appropriate limiting instruction.

 B. *Defendants' Motion* in Limine *No. 2 is GRANTED in part and DENIED in part, and the United States Motion* in Limine *No. 2 is GRANTED in part and DENIED in part, such that the civil judgment, related rulings on MAI's counterclaims, MAI's $1.00 nominal damages award, and Defendants' statements from the L.J.M. Civil Case are admissible, subject to a limiting instruction, and the special verdict form is inadmissible.*

Defendants seek to exclude references to "underlying findings of fact, legal reasoning, or conclusions of law related to the verdict or any judicial order in the L.J.M. Civil Case."[97] Accordingly, they ask the Court to preclude the United States from

---

[93] *United States v. Ballesteros-Selinger*, 454 F.3d 973, 974–75 (9th Cir. 2006) (citing *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)).
[94] *United States v. Bahena–Cardenas*, 411 F.3d 1067, 1075 (9th Cir. 2005).
[95] *Ballesteros-Selinger*, 454 F.3d at 975.
[96] *See Crawford*, 541 U.S. at 59 n.9.
[97] Dkt. 346 at 16.

"establish[ing] any facts in this case by relying on rulings made by the judge . . . or on the jury's verdict, for the same basic legal reasons set forth previously" in their Motion *in Limine* No. 1.[98] They argue that the L.J.M. Civil Case rulings and verdict are "inadmissible hearsay under Rules 801 and 802, and would likely prejudice the jury in its deliberations."[99] They further argue that admitting the verdict and court rulings would be inconsistent with *United States v. Kealoha*,[100] where the Court excluded prior jury verdicts.[101] Thus, admitting the L.J.M. Civil Case rulings and verdict, Defendants assert, would "allow 'the government to shortcut the usual process of proving facts by putting witnesses before a jury'"[102] and would "create 'the possibility that the jury will defer to the earliest result and thus will, effectively, decide a case on evidence not before it.'"[103]

The United States in turn seeks to admit the special verdict form, judgment, and statements, pleadings, and testimonies from Defendants in the L.J.M. Civil Case.[104] First, it seeks to admit: "(1) the jury's verdicts for L.J.M. on MAI's fraud and negligence counterclaims; (2) the jury's award of $1.00 to MAI on its breach of duty of loyalty claim; and (3) the district judge's dismissal of the conversion claim on a Rule 50 motion that MAI did not oppose."[105] It also seeks to admit the civil judgment.[106] It argues that the special

---

[98] *Id.* at 17.
[99] *Id.*
[100] CR. No. 17-00582 JMS-WRP, 2019 WL 22620004 (D. Haw. June 26, 2019).
[101] Dkt. 346 at 20 (quoting *Kealoha*, 2019 WL 22620004, at *3).
[102] *Id.* at 21 (quoting *United States v. Sine*, 493 F.3d 1021, 1041 (9th Cir. 2007)).
[103] *Id.* (quoting *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975)).
[104] Dkt. 341 at 2.
[105] Dkt. 384 at 4–5.
[106] Dkt. 341 at 2, 3.

verdict form and the civil judgment "prove that MAI's then senior vice president, Chad McDonald, lied in his declaration in support of L.J.M.'s felony information" and further "supply admissible, non-hearsay evidence of their effect" on the Defendants' decision to pursue criminal charges against L.J.M. based on the "same conduct and the same evidence" as in the L.J.M. Civil Case.[107] Second, it seeks to admit "statements, pleadings, and testimonies" made by Defendants during the course of the L.J.M. Civil Case.[108] Specifically, it seeks to admit testimony by McDonald, Otani, and Fujii on the basis such statements are opposing party admissions.[109] It also seeks to admit a number of statements made by Tanaka made during the course of the L.J.M. Civil Case as "direct evidence of the charged conspiracy, as they reveal [her] knowledge about the conspiracy and demonstrate how the conspirators used Kaneshiro's office to harass L.J.M. in the civil case," or in the alternative, as facts "inextricably intertwined with the charged offenses."[110]

In response to the United States' Motion *in Limine* No. 2, Defendants incorporate their Motion *in Limine* No. 2 and first argue that the special verdict form and its factual findings should be excluded as inadmissible hearsay under Rule 802.[111] Defendants further contend that the verdict form should be excluded because its probative value "is greatly outweighed by the dangers of its unduly prejudicial effect on the jury, confusion of issues, and wasting time."[112] Finally, Defendants acknowledge that while the written judgment

---

[107] *Id.* at 2–3, 8.
[108] *Id.* at 2.
[109] *Id.* at 8–9.
[110] *Id.* at 9–10.
[111] Dkt. 381 at 6.
[112] *Id.*

itself may be admitted, the amount of compensatory damages to MAI should be excluded.[113] Defendants also incorporate their Motion *in Limine* No. 13[114] and ask the Court to exclude under Rule 403 Tanaka's litigation conduct and statements made "(1) in her closing argument; (2) in a motion *in limine* she filed, and (3) in connection with a discovery dispute."[115]

In response to Defendants' Motion *in Limine* No. 2, the United States incorporates its Motion *in Limine* No. 2 and Opposition to Defendant's Motion *in Limine* No. 1, and contends that "[t]he verdicts and orders with respect to MAI's counterclaims in the L.J.M. Civil Case, . . . and the corresponding analysis therein, are admissible not for the truth of the matters asserted, but for their effect on" the Defendants.[116] It argues that the verdict form and rulings on MAI's counterclaims, and their "counterintuitive effect on the [D]efendants," constitute "significant evidence that the [D]efendants were not acting for bona fide law enforcement reasons, but for corrupt purposes."[117] The United States submits that it will "request that the Court read a limiting instruction . . . emphasizing the specific and limited nature of this evidence to the jury."[118] It further asks the Court for permission to "provide an appropriate amount of context surrounding MAI's counterclaims" to establish that the "criminal charges against L.J.M. were simply repackaged versions of

---

[113] *Id.* at 2.
[114] Dkt. 344 (Defendants' Motion *in Limine* No. 12 & 13).
[115] Dkt. 381 at 7.
[116] Dkt. 384 at 2, 4.
[117] *Id.* at 6.
[118] *Id.* at 5.

MAI's rejected civil claims."[119] It argues that such evidence would not be unfairly prejudicial or waste the jury's time under Rule 403.[120] Finally, it contends that "the verdicts in this case . . . bear no resemblance to the verdict at issue in *Kealoha*," and that the Defendants' "participation in, and understanding of, the L.J.M. civil case is highly relevant to the conspiracy" charged here.[121]

      1.    <u>The civil judgment and related rulings on MAI's counterclaims are admissible.</u>

First, the Court finds that the civil judgment and rulings from the L.J.M. Civil Case, including the rulings on MAI's counterclaims, its award of $1.00 to MAI, and the Court's dismissal of MAI's conversion claim, are admissible under Rules 801 and 802 for the non-hearsay purpose of showing their effect on the listener. Defendants do not dispute the admissibility of the judgment or the "pure fact" of the rulings, and the United States does not seek to use them as substantive proof in the instant criminal case, but rather for the non-hearsay purpose of showing their effect on Defendants' subsequent decision to prosecute L.J.M. in the wake of the civil jury's verdict. Given that the Parties agree MAI's counterclaims were predicated on the "same basic facts that supported the theft charges against L.J.M.," the Court agrees that Defendants' response to the civil case is a permissible non-hearsay purpose used to establish effect on the Defendants.[122]

---

[119] *Id.* at 6–7.
[120] *Id.* at 7–8.
[121] *Id.* at 9–10.
[122] *Id.* at 8 (emphasis removed) (quoting Dkt. 344 at 21).

Moreover, the Court does not find that the high probative value of the civil judgment and rulings is substantially outweighed by a risk of prejudice under 403. However, the United States may not rely on facts asserted in or underlying the judgment or the rulings to "prove at trial that no evidence supported criminal charges against L.J.M."[123] To this end, the Court will issue a limiting instruction to the jury directing that the civil judgment and rulings may only be considered for their effect on Defendants, not for the truth of the matter asserted.

2.   <u>The probative value of the verdict form is substantially outweighed by a risk of unfair prejudice, confusing issues, or wasting time.</u>

Second, the Court finds that the probative value of the verdict form is substantially outweighed by a risk of unfair prejudice, confusing the issues for the jury, or wasting time under Rule 403. The Court notes that the verdict form and Defendants' response to it appear probative to the United States' argument that Defendants sought to prosecute L.J.M. on largely the same conduct and evidence that predicated the civil trial and is thus relevant to the alleged *quid pro quo* conspiracy. However, the Court is not convinced that the verdict form offers any further probative value that is not already offered by the written judgment itself. Moreover, Defendants effectively argue that admitting the verdict form would pose a risk that the jury might defer to the findings of the previous jury rather than independently decide whether the evidence before it supports criminal charges against L.J.M.[124]

---

[123] Dkt. 381 at 5.

[124] *Id.* at 4 n.1 (citing *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975); *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1009–10 (9th Cir. 2007); *Blakely v. City of Clarksville*, 244 Fed. App'x 681, 684 (6th Cir. 2007)).

Moreover, the Court does not find that a limiting instruction could sufficiently cure this risk of unfair prejudice or confusing issues for the jury. Thus, the verdict form is inadmissible under Rule 403.

Defendants further argue the prior verdict is inadmissible under the Court's reasoning in *Kealoha*, which excluded prior civil verdicts "to the extent that they are offered to prove the truth of the matters asserted," did not fall under a hearsay exception, "ha[d] no legally operative effect that is relevant to this case," and were otherwise barred under Rule 403.[125] Defendants note that the parties in *Kealoha* shared "some degree of commonality of the parties" and that the prior state verdict had "little if any relevance to the federal criminal charges," and argue that the parties and relevance of the prior civil verdict here are even more attenuated.[126] The Court disagrees, and finds the facts here distinguishable from those in *Kealoha*. As noted by the United States, the party seeking inclusion of the prior verdict in that case sought to introduce it for the truth of the matter asserted.[127]

The Court is not persuaded that the reasoning in *Kealoha* squarely applies here. The United States is not seeking to use the verdict form to prove the truth of the matter asserted, but rather to show its effect on Defendants. Though Defendants submit that the parties involved in the civil case and the instant criminal prosecution share little commonality, five of the Defendants are MAI executives, officers, or agents, the civil trial and criminal trial

---

[125] Dkt. 346 at 20.
[126] *Id.* at 19–20.
[127] Dkt. 384 at 9.

were predicated upon the same basic facts, and the civil verdict was issued during and preceding the acts of the alleged conspiracy. Thus, the prior civil verdicts appear to have greater relevance and bearing on the present case than those in *Kealoha*. Nonetheless, for the reasons mentioned above, the verdict form is inadmissible under Rule 403.

3.   The amount of the $1.00 award of compensatory damages is admissible.

Defendants do not dispute that "the pure fact of the judgment itself may be admitted," but contend that the "amount of compensatory damages awarded to MAI" is not admissible under *Engquist v. Oregon Department of Agriculture*.[128] The Court disagrees. *Engquist* does not hold that compensatory damages in a prior verdict are never admissible for a non-hearsay purpose, but merely notes that legal "[c]ommentators agree that most courts forbid the mention of verdicts or damage amounts obtained in former or related cases."[129] Although the Court is wary that "admission of a prior verdict creates the possibility that the jury will defer to the earlier result,"[130] the amount of the $1.00 awarded to MAI will not be used to prove the truth of the facts underlying the civil judgment but to show its effect on Defendants. That MAI was awarded $1.00 for nominal damages in the L.J.M. Civil Case is probative and relevant because it provides the jury important context for understanding the outcome of the civil trial and Defendants' response to the jury's verdict. Further, a limiting instruction may be used to clarify that the amount of the $1.00 award should not be used to impute either party's culpability in the civil trial or suggest the

---

[128] Dkt. 381 at 2 (citing *Engquist v. Oregon Dep't of Agr.*, 478 F.3d 985, 1009 (9th Cir. 2007), *aff'd sub nom. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008)).
[129] *Engquist*, 478 F.3d at 1009.
[130] *Id.* at 1009–10.

truth of the underlying facts, and may only be considered for the non-hearsay purpose of establishing its effect on Defendants.

    4.    <u>Tanaka, McDonald, Otani, and Fujii statements during the L.J.M. Civil Case are admissible as opposing party statements.</u>

Last, the Court finds that the testimonial statements given by Defendants McDonald, Otani, and Fujii during the L.J.M. Civil Case are admissible as opposing party statements under Rule 801(d)(2), to the extent they are also relevant to this case under Rule 401. Additionally, the Court finds that Tanaka's statements during the Civil Case, including statements made in her closing argument, in motions *in limine* she filed, and in connection with a discovery dispute, are also admissible as opposing party statements, to the extent they are relevant.[131]

For these reasons, the Court **GRANTS in part and DENIES in part** the Defendants' Motion *in Limine* No. 2, and **GRANTS in part and DENIES in part** the United States' Motion *in Limine* No. 2. The United States may use the civil judgment, including the amount of the $1.00 award, and related rulings on MAI counterclaims for the limited purpose of showing its effect on Defendants. Moreover, the United States may admit Defendants' testimony from the L.J.M. Civil Case. However, the special verdict form is inadmissible under Rule 403.

---

[131] For further analysis and discussion, see the Court's Order responsive to Defendants' Motion *in Limine* No. 12 & 13.

C. *Defendants' Motion* in Limine *No. 3 is DENIED as moot in part and DENIED in part, such that the written Unemployment Insurance Benefits (UIB) Decisions are inadmissible, the dispositions of the UIB Decisions and Defendants' statements during the UIB proceedings are admissible, subject to a limiting instruction, and Appeals Officer Carole Richelieu may testify as a fact witness.*

First, Defendants seek to exclude "any reference to findings of fact or conclusions of law from any administrative decisions or rulings related to L.J.M.'s application for Unemployment Insurance Benefits" ("UIB Decisions.")."[132] They argue that the Court should preclude the United States from "establish[ing] any facts in this case by relying on the hearsay UIB Decisions" because they are "inadmissible hearsay under Rules 801 and 802," "more prejudicial than probative under Rule 403," and are barred by the Confrontation Clause.[133]

Second, Defendants ask the Court to prevent the United States from calling former Appeals Officer Carole Richelieu ("Richelieu") to testify about "her findings of fact and credibility determinations, or her impressions of MAI witnesses and Ms. Tanaka" during the January 27, 2012, UIB appeals hearing on the basis such testimony is non-admissible hearsay, prejudicial under Rule 403, and inadmissible as improper character evidence under Rule 608.[134]

Last, Defendants "move to exclude any operative legal conduct by counsel for the parties in the UIB proceedings, together with any briefing they submitted or oral arguments

---

[132] Dkt. 346 at 22.
[133] *Id.* at 25–26, 28–29.
[134] *Id.* at 26–27.

they made" because "its minimal probative value . . . is outweighed by the danger of waste of time, unfair prejudice, misleading the jury, and confusion of issues."[135]

The United States submits that it does not seek to introduce the written UIB Decisions at trial, but that it does intend to introduce "evidence of the MAI defendants' aggressive treatment of L.J.M. in the unemployment proceedings," which it maintains is "inextricably intertwined with the developing story of the [D]efendants' malicious treatment of L.J.M."[136] It further argues that evidence of the Defendants' conduct during the UIB proceedings is highly probative of the charged conspiracy and that it is not unfairly prejudicial because it is "core evidence of the conspiracy."[137] Moreover, the United States argues that Richelieu should be allowed to testify "as a fact witness to the defendants' actions in their attempt to deny L.J.M. unemployment benefits," and that her narrow testimony will be "focused on facts within her personal knowledge" rather than findings of fact or credibility determinations.[138] It invites contemporaneous objections during her testimony if Defendants suspect a question seeks inadmissible hearsay.[139]

1.   The UIB Written Decisions are excluded.

First, the Court finds that the written UIB Decisions are excluded pursuant to the request and intent of both Parties, and thus this portion of the Defendants' Motion *in Limine*

---

[135] *Id.* at 29.
[136] Dkt. 382 at 4.
[137] *Id.* at 8–9.
[138] *Id.* at 5–6.
[139] *Id.* at 6.

No. 3 is DENIED as moot. However, the Court notes that, in accordance with Defendants' clarification, the pure dispositions of the UIB Decisions are admissible.

       2.    <u>Richelieu may testify as a fact witness.</u>

Second, the Court finds that former Appeals Officer Richelieu may be permitted to testify as a fact witness regarding the UIB proceedings, provided this testimony is admissible and squarely within her personal knowledge of the matter. Defendants may lodge contemporaneous objections to Richelieu's testimony should any questions elicit inadmissible credibility determinations, including her "personal opinions about the credibility of MAI witnesses," as proscribed by Rule 608.[140]

       3.    <u>Defendants' statements during the UIB proceedings are admissible.</u>

Third, the Court finds that the Defendants' statements during the UIB proceedings are admissible as statements of party opponents under Rule 801(d)(2). Defendants' statements and alleged "aggressive litigation tactics against L.J.M." during the UIB proceedings are probative and central to the United States' argument that Defendants were spurred by "wrongful motives" in seeking L.J.M.'s prosecution and "cultivating their conspiratorial relationship with Defendant Kaneshiro."[141] Further, the Court finds that the risk of unfair prejudice does not substantially outweigh the probative value of Defendants' UIB statements and conduct, and that such evidence would not waste time, mislead the jury, or confuse the issues.

---

[140] Dkt. 346 at 27 n.3.
[141] Dkt. 382 at 8–9.

For these reasons, the Court **DENIES** as moot the Defendants' Motion *in Limine* No. 3 to exclude the UIB Decisions, and further **DENIES** the Defendants' Motion to preclude Officer Richelieu from testifying as a fact witness and to exclude Defendants' conduct and statements during the UIB proceedings.

> D. *Defendants' Motion* in Limine *No. 4 is DENIED as moot, such that the written Grand Jury Orders to Compel Testimony are inadmissible and the dispositions of the Grand Jury Orders are admissible, and the Court DEFERS ruling on evidence of alleged grand jury obstruction.*

Defendants seek "to exclude at trial evidence, questioning and argument relating to any orders or factual findings by any United States District Judge related to any motion to compel grand jury testimony in this matter."[142] This includes: (1) Judge Leslie E. Kobayashi's order regarding Otani (June 17, 2021); (2) Judge Kobayashi's order regarding non-defendant S.W. (July 14, 2021); (3) Judge Derrick K. Watson's order regarding A.K. (June 10, 2021); (4) Judge Watson's order regarding R.A. (July 29, 2021); and (5) Judge J. Michael Seabright's order regarding J.F. (June 23, 2021) (the "Grand Jury Orders").[143] Defendants submit that these orders are inadmissible hearsay under Rules 801 and 802, and that the United States should not be permitted "to establish any facts in this case by relying on the Grand Jury Orders."[144] Moreover, Defendants argue that "the Grand Jury Orders should be excluded as more prejudicial than probative under Rule 403" because they would have an "undue influence on the jury's deliberations" and "create a serious risk

---

[142] Dkt. 346 at 32.
[143] *Id.*
[144] *Id.* at 34.

of confusing the issues."[145] Finally, they argue that introducing evidence regarding Otani's Fifth Amendment invocation is "improper."[146]

The United States responds that it "does not intend to introduce the actual [Grand Jury Orders] in response to the obstructive conduct of various witnesses during the grand jury investigation."[147] Rather, it seeks to "introduce the obstructive conduct itself as proof of the conspirators' consciousness of guilt" and to establish that "the obstructive efforts were cured, in part, only after judicial intervention."[148] Because the "*fact* of the grand jury orders [is] relevant and admissible," it argues, it "may also introduce the fact that the Court had to intervene to correct the [Defendants' alleged] efforts to obstruct."[149] It further "recommends a limiting instruction that appropriately guides the jury's consideration of this evidence, to further minimize any risk of unfair prejudice."[150]

1.  The written Grand Jury Orders are excluded.

First, the Court finds that the written Grand Jury Orders are excluded pursuant to the request and intent of both Parties, and thus this portion of the Defendants' Motion *in Limine* No. 4 is DENIED as moot.

2.  The dispositions of the Grand Jury Orders are admissible.

Second, the Court finds that the United States may introduce the pure dispositions of the Grand Jury Orders because they are relevant under Rule 801 and 802 and not

---

[145] *Id.*
[146] *Id.* at 35.
[147] Dkt. 386 at 2.
[148] *Id.*
[149] *Id.* at 4.
[150] *Id.*

inadmissible hearsay. Notably, the United States does not seek to use the fact of the Grand Jury Orders to prove the alleged obstruction, but rather to establish that the Court acted in response to the alleged obstruction by Defendants. The Court further finds that a limiting instruction directing the jury to consider the Grand Jury Orders only for this limited purpose and not as substantive evidence of Defendants' obstructive conduct is warranted and will mitigate any risk of unfair prejudice to Defendants.

        3.    <u>The Court defers ruling on evidence of the alleged grand jury obstruction.</u>

To the extent the Defendants seek to exclude evidence of alleged grand jury obstruction, including Otani's invocation of her Fifth Amendment right, the Court defers ruling on the admissibility of this evidence and will issue a separate order addressing it.

For these reasons, the Court **DENIES as moot** the Defendants' Motion *in Limine* No. 4 to exclude the Grand Jury Orders, and **DEFERS** ruling on evidence of the alleged grand jury obstruction.[151]

## V.    CONCLUSION

For the foregoing reasons, the Court

1.    **GRANTS in part and DENIES in part** Defendants' Motion at Docket 346, with appropriate limiting instructions as follows:

    a.    **GRANTS** Defendants' request to exclude the written Nakasone Order under Rule 403;

---

[151] Dkt. 346 at 32.

b.      **DENIES without prejudice** Defendants' request to exclude the oral Nakasone Order under Rules 801, 802, and 403, with appropriate limiting instructions;

c.      **GRANTS** Defendants' request to exclude the special verdict form under Rule 403;

d.      **DENIES without prejudice** Defendants' request to exclude the amount of the $1.00 civil award to MAI under Rules 801, 802, and 403, with appropriate limiting instructions;

e.       **DENIES without prejudice** Defendants' request to exclude statements made by Tanaka, McDonald, Otani, and Fujii during the L.J.M. Civil Case under Rule 801;

f.      **ACCEPTS** the Parties' joint request to exclude the written UIB Decisions;

g.      **DENIES without prejudice** Defendants' request to preclude Richelieu from testifying as a fact witness at trial about matters within her personal knowledge;

h.      **DENIES without prejudice** Defendants' request to exclude Defendants' statements during the UIB proceedings under Rule 801;

i.      **ACCEPTS** the Parties' joint request to exclude the written Grand Jury Orders, but allows the dispositions of the Grand Jury Orders, with appropriate limiting instructions.

34

2.   **GRANTS in part and DENIES in part** the United States' Motion at Docket 341, with appropriate limiting instructions, as follows:

    a.   **GRANTS** the United States' request to admit the civil judgment, the amount of the $1.00 award to MAI, rulings on MAI's counterclaims, and the district judge's dismissal of MAI's conversion claim under Rules 801, 802, and 403, with appropriate limiting instructions.

    b.   **DENIES** the United States' request to admit the special verdict form under Rule 403.

3.   **DEFERS** ruling on the admissibility of the alleged grand jury obstruction, including Otani's invocation of her Fifth Amendment right, and will issue a separate order responsive to this evidence.

The Parties are directed to confer, and attempt to jointly file a complete set of proposed limiting jury instructions **on or before March 11, 2024.** Counsel shall separately file any disputed proposed limiting jury instructions, supported by legal authority. A full set of agreed-upon and disputed proposed limiting instructions in Word format and modified to conform to the facts of the case shall also be emailed to Chambers' Proposed Orders Box.

IT IS SO ORDERED.

Dated this 6th day of March, 2024.

/s/  *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE