IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> KEITH MITSUYOSHI KANESHIRO (1), <br> DENNIS KUNIYUKI MITSUNAGA (2), <br> TERRI ANN OTANI (3), <br> AARON SHUNICHI FUJII (4), <br> CHAD MICHAEL MCDONALD (5), <br> SHERI JEAN TANAKA (6), <br><br> Defendants. | Case No. 1:22-cr-00048-TMB-NC <br><br> ORDER ON DEFENDANTS' MOTIONS *IN LIMINE* NO. 6–9 AND UNITED STATES' MOTION *IN LIMINE* NO. 4 <br> **(DKTS. 339 and 348)** |

## I.      INTRODUCTION

Before the Court are Keith Mitsuyoshi Kaneshiro, Dennis Kuniyuki Mitsunaga, Terri Ann Otani, Aaron Shunichi Fujii, Chad Michael McDonald, and Sheri Jean Tanaka's ("Defendants") "Motions *in Limine* No. 6–9 to Exclude Evidence" (the "Defendants' Motions No. 6–9")[1] and the United States' "Motion *in Limine* No. 4: To Admit Evidence of MAI's Extensive Political Donation Apparatus" (the "United States' Motion No. 4").[2] The United States opposes the Defendants' Motions No. 6–9.[3] For the following reasons,

---

[1] Dkt. 339 (Defendants' Motion *in Limine* No. 6–9).

[2] Dkt. 348 (United States' Motion *in Limine* No. 4).

[3] Dkts. 387 (United States' Response to Defendants' Motion *in Limine* No. 6); 392 (United States' Response to Defendants' Motion *in Limine* No. 7); 388 (United States' Response to Defendants' Motion *in Limine* No. 8); 393 (United States' Response to Defendants' Motion *in Limine* No. 9).

the Court DENIES in part and GRANTS in part Defendants' Motion and DENIES in part and GRANTS in part the United States' Motion. The Court directs the Parties to confer and submit proposed limiting instructions as set out below to guide the jury's consideration of the evidence and cure risk of unfair prejudice where appropriate.

## II.    BACKGROUND

Given the voluminous litigation in this case, the Court assumes the Parties are familiar with the factual and procedural history of this case. The Court incorporates by reference the factual and procedural history included in its Order at Docket 484.

Relevant here, Defendants submit three consolidated requests in Defendants' Motions No. 6–9:

- **Motion No. 6:** "to exclude evidence, argument, and/or testimony regarding significantly prejudicial allegations of violations of campaign finance law, corrupting other political campaigns not related to Keith Kaneshiro, and/or 'pay to play' politics as 404(b) evidence."[4]

- **Motion No. 7:** "to exclude evidence, argument, and/or testimony, including but not limited to testimony of Steven Wong, Rodney Lee, and L.J.M., regarding sexual harassment of L.J.M. by MAI employee Steven Wong."[5]

- **Motion No. 8:** "to exclude at trial any evidence, argument, and/or testimony, including but not limited to testimony of Cary Kanemoto and/or Gilbert

---

[4] Dkt. 339 at 3.
[5] *Id.* at 14.

Matsumoto, regarding the payment of taxes and/or filed tax returns, whether personal or business tax returns, of Dennis Mitsunaga, MAI, and/or Mitsunaga Construction, Inc."[6]

- **Motion No. 9:** "to exclude evidence, argument, and/or testimony regarding wealth evidence, including but not limited to net worth, income, stock ownership, and/or irrelevant business holdings."[7]

Related to Defendants' Motion No. 6, the United States' Motion No. 4 seeks "to introduce evidence of the defendants' and their affiliates' prolific history of political donations."[8] Further, related to Defendants' Motion No. 9, the United States indicates that "the defendants' annual compensation, when compared to the full scope of their political contributions to Kaneshiro and others, will demonstrate the implausibility of the defendants' . . . ability to afford such contributions, and the reason they had to funnel contributions through family members and MAI affiliates" and that "contributions made by Otani [in others' names] to Kaneshiro and others will demonstrate that while these contributions were made in their names, [the others] had no knowledge of them and Otani's income would not support Otani as the true source of funds."[9]

---

[6] *Id.* at 18.
[7] *Id.* at 22.
[8] Dkt. 348 at 1.
[9] *Id.* at 3.

## III.   LEGAL STANDARD

*A.  Motions* in Limine

"A motion *in limine* is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence"[10] and may be used to request evidence be either excluded or admitted before trial.[11] Motions *in limine* are appropriate when the "mere mention of evidence during trial would be highly prejudicial."[12] "*[I]n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."[13]

A party seeking to exclude evidence through a motion *in limine* must satisfy a "high standard" and show the evidence is inadmissible on all potential grounds.[14] Otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[15]

*B.  Relevance and Prejudice*

Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence[] and . . . the fact is of consequence in

---

[10] *Barnard v. Las Vegas Metro. Police Dep't*, No. 2:03-cv-01524-RCJ-LRL, 2011 WL 221710, at *1 (D. Nev. Jan. 21. 2011); *Research Corp. Techs., Inc. v. Microsoft Corp.*, No. CV-01-658-TUC-RCJ, 2009 WL 2971755, at *1 (D. Ariz. Aug. 19, 2009).

[11] *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Fed. R. Evid. 609).

[12] *Barnard*, 2011 WL 221710, at *1 (quoting Black's Law Dictionary 1109 (9th ed. 2009)); *Research Corp.*, 2009 WL 2971755, at *1.

[13] *Ohler v. United States*, 529 U.S. 753, 758, n.3 (2000).

[14] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF Ry. Co. v. Quad City Testing Lab'y, Inc.*, No. CV-07-170-BLG-RFC, 2010 WL 4534406, at *1 (D. Mont. Oct. 28, 2010); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

[15] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF*, 2010 WL 4534406, at *1 (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

determining the action."[16] Relevant evidence is admissible unless the United States Constitution, a federal statute, the rules of evidence, or the Supreme Court provide otherwise; irrelevant evidence is inadmissible.[17] However, relevant evidence may still be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[18]

### C. Hearsay

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[19] Statements not offered for the truth of the matter asserted are not hearsay.[20] Under Federal Rule of Evidence ("Rule") 802, hearsay is inadmissible unless an exclusion or an exception applies. "A court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.'"[21] "One common application of this principle is admitting a declarant's out-of-court statement for the purpose of establishing what effect it had on the listener."[22]

Under Rule 801(d)(2)(A), an opposing party's statement, when "offered against an opposing party and[] . . . made by the party in an individual or representative capacity" is

---

[16] Fed. R. Evid. 401.
[17] Fed. R. Evid. 402.
[18] Fed. R. Evid. 403.
[19] Fed. R. Evid. 801(c).
[20] Fed. R. Evid. 801; *United States v. Moran*, 493 F.3d 1002, 1013 (9th Cir. 2007).
[21] *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) (quoting *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004)).
[22] *United States v. Lopez*, 913 F.3d 807, 826 (9th Cir. 2019).

not hearsay and thus excluded from Rule 801's prohibition, even if offered for the truth of the matter asserted.[23] Rule 803 establishes various exceptions to the rule against hearsay.[24]

### D. Rule 404(b)

Under Rule 404(b)(1), evidence of a defendant's prior conviction, wrong, or act is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[25] "This prohibition reflects the 'underlying premise of our criminal justice system, that the defendant must be tried for what he did, not for who he is.'"[26]

Rule 404(b) "is inapplicable, however, where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment."[27] Courts have found evidence is "inextricably intertwined" with the crime charged "and therefore need not meet the requirements of Rule 404(b)" where (1) the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge" or (2) the evidence is necessary for "the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."[28]

---

[23] *United States v. Thompson*, 538 F. Supp. 3d 1122, 1129 (D. Nev. 2021) ("Statements made by a party opponent are not hearsay, even if offered for the truth of the matter asserted.").

[24] Fed R. Evid. 803(6).

[25] Fed. R. Evid. 404(b)(1).

[26] *United States v. Verduzco*, 373 F.3d 1022, 1026 (9th Cir. 2004).

[27] *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003) (citing *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993)).

[28] *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995).

Further, under Rule 404(b)(2), evidence falling within the scope of Rule 404(b) "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[29] To introduce evidence under Rule 404(b)(2),

> The Government carries the burden to prove that the proposed evidence satisfies four requirements:
>
> (1) the evidence tends to prove a material point (materiality); (2) the other act is not too remote in time (recency); (3) the evidence is sufficient to support a finding that defendant committed the other act (sufficiency); and (4) [in certain cases,] the act is similar to the offense charged (similarity).[30]

If the Court finds these requirements are met, it must then determine, under Rule 403, whether the "probative value [of the evidence] is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[31]

## IV. DISCUSSION

*A. Defendants' Motion No. 6 is DENIED without prejudice and United States' Motion No. 4 is GRANTED in part, such that campaign donation evidence is admissible subject to a limiting instruction.*

In Motion No. 6, the Defendants respond primarily to the United States' Notice of Intent to Use Evidence Pursuant to Federal Rule of Evidence 404(b), which Defendants state "argues for the admission of campaign donations made by the defendants, their friends, and families ('MAI, et al.') made to *other candidates* (not Keith Kaneshiro) as

---

[29] Fed. R. Evid. 404(b)(2).
[30] *United States v. Charley*, 1 F.4th 637, 647 (9th Cir. 2021).
[31] Fed. R. Evid. 403; *see also United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005).

constituting 404(b) evidence."[32] Further, the Defendants posit that the United States will use these donations to show "campaign finance law violations which demonstrate motive, opportunity, knowledge, *modus operandi*, evidence of planning, and absence of mistake in the commission of the crime of bribery of a public official."[33]

Defendants argue that this is improper Rule 404(b) evidence because the United States fails to show how evidence of the MAI political donors' campaign donations meets the requirements of materiality, recency, sufficiency, and similarity.[34] First, the Defendants argue that the political donation evidence fails the materiality test because evidence of pooling money to avoid campaign donation limits is impermissible propensity evidence and does not establish a motive to commit bribery, and because there is no logical connection between a group strategically avoiding contribution limits and bribing a public official that could establish motive.[35] The United States responds that the evidence of what it terms the "MAI donor apparatus" would tend to demonstrate motive due to its connection with "bundling" strategies, but nonetheless that motive "is not the only Rule 404(b) basis invoked."[36] Rather, the United States proffers that the evidence would be probative of "motive, intent, knowledge, [and] planning" and "[s]imilar evidence of bundling to other candidates makes clear that MAI had a common plan and practice []or *modus operandi*."[37]

---

[32] Dkt. 339 at 3 (emphasis in original); *see* Dkt. 336 (United States' Notice) at 2, 11–15.
[33] Dkt. 339 at 3.
[34] *Id.* at 5 (citing *United States v. Charley*, 1 F.4th 637, 647 (9th Cir. 2021)).
[35] *Id.* at 5–6.
[36] Dkt. 387 at 2–4.
[37] *Id.* at 5.

Next, the Defendants argue that the evidence fails the similarity test because "whether the defendants were aware of campaign finance laws has nothing to do with knowledge of bribery."[38] Nor does the evidence pass the similarity test, the Defendants suggest, for demonstrating opportunity because there is "no evidence that a single contribution to other candidates, bundled or otherwise, was for the purpose of a bribe" such that "making contributions to other candidates does not create an 'opportunity' to bribe Kaneshiro."[39]

Further, Defendants argue that *modus operandi* evidence is admissible only for one purpose which is irrelevant in this case: to prove identity "when the identity of the perpetrator is at issue."[40] Therefore, Defendants suggest, the supposed *modus operandi* evidence is inadmissible because it could only be improper propensity evidence.[41] Alternatively, Defendants suggest that the evidence is inadmissible to show a *modus operandi* because "there [is] nothing similar between [bundling] performed for the purpose of getting a candidate elected and the act performed for the purpose of brib[ery]," and "the mechanism by which the alleged bribery took place does not materially impact the commission of the offense."[42]

The United States responds that the MAI donor apparatus evidence "is similar and not too remote in time because the MAI defendants bundled their contributions to other

---

[38] Dkt. 339 at 7.
[39] *Id.*
[40] *Id.*
[41] *Id.* at 8.
[42] *Id.* at 9.

candidates in the same manner as made to Kaneshiro during the time the MAI apparatus made contributions to Kaneshiro."[43] This is because "bundled contributions made by MAI to the Kaneshiro campaign are evidence of MAI's efforts to obtain 'results' from Kaneshiro for the L.J.M. prosecution by bribing him, demonstrating MAI's ability to deliver him significant amounts exceeding campaign limits, and establishing precisely who it was that was sending him money and for what."[44] Further, "[t]he amount and overall percentage of the contribution made by the MAI donor apparatus to Kaneshiro is material to the bribery charges in this case."[45]

Relatedly, the United States expressly moves "to introduce evidence of the defendants' and their affiliates' prolific history of political donations" to demonstrate MAI's "well-established process (the 'MAI donor apparatus') for steering significant amounts of donations to political campaigns to exert influence."[46] The United States notes that evidence of the MAI donors' campaign donation history will demonstrate the "process of contributing [which] was nearly identical to the manner in which the MAI defendants, employees, and affiliates made simultaneous, concerted contributions to Kaneshiro."[47]

1.   Evidence of MAI-affiliated campaign donations is admissible under Rule 404(b).

The Court finds that the evidence of MAI-affiliated campaign donations is admissible under Rule 404(b), as it could tend to establish motive, opportunity, intent,

---

[43] Dkt. 387 at 5.
[44] *Id.* at 4.
[45] *Id.* at 3.
[46] Dkt. 348 at 1.
[47] *Id.* at 3.

preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Though evidence of a prior crime, wrong, or incident is generally not admissible to prove propensity,[48] Rule 404(b) allows such evidence where it is offered to serve "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[49]

Defendants confirmed at oral argument that they do not dispute the relevance of the MAI donors' political campaign donation records.[50] Rather, they object to their use to support specific theories related to the charges in this case and to introduce testimony and evidence that could be related to establishing whether the Defendants committed campaign finance law violations, which is not central to these charges.[51] At this time, the Court concludes that the United States has carried its initial burden to establish that the proposed evidence satisfies the four requirements of materiality, recency, similarity, and sufficiency.[52] Turning to the Defendants' specific objections, the Court further concludes that the first objection primarily concerns the weight of the evidence behind any specific prosecutorial theory, which is an issue for the jury to decide at trial. The second objection will require a limiting instruction issued to mitigate risks raised by the type of evidence discussed.

---

[48] Fed. R. Evid. 404(b)(1).
[49] Fed. R. Evid. 404(b)(2).
[50] Dkt. 462.
[51] *Id.*
[52] *See United States v. Charley*, 1 F.4th 637, 647 (9th Cir. 2021) (quoting *United States v. Berckmann*, 971 F.3d 999, 1002 (9th Cir. 2020)).

2.      <u>Concerns may be resolved by a limiting instruction appropriate to ensure that the evidence is introduced only for proper purposes.</u>

The Court is sensitive to the fact that evidence of political donations implicates important First Amendment rights and concerns in this context. Careful lines must be drawn to allow the jury to decide whether the evidence establishes that the MAI donors' political donations are voluntary, legitimate campaign contributions protected by the First Amendment, or illegitimate campaign contributions that may constitute the alleged *quid pro quo* bribery and honest services fraud, and conspiracy against rights.[53] Further, the Court is cognizant that introducing evidence of campaign donations that may indicate campaign finance law violations risks jury confusion and improperly obtaining a verdict on either propensity or on other crimes not charged.[54] Both concerns may be resolved by a limiting instruction appropriate to ensure that the evidence is introduced only for the proper purposes, which may include establishing motive, intent, knowledge, planning, and/or a *modus operandi*, and considered by the jury as such. Further, the Court finds that evidence of the MAI donors' campaign donation history is relevant and probative, and that an appropriate limiting instruction mitigates any danger of unfair prejudice. For this reason, the Court **DENIES** without prejudice the Defendants' request to exclude all evidence of MAI contributions and **GRANTS** the United States' request to admit evidence of MAI's political donation "apparatus."[55]

---

[53] *See, e.g.*, *McCormick v. United States*, 500 U.S. 257, 271–74 (1991).
[54] *See, e.g.*, *United States v. Lindberg*, 476 F. Supp. 3d 240, 272 (W.D.N.C. 2020), *vacated and remanded on other grounds*, 39 F.4th 151 (4th Cir. 2022).
[55] Dkt. 387 at 2.

B.  *Defendants' Motion No. 7 is DENIED without prejudice, such that evidence related to sexual harassment is admissible, subject to a limiting instruction.*

In Motion No. 7, Defendants seek "to exclude evidence, argument, and/or testimony, including but not limited to testimony of Steven Wong, Rodney Lee, and L.J.M. regarding sexual harassment of L.J.M. by MAI employee Steven Wong."[56] They argue that "[i]ncidents of sexual harassment occurring more than 20 years ago are irrelevant to the conduct charged" and that "evidence of Steven Wong's sexual harassment of L.J.M. is not probative of MAI's motive for termination" given that L.J.M. acknowledges the company addressed her concerns and she continued her employment for more than seven years afterward.[57] Further, Defendants argue that "any limited probative value of this evidence is far outweighed by the prejudicial impact on the MAI defendants."[58] The Defendants note that "the most recent alleged incident of sexual harassment occurred in 2004," and "there is no evidence any of the charged defendants had knowledge of, condoned or encouraged the conduct."[59] Defendants suggested at oral argument that the evidence related to L.J.M.'s reported sexual harassment, including the evidence on the cell phone she received, do not conclusively prove the deteriorated relationship between L.J.M. and MAI in light of the evidence to the contrary: she received three raises while working at MAI, and MAI's eventual issue with L.J.M.'s cell phone had more to do with her use, not her ownership, of the phone.[60] Also, Defendants cite Rule 403 and *Old Chief v. United States*[61] to argue that

---

[56] Dkt. 339 at 14.
[57] *Id.* at 14–16.
[58] *Id.* 15.
[59] *Id.* at 15.
[60] Dkt. 462.
[61] 519 U.S. 172 (1997).

jurors may attribute any wrongdoing on Steven Wong's part to the MAI defendants, and that such evidence is inflammatory and may create "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[62]

The United States responds that the evidence of sexual harassment L.J.M. endured at MAI is relevant and "admissible to show the development of the MAI defendants' malice toward[] L.J.M. and illuminate the false story they presented about L.J.M.'s alleged misuse of her company cell phone."[63] The United States argues that "[t]his background is inextricably intertwined with the charged conspiracies" and that these "underlying facts . . . are necessary 'in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'"[64] Specifically, the United States posits that L.J.M.'s cell phone was given to her in October 2004 coincident with her sexual harassment complaint as part of several perks offered "to ameliorate the harm," a link they argue was confirmed when L.J.M. was terminated in 2011 in memoranda exchanged between Mitsunaga and L.J.M.[65] Thus the United States suggests that "the sexual harassment evidence, and Mitsunaga's response to it, is inextricably intertwined with the development of the conspiracy against L.J.M., illuminates the MAI defendants' motives and growing malice toward[] L.J.M., and proves . . . [a] falsehood the MAI defendants spread about L.J.M. throughout their crusade, which is that L.J.M's use of her

---

[62] Dkt. 339 at 16 (quoting *Old Chief*, 519 U.S. at 180).
[63] Dkt. 392 at 2.
[64] *Id.* at 6 (quoting *United States v. Wells*, 879 F.3d 900, 928 (9th Cir. 2018)).
[65] *Id.* at 3.

phone for personal reasons was a wrongful use of MAI resources."[66] Finally, the United States claims that it "do[es] not plan to introduce . . . photographs, unless the door is opened" by Defendants.[67]

The Court finds that the evidence described has strong probative value, particularly to fully illustrate the relationship between L.J.M. and MAI as it evolved over time to contextualize the crimes charged, and that its probative value is not outweighed by undue prejudice. Certain portions of the evidence described—namely, the memoranda written by Mitsunaga referencing the cell phone—are admissible as statements of a party opponent under Rule 801(d)(2)(A). The Defendants' arguments regarding the contrary evidence of the relationship between L.J.M. and MAI and to the question of the cell phone go to the weight, not the admissibility, of the evidence. As such, they present issues for a jury to decide.

But the Court is also aware that certain material could be inflammatory to the jury, including photo evidence of sexual harassment that the United States indicates it does not intend to admit. To be mindful of the risks of undue prejudice, the Court also would consider certain limiting instructions appropriate to ensure the evidence is introduced and considered only for proper purposes and directing the jury not to impute sexual harassment evidence to Defendants.

---

[66] *Id.* at 2.
[67] *Id.* at 11.

*C. Defendants' Motion No. 8 is DENIED without prejudice, and tax-related evidence may be introduced, subject to a limiting instruction.*

In Motion No. 8, Defendants seek "to exclude at trial any evidence, argument, and/or testimony . . . regarding the payment of taxes and/or filed tax returns, whether personal or business tax returns, of Dennis Mitsunaga, MAI, and/or Mitsunaga Construction, Inc."[68] Defendants argue that "[r]eference to [these] tax filings is irrelevant to the conduct charged, highly prejudicial, and a waste of time."[69] Further, the Defendants warn that "[a]ny reference to tax filings will necessitate defense rebuttal of any inferences the jury might draw, leading to undue delay, confusion of the issues, and a waste of time through the creation of irrelevant side shows on collateral issues."[70] The Defendants move for exclusion under Rule 403 because they argue the "limited probative value" of tax filings "is far outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time."[71]

In response, the United States confirms that it "does not intend to introduce tax returns in its case-in-chief" to show tax deficiencies.[72] Rather, it intends to introduce the tax returns "to show that the MAI defendants, family members, and affiliates engaged in a cash-intensive enterprise by bundling their contributions to Kaneshiro."[73] The United States points to the Seventh Circuit's ruling in *United States v. Hogan*[74] to stand for the

---

[68] Dkt. 339 at 18.
[69] *Id.*
[70] *Id.* at 20.
[71] *Id.*
[72] Dkt. 388 at 2.
[73] *Id.*
[74] 886 F.2d 1497 (7th Cir. 1989).

proposition that while tax evidence is prejudicial in the bribery context, it may still be admissible as relevant, particularly to establish that "a person engaged in a cash-intensive enterprise, even if there is another explanation for the money."[75] Following *Hogan*, the United States suggests that the evidence is admissible to "prove the MAI defendants' methods, knowledge, and intent underlying their efforts to bribe Kaneshiro" and that risks of class bias or unwanted negative associations may be mitigated with a limiting instruction.[76]

The United States' response suggests that it will use tax- and wealth-related evidence intertwined to demonstrate that the MAI defendants' political contributions are out of scope with their taxable wages during the period of the crimes charged, consistent with Defendants receiving "large unexplained amounts of cash" which are "indicative of criminal activity."[77] The United States again cites *Hogan* and points to *United States v. Buncich*[78] to support the proposition that "[u]nexplained wealth evidence is admissible where (1) the evidence presented creates an inference that the defendant was involved with the crime; (2) the unexplained wealth was acquired during the period in which the crime allegedly occurred; and (3) the government presents other evidence to support the charge, including evidence that the income was not obtained through legitimate means."[79] Here, the United States suggests that Otani's "unexplained access to significant amounts of

---

[75] Dkt. 388 at 2–3 (quoting *Hogan*, 886 F.2d at 1507).
[76] *Id.* at 3.
[77] *Id.* at 4 (quoting *Hogan*, 866 F.2d at 1497).
[78] 926 F.3d 361 (7th Cir. 2019).
[79] Dkt. 388 at 4 (quoting *Buncich*, 926 F.3d at 368).

money—used to donate toward[] various politicians, including Kaneshiro—reveals that the money she donated was not her own: it came from the MAI donor apparatus, headed by Dennis Mitsunaga—Terri Otani's cousin."[80]

Regarding tax evidence, the United States suggests that testimony of two "accountants retained by defendant Mitsunaga and MAI for accounting and tax services" is relevant because "both witnesses contributed to political campaigns at the behest of defendant Mitsunaga" and because "evidence of [their] occupations and relationships as affiliates with defendant Mitsunaga and MAI will provide the jury with relevant context."[81]

1. The tax evidence is admissible for limited purposes.

The Court concludes that the tax evidence is admissible for the limited purpose of establishing the MAI defendants and affiliates' engagement in a cash-intensive enterprise, to afford the United States the opportunity to demonstrate a coherent and comprehensible narrative. Further, given the implications of introducing tax evidence, the Court concludes that a limiting instruction is appropriate. As directed below, parties are instructed to propose language for a limiting instruction designating the proper purpose for which the tax evidence may be offered and considered, and to include language instructing the jury to mitigate risk of class bias and avoid negative associations and inferences that may be drawn when presented with evidence of wealth.

---

[80] *Id.*
[81] *Id.* at 5.

*D. Defendants' Motion No. 9 is DENIED without prejudice such that relevant financial evidence, including business holdings, may be presented, subject to an appropriate limiting instruction on wealth evidence.*

In Defendants' Motion No. 9, somewhat related to Defendants' Motion No. 8, Defendants seek "to exclude evidence, argument, and/or testimony regarding wealth evidence, including but not limited to net worth, income, stock ownership, and/or irrelevant business holdings."[82] Defendants indicate that the United States presented evidence to the grand jury of Mitsunaga's ownership, operation, or affiliation with seventeen active and inactive companies, and "further referenced defendants [sic] wealth, ability to afford campaign contributions, and various other expenditures."[83] Defendants argue that "[e]vidence of financial information or business holdings [is] irrelevant to the conduct charged, highly prejudicial, and a waste of time."[84] They point to the United States Supreme Court's decision in *United States v. Socony-Vacuum Oil Co.*[85] for the repeatedly cited proposition that "evidence of a party's wealth should be excluded where it is not relevant to the issues in the case"[86] and that if relevant, should still be excluded due to the risk of prejudice from class bias.[87] Defendants argue that "appeals to class prejudice have 'no place in a court room'" and that "the default rule is not to admit evidence of wealth, because it is usually irrelevant under [R]ule 401 and unfairly prejudicial under

---

[82] Dkt. 339 at 22.
[83] *Id.* at 23.
[84] *Id.*
[85] 310 U.S. 150 (1940).
[86] Dkt. 339 at 23 (quoting *Friedman v. Medjet Assistance, LLC*, No. CV 09–07585 MMM (VBKx), 2010 WL 9081271, at *11 (C.D. Cal. Nov. 8, 2010) (collecting cases)).
[87] *Id.* at 24 (citing *Socony-Vacuum Oil Co.*, 310 U.S. at 239).

[R]ule 403."[88] Finally, Defendants argue that wealth evidence could "derail[] the trial" and "creat[e] . . . side issues and unnecessary litigation of collateral issues."[89]

The United States agrees that it "will present financial information and business holdings of relevant witnesses" and "evidence to establish the relationships between MAI employees and affiliates involved in the MAI donor apparatus, including those who bundled to Kaneshiro under the direction of MAI."[90] But contrary to the Defendants' portrayal, the United States argues that the evidence of affiliated companies is not wealth evidence, but rather relevant to "the issue of L.J.M.'s involvement in side jobs," which they expect Defendants to raise.[91] They intend to introduce the evidence of the affiliated companies to demonstrate that "other MAI employees also engaged in side jobs" but that "MAI assisted these other employees by creating affiliated companies," an opportunity that "L.J.M. was not afforded."[92] Thus, the United States argues, the "evidence is not being offered to establish any wealth or prestige, as contended by the MAI defendants, but rather to demonstrate the accepted practice of MAI employees engaging in side jobs using affiliated entities."[93] Further, regarding any other wealth evidence, the United States incorporates its arguments from its response to Defendants' Motion No. 8.[94]

---

[88] *Id.* at 24–25 (first quoting *United States v. Stahl*, 616 F.2d 30, 33 (2d Cir. 1980); then quoting *SEC v. Goldstone*, No. CIV 12-0257 JB/GBW, 2016 WL 3654273, *12 (D.N.M. June 13, 2016)).

[89] *Id.* at 25 (citing *Firemen's Fund Ins. Co. v. Thien*, 63 F.3d 754, 758 (8th Cir. 1995); *Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d Cir. 1992)).

[90] Dkt. 393 at 3.

[91] *Id.* at 2.

[92] *Id.*

[93] *Id.*

[94] *Id.* at n.1.

The United States acknowledges that it "does not intend to introduce in its case-in-chief any evidence of earnings of the non-MAI entities" because "the probative value of these entities is the close-nit [sic] relationship these individuals share by having each other serve as members and managers on these various entities," many of which have Mitsunaga as the agent or manager.[95] These entities, the United States suggests, "are critical to establishing the MAI donor apparatus that was used to facilitate the *quid*, the pay off, in the *quid pro quo* with Kaneshiro."[96]

      1.    <u>Evidence of MAI-affiliated business holdings is relevant and probative.</u>

The Court determines that evidence of MAI-affiliated business holdings and financial information is relevant and probative for the purposes described. Nonetheless, the Court is concerned that introducing this evidence risks prejudice due to class bias and impermissible inferences that could be drawn between affluence and culpability of corruption. The Court therefore directs the parties to prepare a limiting instruction guiding the jury's consideration of financial- and wealth-related evidence for proper purposes and minimizing risks of unfair prejudice due to improper inferences.

## CONCLUSION

For the foregoing reasons, the Defendants' Motions No. 6–9 and the United States' Motion No. 4 are decided as follows:

---

[95] *Id.* at 3–4.
[96] *Id.* at 4.

1.      The Court **DENIES without prejudice** Defendants' Motion No. 6 and **GRANTS** the United States' Motion No. 4 regarding evidence of MAI-affiliated political donations, subject to a limiting instruction;

2.      The Court **DENIES without prejudice** Defendants' Motion No. 7 to exclude evidence of sexual harassment, though the Parties may agree to certain redactions;

3.      The Court **DENIES without prejudice** Defendants' Motion No. 8 to exclude tax filings and other evidence regarding wealth; and

4.      The Court **DENIES without prejudice** Defendants' Motion No. 9 to exclude evidence of business holdings and other evidence regarding wealth.

The Parties are directed to confer and attempt to jointly file a complete set of proposed limiting jury instructions **on or before March 11, 2024.** Counsel shall separately file any disputed proposed limiting jury instructions, supported by legal authority. A full set of agreed-upon and disputed proposed limiting instructions in Word format and modified to conform to the facts of the case shall also be emailed to Chambers' Proposed Orders Box.

IT IS SO ORDERED.

Dated this 6th day of March 2024.

/s/ Timothy *M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE