**SEALED**

**BY ORDER OF THE COURT**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Mar 08, 2024, 3:03 pm
Lucy H. Carrillo, Clerk of Court

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>Defendants. | Case No. 1:22-cr-00048-TMB-NC<br><br>ORDER ON DEFENDANTS'<br>MOTIONS *IN LIMINE* NO. 12–13<br>AND<br>UNITED STATES' MOTION *IN LIMINE* NO. 5<br>**(DKTS. 344 and 423)**<br><br>** FILED UNDER SEAL ** |

## I.   INTRODUCTION

Before the Court are Keith Mitsuyoshi Kaneshiro, Dennis Kuniyuki Mitsunaga, Terri Ann Otani, Aaron Shunichi Fujii, Chad Michael McDonald, and Sheri Jean Tanaka's ("Defendants") "Motions *in Limine* No. 12–13 to Exclude 'Other Act' Evidence Related to (1) Grand Jury Proceedings and (2) Federal Civil Trial" (the "Defendants' Motions No. 12–13")[1] and the United States' "Motion *in Limine* No. 5: To Admit Evidence of Grand

---

[1] Dkt. 344 (Defendants' Motions No. 12–13).

Jury Obstruction" (the "United States' Motion No. 5").[2] Both parties oppose.[3] The matter is fully briefed and a hearing was held under seal on February 26, 2024.[4] For the following reasons, the Court DENIES the Defendants' Motions No. 12–13 and GRANTS the United States' Motion No. 5, subject to limiting instructions as set out below to guide the jury's consideration of the evidence and cure risk of unfair prejudice where appropriate.

## II.  BACKGROUND

Given the voluminous litigation in this case, the Court assumes the Parties are familiar with the factual and procedural history of this case. The Court incorporates by reference the factual and procedural history included in its Order at Docket 484.

In Defendants' Motion No. 12, the Defendants seek to exclude grand jury testimony of the Defendants and witnesses affiliated with Mitsunaga and Associates, Inc., ("MAI"), suggesting that it "insinuate[s] a wide-ranging conspiracy" that was "not charged in the First Superseding Indictment (FSI)" and involved conduct occurring several years after what they suggest to be "the end of the conspiracies charged in the FSI."[5]

Related to Defendants' Motion No. 12, the United States' Motion No. 5 seeks to introduce evidence that the Defendants "individually and collectively" demonstrated

---

[2] Dkt. 423 (United States' Sealed Unredacted Motion No. 5).
[3] Dkts. 422 (United States' Sealed Unredacted Opposition to Defendants' Motion No. 12); 385 (United States' Opposition to Defendants' Motion No. 13); 421 (Defendants' Sealed Unredacted Response to United States' Motion No. 5).
[4] Dkt. 462 (Motion Hearing); *see* Dkt. 474 (Transcript) at 167–68 (finding partial sealing of proceeding essential and narrowly tailored to preserve compelling interest in grand jury secrecy, with no adequately protective alternative); Dkt. 475 (Sealed Transcript).
[5] Dkt. 344 at 2.

consciousness of guilt of the charged conspiracies through a "broad range of obstructive conduct."[6] The United States indicates that the evidence will show that the range of conduct includes "dodging grand jury subpoenas, giving false testimony to the grand jury, reading prepared speeches, instructing witnesses to not testify, and wrongfully invoking the Fifth Amendment" demonstrating coordinated attempts to cover up the crimes charged.[7]

In Defendants' Motion No. 13, the Defendants seek to exclude MAI's attorneys' statements and conduct in *L.J.M. v. Mitsunaga & Associates, Inc.* (the "L.J.M. Civil Case"),[8] and *Stanford H. Masui et al. v. Edgar Kamaka et al.* (the "Masui Civil Case") as not relevant, a waste of time, and potentially prejudicial due to a potential jury bias against aggressive litigation.[9]

### III.  LEGAL STANDARD

*A. Motions* in Limine

"A motion *in limine* is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence"[10] and may be used to request evidence be either excluded

---

[6] Dkt. 423 at 1–2 (citing *United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976) (holding that "concealment of evidence subsequent to a commission of a crime or evidence of conduct designed to impede a witness from testifying truthfully" is admissible as it "may indicate consciousness of guilt").
[7] *Id.*
[8] Civil Case No. 12-00468 (DKW-BMK) (D. Hawaii 2012).
[9] 1CC121000524/Case No. 12-1-0524-02 (Hawaii Circuit Court 2012).
[10] *Barnard v. Las Vegas Metro. Police Dep't*, No. 2:03-cv-01524-RCJ-LRL, 2011 WL 221710, at *1 (D. Nev. Jan. 21. 2011); *Research Corp. Techs. v. Microsoft Corp.*, No. CV-01-658-TUC-RCJ, 2009 WL 2971755, at *1 (D. Ariz. Aug. 19, 2009).

or admitted before trial.[11] Motions *in limine* are appropriate when the "mere mention of evidence during trial would be highly prejudicial."[12] "*[I]n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."[13]

A party seeking to exclude evidence through a motion *in limine* must satisfy a "high standard" and show the evidence is inadmissible on all potential grounds.[14] Otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[15]

  *B. Hearsay*

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[16] Statements not offered for the truth of the matter asserted are not hearsay.[17] Under Rule 802, hearsay is inadmissible unless an exclusion or an exception applies.

---

[11] *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Fed. R. Evid. 609).

[12] *Barnard*, 2011 WL 221710, at *1 (quoting BLACK'S LAW DICTIONARY 1109 (9th ed. 2009)); *Research Corp.*, 2009 WL 2971755, at *1.

[13] *Ohler v. United States*, 529 U.S. 753, 758, n.3 (2000).

[14] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF Ry. Co. v. Quad City Testing Lab'y, Inc.*, No. CV-07-170-BLG-RFC, 2010 WL 4534406, at *1 (D. Mont. Oct. 28, 2010) (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

[15] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF*, 2010 WL 4534406, at *1 (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

[16] Fed. R. Evid. 801(c).

[17] Fed. R. Evid. 801; *United States v. Moran*, 493 F.3d 1002, 1013 (9th Cir. 2007).

Under Rule 801(d)(2)(A), an opposing party's statement, when "offered against an opposing party and[] . . . made by the party in an individual or representative capacity" is not hearsay and thus excluded from Rule 801's prohibition, even if offered for the truth of the matter asserted.[18]

Further, under Rule 801(d)(2)(D), a statement is not hearsay if it "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." "Rule 801(d)(2)(D) requires the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's employment."[19] Proper foundation to introduce a statement under Rule 801(d)(2)(D) requires that: "(1) the statement must be made by an agent or employee of the party against whom the statement is being offered; (2) the statement must concern a matter within the scope of that employment relationship; and (3) the statement must be made while the declarant is yet employed by the party."[20]

Further, under Rule 801(d)(2)(E), a statement is not hearsay if it "was made by the party's coconspirator during and in furtherance of the conspiracy."

C.  *Rule 404(b)*

Under Federal Rule of Evidence ("Rule") 404(b)(1), evidence of a defendant's prior conviction, wrong, or act is inadmissible "to prove a person's character in order to show

---

[18] *United States v. Thompson*, 538 F. Supp. 3d 1122, 1129 (D. Nev. 2021) ("Statements made by a party opponent are not hearsay, even if offered for the truth of the matter asserted.").
[19] *Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir. 1986).
[20] *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 999 (9th Cir. 2019).

that on a particular occasion the person acted in accordance with the character."[21] "This prohibition reflects the 'underlying premise of our criminal justice system, that the defendant must be tried for what he did, not for who he is.'"[22]

Rule 404(b) "is inapplicable, however, where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment."[23] Courts have found evidence is "inextricably intertwined" with the crime charged "and therefore need not meet the requirements of Rule 404(b)" where (1) the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge" or (2) the evidence is necessary for "the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."[24]

Further, under Rule 404(b)(2), evidence falling within the scope of Rule 404(b) "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[25] To introduce evidence under Rule 404(b)(2),

> [t]he Government carries the burden to prove that the proposed evidence satisfies four requirements:
>
> (1) the evidence tends to prove a material point (materiality); (2) the other act is not too remote in time (recency); (3) the evidence is sufficient to

---

[21] Fed. R. Evid. 404(b)(1).
[22] *United States v. Verduzco*, 373 F.3d 1022, 1026 (9th Cir. 2004).
[23] *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003) (citing *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993)).
[24] *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995).
[25] Fed. R. Evid. 404(b)(2).

support a finding that defendant committed the other act (sufficiency); and (4) [in certain cases,] the act is similar to the offense charged (similarity).[26]

The burden is on the party seeking to admit "other act" evidence to prove that the evidence meets Rule 404(b) admissibility.[27] Further, if the Court finds these requirements are met, it must then determine, under Rule 403, whether the "probative value [of the evidence] is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[28]

## IV.   DISCUSSION

A. *Defendants' Motion No. 12 is DENIED without prejudice and United States' Motion No. 5 is GRANTED in part, such that evidence of obstructive conduct before the grand jury may be admitted, subject to limiting instructions.*

In Defendants' Motion No. 12, the Defendants move to preclude "the grand jury testimony of [D]efendants and witnesses affiliated with Mitsunaga and Associates, Inc. ('MAI')" and "other conduct outside of the grand jury" that "insinuate[s] a wide-ranging conspiracy by [D]efendants . . . and other MAI-affiliated witnesses, to 'thwart, impede and obstruct' the grand jury proceedings."[29] First, the Defendants argue that the evidence would inappropriately "turn the upcoming trial . . . into a trial about a third alleged conspiracy

---

[26] *United States v. Charley*, 1 F.4th 637, 647 (9th Cir. 2021); *see United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012).
[27] *Bailey*, 696 F.3d at 799 (citing *United States v. Arambula–Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993)).
[28] Fed. R. Evid. 403; *see also United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005).
[29] Dkt. 344 at 2 (quoting Dkt. 336 (United States' Notice of Intent to Use 404(b) Evidence) at 15).

that occurred years later and was never charged: a supposed conspiracy by the MAI Defendants to obstruct the grand jury proceedings."[30] Second, the Defendants argue that evidence of "the allegedly obstructive conduct of any other individual affiliated with MAI" (the "MAI Witnesses") should not be admitted to demonstrate the Defendants' consciousness of guilt.[31]

1. <u>Evidence of the MAI Witnesses' obstructive conduct before the grand jury is admissible for the non-hearsay purpose of demonstrating consciousness of guilt.</u>

Statements made by the Defendants before the grand jury meet threshold admissibility requirements as statements of party opponents.[32] Therefore, this section focuses on the disputed evidence related to the MAI Witnesses' grand jury appearances.

The Defendants offer little legal support for their view that evidence of obstructive conduct before the grand jury is inadmissible because it is intended to demonstrate "an uncharged *third* conspiracy, to obstruct the grand jury proceedings, years after the conspiracies alleged in the [First Superseding Indictment] ended."[33] They suggest that the "alleged Uncharged Third Conspiracy" has "no legitimate probative value" because the evidence cannot be offered as *modus operandi* evidence since "identity is not at issue" and does not "tend to establish any defendant's 'consciousness of guilt.'"[34] They also submit that "a mini-trial on the Uncharged Third Conspiracy would make [trial] substantially

---

[30] *Id.* at 4.
[31] *Id.*
[32] *See* Fed. R. Evid. 801(d)(2)(A).
[33] Dkt. 344 at 5 (emphasis in original).
[34] *Id.* at 13.

longer" and risk undue prejudice.[35] Further, Defendants argued at the hearing that Tanaka's litigation conduct (argued as relevant to both Motions No. 12 and 13) was not "criminal obstruction of justice conduct" but rather Tanaka's pursuit of her "duty of zealous advocacy" to "get right up to the limit and not cross over the limit" of obstruction of justice conduct.[36]

This argument is without merit. "In conspiracy prosecutions, the Government has considerable leeway in offering evidence of other offenses."[37] "'Other act' evidence is admissible in conspiracy cases to show the background and development of the conspiracy."[38] Further, courts consistently admit evidence tending to show cover-up attempts and interference in investigations as probative of consciousness of guilt.[39].

---

[35] *Id.*
[36] Dkt. 475 at 6–7.
[37] *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011) (quoting *United States v. Bonanno*, 467 F.2d 14, 17 (9th Cir. 1972) (citing *Hanger v. United States*, 398 F.2d 91 (8th Cir. 1968), *cert. denied*, 393 U.S. 1119 (1969), *reh. denied*, 395 U.S. 971 (1969))).
[38] *United States v. Reyes*, 34 F.3d 1075 (9th Cir. 1994) (citing *United States v. Jones*, 982 F.2d 380, 382 (9th Cir. 1992)).
[39] *See, e.g.*, *United States v. Triumph Cap. Grp., Inc.*, 544 F.3d 149, 160 (2d Cir. 2008) (finding efforts to obstruct investigation evidence consciousness of guilt); *see United States v. Robinson*, 635 F.2d 981, 986 (2d Cir. 1980) (finding evidence of obstruction of the government's investigation admissible to show consciousness of guilt); *United States v. Malpiedi*, 62 F.3d 465, 467 (2d Cir. 1995) (similar). This is particularly true when intent is at issue. *See United States v. Pybrum*, 579 F. App'x 566, 569 (9th Cir. 2014) (finding evidence that defendant made false statements in IRS interview admissible to prove consciousness of guilt where lack of intent was "a centerpiece of his defense").

In *United States v. Collins*,[40] the Ninth Circuit affirmed that evidence of an attempt to induce witnesses to lie was admissible to demonstrate consciousness of guilt.[41] Further, in *United States v. Perholtz*,[42] the District of Columbia Circuit ("D.C. Circuit") directly addressed whether a defendant's "script" prepared by a defendant at a time when "the jury could properly infer that the defendants were conscious of their roles in the scheme" for a codefendant to memorize and rely upon during an investigation "amounts to proof of uncharged crimes of obstructing the grand jury."[43] The D.C. Circuit found that "the trial judge was amply justified" in admitting evidence of scripting.[44] Further, the defendant's "attempts 'to influence witnesses [with the script] were not acts of concealment related only to a past objective. They were parts of continuing activity that was essential to and therefore in furtherance of the survival of an ongoing operation.'"[45]

The *Perholtz* court also noted the D.C. Circuit's *en banc* precedent supporting the relevance of scripted "narratives of past events" in conspiracy cover-ups.[46] Particularly as "threads of the cover-up begin to unravel," evidence of cover-up attempts may tend to show the conspirators' motivations "to ensure that any story they wished to present would not

---

[40] 90 F.3d 1420 (9th Cir. 1996).
[41] *Id.* at 1428; *see also United States v. Mouton*, 617 F.2d 1379, 1386 (9th Cir. 1980) (finding evidence that defendant attempted to "intimidate" and "coerce [witness] not to testify at trial" "conduct designed to impede a witness from testifying truthfully" and admissible to indicate consciousness of guilt).
[42] 842 F.2d 343 (D.C. Cir. 1988).
[43] *Id.* at 356, 358.
[44] *Id.* at 357.
[45] *Id.* (quoting *United States v. Del Valle*, 587 F.2d 699, 704 (5th Cir.), *cert. denied*, 442 U.S. 909 (1979)).
[46] *Id.* (citing *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976) (en banc), *cert. denied*, 431 U.S. 933 (1977)).

ring false and that any action they were considering would not backfire, a strategy whose success required total familiarity with the facts."[47] Turning to Rules 404 and 403, the court further found that the script "is highly probative of efforts to further an ongoing scheme to defraud and demonstrate conscious awareness of guilt on the part of the defendants,"[48] and that limiting instructions upon introduction of the evidence and in jury instructions minimized any prejudice.[49] Thus the court rejected the argument that evidence of a "script" was "proof of uncharged crimes of obstructing the grand jury" and instead found the evidence of grand jury obstruction admissible.[50]

The Court considers *Perholtz*'s reasoning persuasive and applicable. Here, the Court is not convinced that the evidence of grand jury obstruction described in the United States' Motion No. 5, particularly evidence of scripted responses before the grand jury, attempts to interfere with or silence witnesses' testimony, repeated invocations of the Fifth Amendment, and evasive responses to subpoenas, is offered to prove an "uncharged third conspiracy."[51] Rather, evidence of grand jury obstruction would tend to demonstrate a cover-up attempt relevant to establishing consciousness of guilt of the alleged conspiracy.

The Court is also not convinced that grand jury obstruction evidence could only be admitted to prove identity via a *modus operandi*. While identity is not the only issue in this case, it appears to be one of the issues: the jury may be tasked with determining whether

---

[47] *Id.* (quoting *Haldeman*, 559 F.2d at 110–11).
[48] *Id.* at 358.
[49] *Id.* at 358–59.
[50] *Id.* at 356.
[51] Dkt. 344 at 13; 423 at 1–2.

the MAI witnesses acted at their own individual behests, or whether their behavior features unique characteristics indicating connections with the Defendants charged with conspiracy. Additionally, evidence demonstrating grand jury obstruction generally tends to be probative of other permissible purposes beyond *modus operandi*, including but not limited to knowledge, consciousness of guilt, existence of a criminal association and plan, and any combination thereof. Further, courts have long recognized the fact that witnesses may invoke, or be induced to invoke, the Fifth Amendment with improper motives, including at the behest or direction of a conspirator.[52] As such, the disputed evidence related to the MAI Witnesses' Fifth Amendment invocations is admissible for the proper non-propensity purpose of demonstrating consciousness of guilt through a cover-up attempt.

Further, the Court is persuaded that Lois Mitsunaga's prepared statement in particular is admissible as statements of an agent or employee under Rule 801(d)(2)(D). The United States argues that the statement demonstrates that Lois Mitsunaga "was speaking as an agent and employee of MAI and, ultimately, her father and CEO Dennis Mitsunaga" because she made the statement on MAI's behalf as a MAI representative, while Chief Financial Officer and Vice President of MAI.[53] While MAI as a corporate entity is not a charged defendant in this case, the evidence cumulatively tends to show that Lois Mitsunaga was acting as Mitsunaga's agent or employee for purposes of the prepared statement. MAI is a family-owned company which Mitsunaga headed as CEO. Based on

---

[52] *See, e.g.*, *United States v. Brown*, 899 F.2d 1225 (9th Cir. 1990); *Cole v. United States*, 329 F.2d 437, 440 (9th Cir.), *cert. denied*, 377 U.S. 954 (1964); *see also United States v. Cintolo*, 818 F.2d 980, 992 (1st Cir. 1987).
[53] Dkt. 423 at 7–8.

the language in Lois Mitsunaga's statement, the close nexus between MAI and the Defendants, the fact that Lois Mitsunaga stated that she was represented by MAI's counsel Tanaka, and Lois Mitsunaga's grand jury appearance as MAI's Chief Financial Officer, Lois Mitsunaga's prepared statements are admissible as statements of an agent or employee under Rule 801(d)(2)(D).

2. <u>Neither Rule 404(b) nor Rule 403 bars the admission of evidence related to obstructive conduct.</u>

As to both to the MAI Witnesses and the Defendants, the Defendants argue that the United States has failed to show how the suggested evidence satisfies the Ninth Circuit's four-part test used to determine admissibility of evidence for Rule 404(b) in *United States v. Bailey*.[54] The United States responds that the evidence of obstruction meets all relevant criteria.[55] They suggest it is material as it "tends to prove consciousness of guilt" through concealment of evidence; not too remote as it started "around three-and-a-half years after the end of the charged conspiracies" and around the time "authorities [were] looking for proof of the underlying crime"; that sufficient evidence supports that the Defendants committed the other act due to various communications between Tanaka, Otani, and other Defendants and the MAI Witnesses demonstrating that "[t]his did not happen organically."[56] As to the fourth criterion, the United States correctly notes that similarity is

---

[54] Dkt. 344 at 7 (citing *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012)).
[55] Dkt. 422 at 5–7.
[56] *Id.* at 6–7.

applicable only if used to prove intent, and here the evidence would be offered to prove consciousness of guilt.[57]

The Court finds that Defendants' arguments that the uncharged MAI Witnesses' statements before the grand jury cannot reasonably be admitted to demonstrate Defendants' consciousness of guilt, speaks to the weight, not the admissibility, of the evidence. The United States points to extensive similarities between grand jury statements of witnesses all represented by Tanaka, communications between Tanaka and other Defendants, and other evidence that could tend to show whether and how the MAI Witnesses' grand jury testimony evidenced a cover-up attempt or other coordination by the Defendants to conceal the charged conspiracy. Based on the facts before the Court, it is for the jury to decide whether there are reasonable inferences to be drawn between the MAI Witnesses' testimony and any Defendant.

The Court declines to adopt the United States' argument that the MAI Witnesses' statements, though not offered for their truth, could be admissible for their truth as co-conspirator statements under Rule 801(d)(2)(E).[58] The United States notes that Rule 801(d)(2)(E) "applies to statements made during the course and in furtherance of any enterprise, whether legal or illegal, in which the declarant and the defendant jointly participated," such that the "conspiracy" for which the declarant is "co-conspirator" for

---

[57] *Id.* at 5 n.4.
[58] Dkt. 423 at 5.

-14-

purposes of admission is not required to "be the same as the charged conspiracy."[59] But because the Court finds these statements admissible for the United States' asserted primary non-hearsay purpose of demonstrating consciousness of guilt, the Court declines to rule in the alternative on the admissibility of these statements under Rule 801(d)(2)(E).

Finally, turning to Rule 403, on these facts, the Court finds that the probative value of the evidence of obstructive conduct is strong, and not substantially outweighed by any prejudicial effect. But the Court is sensitive to the concerns raised around properly instructing the jury and will require limiting instructions to ensure that the evidence is considered only for proper non-propensity purposes, primarily—but not necessarily only— to show consciousness of guilt.

3. Limiting instructions are required for evidence of obstructive conduct.

At the hearing, the Defendants argued that the conduct at issue in Motions No. 12–13 was not chargeable as a separate obstruction of justice offense, but was rather merely "obstruction-y" conduct.[60] Therefore, they argue, the jury hearing the word "obstruction" referring to conduct they assert is merely "obstruction-y" might cause confusion of the issues or improper inferences.[61] The Defendants also suggest that they are not aware of any

---

[59] *Id.* at 5 n.2 (quoting *United States v. Layton*, 855 F.2d 1388, 1398, 1400 (9th Cir. 1988), *overruled on other grounds by People of Territory of Guam v. Ignacio*, 10 F.3d 608, 612 n.2 (9th Cir. 1993)).
[60] Dkt. 475 at 5.
[61] *Id.* at 6–7.

limiting instruction that could aid a jury in the Defendants' aim of fully differentiating between "obstruction-y" conduct and obstruction of justice conduct.[62]

Though the Court finds the evidence is admissible and relevant, Defendants' objection is well-taken that the jury requires further instruction because no defendant in this case has been charged of grand jury obstruction, perjury, or false declarations before a grand jury, and "[n]one of the individuals that Ms. Tanaka represented have been charged with" these separate crimes.[63] The Defendants thoughtfully argue that because these crimes are not charged in this case, the jury would likely rely on lay understandings of obstruction and related crimes without the benefit of the Court's instructions on the elements.[64] Therefore, because the evidence is admissible for the reasons stated above, the Court directs the Parties to provide a limiting instruction designed to guide the jury's consideration of any evidence presented related to grand jury obstruction, minimizing risks of undue prejudice. These limiting instructions may be read at the time of introduction of the evidence, before jury deliberations, or both.

To mitigate risk of jury confusion, the Court asks the Parties to avoid using the specific terms "grand jury obstruction" or "obstruction of justice" that reference charges not at issue here. The Court also encourages, but will not require, the Parties to avoid both terms of art and neologisms in discussing this evidence, preferring neutral and accessible lay terms like "cover-up," "concealment," or "obstructive conduct."

---

[62] *Id.* at 6.
[63] Dkt. 344 at 5.
[64] *Id.* at 13–14.

> *B. Defendants' Motion No. 13 is DENIED such that relevant evidence of attorney conduct may be admitted, subject to a limiting instruction.*

Defendants' Motion No. 13 seeks to "preclude the government from introducing any evidence about legal arguments or litigation conduct in the L.J.M. Civil Case or the Masui Civil Case," particularly "the attorneys' written and oral *legal* arguments and operative litigation conduct (together, 'Attorney Litigation Conduct')."[65] Defendants do not seek to exclude factual statements, but argue that the jury "is not qualified to evaluate" legal arguments or strategies so such evidence "would unfairly prejudice the MAI Defendants, confuse the issues, mislead the jury, and significantly waste time."[66] Defendants further argue that the Attorney Litigation Conduct has no probative value as it does not tend to prove "any fact at issue in this case."[67]

The United States responds that "the federal civil trial is a prominent aspect of the conspiracy charged in the [First Superseding Indictment]."[68] It submits that Tanaka's closing arguments in the L.J.M. trial "allow the jury to connect the counterclaims to the criminal charges later brought against L.J.M.—and to see that L.J.M. was charged based on the same conduct and evidence that the civil jury *had just rejected*."[69]

As an initial matter, the Court finds that the Attorney Litigation Conduct in both civil cases is broadly relevant to the charged conspiracies at a threshold level. As to the

---

[65] *Id.* at 15–16.
[66] *Id.* at 15.
[67] *Id.* at 17–22.
[68] Dkt. 385 at 5.
[69] *Id.* (emphasis in original).

L.J.M. Civil Trial, Count 2 of the FSI, charging Conspiracy Against Rights, alleges that the Defendants conspired against L.J.M. because of her exercise of "the right to file a lawsuit in federal court alleging claims under" Title VII and the Age Discrimination in Employment Act.[70] Further, relevant to Count 1, the Court is persuaded that evidence of the Attorney Litigation Conduct in the L.J.M. Civil Trial is admissible for the non-hearsay purposes of demonstrating its effect on the Defendants, as the statements and arguments made during trial tend to show the litigation context precipitating the conduct charged. The United States also points to "extensive overlap between the evidence supporting MAI's counterclaims [in the L.J.M. Civil Trial] and the evidence behind the felony information filed against L.J.M.," indicating that such evidence would allow the jury to evaluate whether and how the Defendants' conspiracy developed to prosecute L.J.M.[71]

Defendants also argue that the United States should be prevented from introducing evidence of the Masui Civil Case, in which MAI and L.J.M. were codefendants, to demonstrate that Defendants took contradictory positions in the two civil trials because introduction of the Masui Civil Case "will require substantial time and will create a danger of confusing the issues."[72] Defendants indicate that the "jury will be composed of laypersons ill-equipped to evaluate whether legal arguments are contradictory or frivolous," and that it will inject complexity to explain "*respondeat superior* and negligent supervision/retention."[73] However, the Court is not yet convinced that the evidence that the

---

[70] Dkt. 70 at 20–21.
[71] Dkt. 385 at 10.
[72] Dkt. 344 at 22–23.
[73] *Id.* at 22–23.

United States seeks to introduce is so complex as to risk waste of time or confusion of issues. The evidence mentioned appears to be limited to demonstrating the context giving rise to the conspiracy charged, such that the jury can understand the sequence of events and litigation outcomes that precipitated the Defendants' conspiracy.

Finally, the Defendants argue that "litigation tactics employed by the [MAI] corporation's counsel" would prejudice the jury because they "may be seen as unsavory by a lay jury" such that the jury "may misconstrue and dislike them" and "attribute some criminal culpability to those tactics."[74] To address any potential bias, the Court directs the Parties to prepare a limiting instruction to guide the jury's consideration of prior litigation conduct without attributing to Defendants criminal culpability solely due to aggressive advocacy and litigation strategies.

## V.   CONCLUSION

For the foregoing reasons, the Defendants' Motions No. 12–13 and the United States' Motion No. 4 are decided as follows:

1. The Court **DENIES without prejudice** the Defendants' Motion *in Limine* No. 12 at Docket 344 and **GRANTS** the United States' Motion *in Limine* No. 5

---

[74] *Id.* at 23–24.

at Docket 423, such that evidence of obstructive conduct before the grand jury may be admitted, subject to limiting instructions;

2. The Court **DENIES without prejudice** the Defendants' Motion *in Limine* No. 13 at Docket 344, such that evidence of attorney statements made during the L.J.M. and Masui Civil Trials may be admitted, subject to limiting instructions.

The Parties are directed to confer, and attempt to jointly file a complete set of proposed limiting jury instructions **on or before March 11, 2024.** Counsel shall separately file any disputed proposed limiting jury instructions, supported by legal authority. A full set of agreed-upon and disputed proposed limiting instructions in Word format and modified to conform to the facts of the case shall also be emailed to Chambers' Proposed Orders Box.

IT IS SO ORDERED.

Dated this 8th day of March, 2024.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE