IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>Defendants. | Case No. 1:22-cr-00048-TMB-NC<br><br>ORDER ON DEFENDANTS'<br>MOTION *IN LIMINE* NO. 16<br>**(DKT. 347)** |

## I.    INTRODUCTION

Before the Court are Keith Mitsuyoshi Kaneshiro, Dennis Kuniyuki Mitsunaga, Terri Ann Otani, Aaron Shunichi Fujii, Chad Michael McDonald, and Sheri Jean Tanaka's ("Defendants") "Motion *in Limine* No. 16 to Exclude Evidence of Ms. Otani's Alleged Acts" (the "Defendants' Motion No. 16").[1] The United States opposes the Defendants' Motion No. 16.[2] This matter is fully briefed, and a public hearing was held on February 26, 2024.[3] For the following reasons, the Court DENIES the Defendants' Motion No. 16. The Court directs the Parties to confer and submit proposed limiting instructions as set out

---

[1] Dkt. 347 (Defendants' Motion *in Limine* No. 16).
[2] Dkt. 389 (United States' Response to Defendants' Motion *in Limine* No. 16).
[3] Dkt. 462 (Motion Hearing); Dkt. 474 (Transcript).

below to guide the jury's consideration of the evidence and cure risk of unfair prejudice where appropriate.

## II.   BACKGROUND

Given the voluminous litigation in this case, the Court assumes the Parties are familiar with the factual and procedural history of this case. The Court incorporates by reference the factual and procedural history included in its Order at Docket 484.

Relevant here, Defendants submit three consolidated requests in Defendants' Motion No. 16:

1. To exclude "Ms. Otani's purported violation of campaign finance laws";

2. To exclude "Ms. Otani's gambling records from January 2010 through March 2021"; and

3. To exclude "Ms. Otani's obstruction of the grand jury investigation by . . . allegedly lying to the grand jury; and . . . allegedly exerting pressure on J.H. in her testimony to the grand jury."[4]

---

[4] Dkt. 347 at 2.

### III.   LEGAL STANDARD

*A.  Motions* in Limine

"A motion *in limine* is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence"[5] and may be used to request evidence be either excluded or admitted before trial.[6] Motions *in limine* are appropriate when the "mere mention of evidence during trial would be highly prejudicial."[7] "*[I]n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."[8]

A party seeking to exclude evidence through a motion *in limine* must satisfy a "high standard" and show the evidence is inadmissible on all potential grounds.[9] Otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[10]

---

[5] *Barnard v. Las Vegas Metro. Police Dep't*, No. 2:03-cv-01524-RCJ-LRL, 2011 WL 221710, at *1 (D. Nev. Jan. 21. 2011); *Research Corp. Techs., Inc. v. Microsoft Corp.*, No. CV-01-658-TUC-RCJ, 2009 WL 2971755, at *1 (D. Ariz. Aug. 19, 2009).

[6] *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Fed. R. Evid. 609).

[7] *Barnard*, 2011 WL 221710, at *1 (quoting BLACK'S LAW DICTIONARY 1109 (9th ed. 2009)); *Research Corp.*, 2009 WL 2971755, at *1.

[8] *Ohler v. United States*, 529 U.S. 753, 758, n.3 (2000).

[9] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF Ry. Co. v. Quad City Testing Lab'y, Inc.*, No. CV-07-170-BLG-RFC, 2010 WL 4534406, at *1 (D. Mont. Oct. 28, 2010); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

[10] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF*, 2010 WL 4534406, at *1 (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

### B. Relevance and Prejudice

Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence[] and . . . the fact is of consequence in determining the action."[11] Relevant evidence is admissible unless the United States Constitution, a federal statute, the rules of evidence, or the Supreme Court provide otherwise; irrelevant evidence is inadmissible.[12] However, relevant evidence may still be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[13]

### C. Rule 404(b)

Under Rule 404(b)(1), evidence of a defendant's prior conviction, wrong, or act is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[14] "This prohibition reflects the 'underlying premise of our criminal justice system, that the defendant must be tried for what he did, not for who he is.'"[15]

Rule 404(b) "is inapplicable, however, where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the

---

[11] Fed. R. Evid. 401.
[12] Fed. R. Evid. 402.
[13] Fed. R. Evid. 403.
[14] Fed. R. Evid. 404(b)(1).
[15] *United States v. Verduzco*, 373 F.3d 1022, 1026 (9th Cir. 2004).

indictment."[16] Courts have found evidence is "inextricably intertwined" with the crime charged "and therefore need not meet the requirements of Rule 404(b)" where (1) the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge" or (2) the evidence is necessary for "the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."[17]

Further, under Rule 404(b)(2), evidence falling within the scope of Rule 404(b) "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[18] To introduce evidence under Rule 404(b)(2),

> The Government carries the burden to prove that the proposed evidence satisfies four requirements:
>
> (1) the evidence tends to prove a material point (materiality); (2) the other act is not too remote in time (recency); (3) the evidence is sufficient to support a finding that defendant committed the other act (sufficiency); and (4) [in certain cases,] the act is similar to the offense charged (similarity).[19]

If the Court finds these requirements are met, it must then determine, under Rule 403, whether the "probative value [of the evidence] is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[20]

---

[16] *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003) (citing *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993)).
[17] *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995).
[18] Fed. R. Evid. 404(b)(2).
[19] *United States v. Charley*, 1 F.4th 637, 647 (9th Cir. 2021).
[20] Fed. R. Evid. 403; *see also United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005).

## IV. DISCUSSION

*A. Defendants' First and Third Requests are fully addressed in the Court's Orders on Defendants' Motions No. 6–9 and No. 12–13.*

The Defendant's first and third requests seek exclusion of evidence related to Otani's campaign contributions and obstructive conduct by Otani and by others at Otani's behest.[21] At the hearing, Otani noted that "a lot of these issues are overlapping" with other motions.[22] Both Otani and the United States provided further detail regarding the arguments at issue around "straw donations" in the Defendants' campaign contributions relevant to the arguments of Defendants' Motions No. 6–9,[23] and regarding Otani's interactions with a particular grand jury witness relevant to Defendants' Motions No. 12–13.[24] However, the Parties did not present significant distinguishing issues particular to Otani that warrant treatment or analysis different from that applicable to all Defendants.[25] Therefore, the Court finds that the first and third requests are fully addressed by the Court's Orders on these issues. Therefore, the Court incorporates by reference its Order on Defendants' Motion No. 6–9[26] as to the first request and its Order on Defendants' Motion No. 12–13[27] as to the third request.

---

[21] Dkt. 347 at 2.
[22] Dkt. 474 at 133.
[23] *Id.* at 136; *see* Dkt. 339 (Defendants' Motions No. 6–9).
[24] Dkt. 474 at 144–45; *see* Dkt. 344 (Defendants' Motions No. 12–13).
[25] Dkt. 474 at 133. In fact, illustrating the interrelatedness of the first and third requests to all Defendants, in the time allotted to argue this motion focused on Otani's other acts, the United States' response detailed interconnections between all Defendants' roles, and McDonald took on several minutes of Otani's rebuttal time to address issues related to him. *Id.* at 140–43, 145–46.
[26] Dkt. 485. (Order on Defendants' Motions No. 6-9).
[27] Dkt. 511. (Order on Defendants' Motions No. 12 -13).

### B. *Otani's gambling records may be introduced, subject to a limiting instruction.*

Otani seeks to exclude her "gambling records from January 2010 through March 2021 as evidence of a conspiracy with other MAI employees to bribe Keith Kaneshiro."[28] Otani recalls the United States' questioning before the grand jury eliciting information about whether "she bought $251,000 worth of chips at the Bellagio over the last ten years" followed by "a line of questions about political contributions she made in the last decade to a variety of politicians."[29] Otani questions the relevance of her gambling activity to the conspiracy charged.[30] Further, if relevant, Otani argues that the probative value of gambling evidence is substantially outweighed by the danger of unfair prejudice that the jury will be biased against her because she has been "an avid gambler for over a decade."[31]

The United States responds that Otani's "gambling history" is "inextricably intertwined with the charged conspiracy" because alongside the evidence of her annual salary and political donations, it demonstrates and explains her use of "straw donors" and bundling for political contributions, "including to Kaneshiro."[32] As to the relevance of Otani's gambling history, the United States provides a chart comparing Otani's annual salary at MAI as reported on W-2s, her political contributions, and her gambling as measured by "casino chips purchased."[33] The United States suggests that the gambling

---

[28] Dkt. 347 at 6–7.
[29] *Id.* at 7.
[30] *Id.*
[31] *Id.* at 7–8.
[32] Dkt. 389 at 2.
[33] *Id.* at 4.

evidence "establishes [Otani] is not contributing funds single-handedly" because the "numbers do not add up," tending to show that she is participating in the "coordinated donation apparatus" central to the charged conspiracy.[34] In the United States' view, Otani's gambling expenditures are not offered to cast aspersions upon her as a gambler, but rather offered as a "link in th[e] evidentiary chain" between Otani's salary and her political contributions tending to show "knowing involvement" and "participation in the charged conspiracy."[35]

Given this essential context, the United States views the gambling evidence not as Rule 404(b) evidence, but rather "intrinsic to the Government's proof" and necessary to "tell a coherent and comprehensible story of the crime charged."[36] But viewing the gambling evidence as Rule 404(b) evidence, the United States suggests that it meets the Rule's admission requirements because it "tends to show that Otani knowingly and intentionally bundled donations or made straw donations to Kaneshiro" as part of the conspiracy charged; it "is not too remote in time because it was ongoing throughout the years of the conspiracy"; and "there is sufficient evidence" through "casino records, MAI records, and campaign contribution records" to establish the requisite connection with Otani for Rule 404(b) purposes.[37]

---

[34] *Id.*
[35] *Id.* at 4–5.
[36] *Id.* at 5 (citing *United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999) (holding that "other acts" intrinsic to the Government's proof of conspiratorial relationship between coconspirators during the conspiracy are not subject to Rule 404(b)).
[37] *Id.* at 6.

Here, the Court is convinced that the evidence of Otani's gambling is not truly an "other act" implicating Rule 404(b) but rather is independently admissible as "intrinsic to the crime charged."[38] The evidence appears essential to demonstrating the scope of the conspiracy and to "offer a coherent and comprehensible story regarding the commission of the crime," including Otani's role and motivations for participating in coordinated campaign contributions to Kaneshiro.[39] Further, the Court observes that Otani's gambling expenditures are substantial enough that the United States could encounter difficulty presenting the evidence relevant to its case against Otani without it, further supporting the evidence as being intrinsic to the charged offense.[40]

Having determined that the evidence is probative of the crime charged, the Court further finds that its probative value is not substantially outweighed by the risks of undue prejudice under Rule 403. However, the Court appreciates Otani's concern that evidence of her gambling may raise improper inferences for the jury, including various attitudes regarding gambling generally and some overlapping concerns with those addressed in the Defendants' Motions No. 6–9 regarding wealth evidence. To that end, the Court directs the Parties to prepare limiting instructions designed to address any undue prejudice or improper inferences that may be drawn by a jury regarding evidence of Otani's gambling.

---

[38] *United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013) ("'Other act' evidence that is 'inextricably intertwined' with a charged offense is independently admissible and is exempt from the requirements of Rule 404(b)." (citing *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012); Fed. R. Evid. 404(b) advisory committee's notes (stating that Rule 404(b)'s requirements do "not extend to evidence of acts which are 'intrinsic' to the charged offense"))).
[39] *See id.*
[40] *Id.*

## CONCLUSION

For the foregoing reasons, the Defendants' Motion No. 16 is **DENIED without prejudice**, subject to a limiting instruction. The first and third requests require limiting instructions as indicated in this Court's Orders on Defendants' Motions No. 6–9 and 12–13 and may be handled jointly or separately as the Parties see fit.

The Parties are directed to confer, and attempt to jointly file a complete set of proposed limiting jury instructions **on or before March 11, 2024.** Counsel shall separately file any disputed proposed limiting jury instructions, supported by legal authority. A full set of agreed-upon and disputed proposed limiting instructions in Word format and modified to conform to the facts of the case shall also be emailed to Chambers' Proposed Orders Box.

IT IS SO ORDERED.

Dated this 8th day of March, 2024.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE