UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>                    Defendants. | Case No. 1:22-cr-00048-TMB-NC<br><br>ORDER ON UNITED STATES'<br>MOTION *IN LIMINE* NO. 7<br>AND<br>SUPPLEMENTAL BRIEF IN<br>SUPPORT OF UNITED STATES'<br>MOTION *IN LIMINE* NO. 7<br>**(DKTS. 514 and 521)** |

## I.   INTRODUCTION

Before the Court are the United States' "Motion *in Limine* No. 7: to Preclude Improper Character Evidence and Evidence of Any Prior Polygraph Test" (the "United States' Motion No. 7")[1] and "Supplemental Brief in Support of the United States' Motion *in Limine* No. 7" (the "Supplemental Brief").[2] Defendant Dennis Kuniyuki Mitsunaga ("Mitsunaga") opposes the United States' Motion and Supplemental Brief.[3] Defendants Keith Mitsuyoshi Kaneshiro, Terri Ann Otani, Aaron Shunichi Fujii, Chad Michael McDonald, and Sheri Jean Tanaka's ("Defendants") did not respond or join in Mitsunaga's opposition.

---

[1] Dkt. 514 (United States' Motion *in Limine* No. 7).
[2] Dkt. 521 (United States' Supplemental Brief in Support of the United States' Motion *in Limine* No. 7).
[3] Dkt. 527 (Dennis Mitsunaga Opposition to United States' Motion *in Limine* No. 7).

1

The United States asks the Court to "preclude[] [the Defendants] from offering evidence of, or referencing in opening or closing, any prior 'good acts' by the [D]efendants," along with "any undisclosed 'polygraph' test," and further to "prohibit [Mitsunaga] from arguing or introducing evidence of his 'lifelong' 'loyalty' to a particular political party or prior 'good deeds' done on behalf of a particular political party."[4] The United States also "requests that the Court add 'political affiliation' to the jury instructions" in this case.[5] This matter is fully briefed. The United States further requests the Court set an expedited hearing for this Motion pursuant to Hawai'i Local Criminal Rule 12.2(a)(2), but the Court finds that oral argument would not be helpful in deciding the issues.[6] For the following reasons, the Court **GRANTS in part and DENIES in part** the United States' Motion and Supplemental Brief. The Court directs the Parties to confer and submit proposed limiting instructions as set out below to guide the jury's consideration of the evidence and cure any risk of unfair prejudice where appropriate.

## II.   BACKGROUND

Given the voluminous litigation in this case, the Court assumes the Parties are familiar with the factual and procedural history of this case. The Court incorporates by reference the factual and procedural history included in its Order at Docket 484.

Relevant here, on March 5, 2024, Mitsunaga provided the United States reciprocal discovery that included: photographs of "various plaques, awards, and commendation

---

[4] Dkt. 514 at 7; Dkt. 521 at 4.
[5] Dkt. 521 at 4.
[6] *Id.* at 1 n.1 (citing Hawai'i Local Criminal Rule 12.2(a)(2) ("The court will set briefing schedules and necessary hearings for motions that must be addressed on an expedited basis.")).

letters [Mitsunaga and Associates, Inc. ("MAI")] has received over the years"; copies of "news articles crediting [Mitsunaga] with building" community projects; a letter of appreciation from a Brigadier General in the United States Army; an advertisement "in which [Mitsunaga] says he took a 'polygraph test' to put to 'rest' prior allegations that he had illegally contributed to politicians"; and an editorial Mitsunaga wrote about MAI.[7] Additionally, on March 10, 2024, the Honolulu Star-Advertiser published a news article containing statements from Mitsunaga's attorney Nina Marino indicating that Mitsunaga has a "lifelong history of supporting [D]emocratic candidates and community-based causes."[8] The United States also received in reciprocal discovery an open letter by Mitsunaga identifying himself as a "loyal Democrat from a very young age" and describing his commitments to the Democratic Party.[9]

### III.   LEGAL STANDARD

#### A. *Motions* in Limine

"A motion *in limine* is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence"[10] and may be used to request evidence be either excluded

---

[7] Dkt. 514 at 2–3; *see* Dkts. 514-1 (photos of plaques, awards, and commendations); 514-2 (*Star-Bulletin* Sports Section news article); 514-3 (Letter from U.S. Army Brigadier General to Dennis Mitsunaga); 514-4 (Open Letter from Dennis Mitsunaga to John White and PRP / The Carpenters Union); 514-5 (*Island Voices* editorial by Dennis Mitsunaga).

[8] Dkt. 521 at 2; *see* Dkt. 521-1 (Honolulu Star-Advertiser news article) at 1.

[9] Dkt. 521 at 2; *see* Dkt. 521-2 (Open Letter by Dennis Mitsunaga) at 2–3 (emphasis in original).

[10] *Barnard v. Las Vegas Metro. Police Dep't*, No. 2:03-cv-01524-RCJ-LRL, 2011 WL 221710, at *1 (D. Nev. Jan. 21. 2011); *Research Corp. Techs. v. Microsoft Corp.*, No. CV-01-658-TUC-RCJ, 2009 WL 2971755, at *1 (D. Ariz. Aug. 19, 2009).

or admitted before trial.[11] Motions *in limine* are appropriate when the "mere mention of evidence during trial would be highly prejudicial."[12] "*[I]n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."[13]

A party seeking to exclude evidence through a motion *in limine* must satisfy a "high standard" and show the evidence is inadmissible on all potential grounds.[14] Otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[15]

### B. Hearsay

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[16] Statements not offered for the truth of the matter asserted are not hearsay.[17] Under Federal Rule of Evidence ("Rule") 802, hearsay is inadmissible unless

---

[11] *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Fed. R. Evid. 609).

[12] *Barnard*, 2011 WL 221710, at *1 (quoting BLACK'S LAW DICTIONARY 1109 (9th ed. 2009)); *Research Corp.*, 2009 WL 2971755, at *1.

[13] *Ohler v. United States*, 529 U.S. 753, 758, n.3 (2000).

[14] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF Ry. Co. v. Quad City Testing Lab'y, Inc.*, No. CV-07-170-BLG-RFC, 2010 WL 4534406, at *1 (D. Mont. Oct. 28, 2010) (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

[15] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF*, 2010 WL 4534406, at *1 (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

[16] Fed. R. Evid. 801(c).

[17] Fed. R. Evid. 801; *United States v. Moran*, 493 F.3d 1002, 1013 (9th Cir. 2007).

an exclusion or an exception applies. "A court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.'"[18]

### C. Rule 404(a)

Generally, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."[19] However, there is a limited exception for a defendant in a criminal case, who may offer evidence of the defendant's "pertinent [character] trait."[20] Such evidence may only be proved "by testimony about the person's reputation or by testimony in the form of an opinion."[21] If the evidence is admitted, "the prosecutor may offer evidence to rebut it."[22]

### D. Rule 404(b)

Under Federal Rule of Evidence ("Rule") 404(b)(1), evidence of a defendant's prior conviction, wrong, or act is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[23] "This prohibition reflects the 'underlying premise of our criminal justice system, that the defendant must be tried for what he did, not for who he is.'"[24]

---

[18] *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) (quoting *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004)).
[19] Fed. R. Evid. 404(a)(1).
[20] Fed. R. Evid. 404(a)(2)(A); *see United States v. Weber*, No. CR 21-28-M-DLC, 2022 WL 2463039, at *1 (D. Mont. July 6, 2022).
[21] Fed. R. Evid. 405(a); *see United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987); *Weber*, 2022 WL 2463039, at *1.
[22] Fed. R. Evid. 404(a)(2)(A).
[23] Fed. R. Evid. 404(b)(1).
[24] *United States v. Verduzco*, 373 F.3d 1022, 1026 (9th Cir. 2004).

Rule 404(b) "is inapplicable, however, where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment."[25] Courts have found evidence is "inextricably intertwined" with the crime charged "and therefore need not meet the requirements of Rule 404(b)" where (1) the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge" or (2) the evidence is necessary for "the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."[26]

Further, under Rule 404(b)(2), evidence falling within the scope of Rule 404(b) "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[27] To introduce evidence under Rule 404(b)(2),

> [t]he Government carries the burden to prove that the proposed evidence satisfies four requirements:
>
> (1) the evidence tends to prove a material point (materiality); (2) the other act is not too remote in time (recency); (3) the evidence is sufficient to support a finding that defendant committed the other act (sufficiency); and (4) [in certain cases,] the act is similar to the offense charged (similarity).[28]

If the Court finds these requirements are met, it must then determine, under Rule 403, whether the "probative value [of the evidence] is substantially outweighed by a

---

[25] *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003) (citing *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993)).
[26] *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995).
[27] Fed. R. Evid. 404(b)(2).
[28] *United States v. Charley*, 1 F.4th 637, 647 (9th Cir. 2021).

danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[29]

### E.  Relevance and Prejudice

Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence[] and . . . the fact is of consequence in determining the action."[30] Relevant evidence is admissible unless the United States Constitution, a federal statute, the rules of evidence, or the Supreme Court provide otherwise; irrelevant evidence is inadmissible.[31] However, relevant evidence may still be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[32]

## IV.   DISCUSSION

A.   *Evidence of Mitsunaga's and MAI's prior good acts generally and evidence related to an undisclosed polygraph test is inadmissible, but evidence related to Mitsunaga's prior contributions to political candidates is admissible for the limited purpose of showing motive and intent, subject to a limiting instruction.*

Referencing materials in Mitsunaga's reciprocal discovery, the United States observes that "the [D]efendants appear poised to introduce prior 'good acts' to defend against the charges in this case."[33] In its Motion *in Limine* No. 7, the United States argues

---

[29] Fed. R. Evid. 403; *see also United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005).
[30] Fed. R. Evid. 401.
[31] Fed. R. Evid. 402.
[32] Fed. R. Evid. 403.
[33] Dkt. 514 at 1–2.

that prior statements describing Mitsunaga's and MAI's "general deeds for the community," including reference in a paid advertisement to an undisclosed polygraph test Mitsunaga purportedly took regarding illegal campaign contribution allegations, are inadmissible hearsay.[34] Moreover, the United States argues evidence related to these prior "good acts" is "irrelevant to the charges in this case and constitute[s] inadmissible character evidence."[35]

The United States first submits that Mitsunaga's and MAI's "good deeds . . . are not relevant to any pertinent character trait in this case," but merely showcase that "MAI has performed various projects around the community and received awards for doing so."[36] As such, it argues, these prior good acts are improper propensity evidence prohibited under Rule 404(a).[37] Second, the United States notes that even if such evidence were relevant to a pertinent character trait, the evidence at issue here would still be excluded under Rule 405(a) because it comes in the form of "specific instances of conduct" rather than the proper form of reputation or opinion testimony.[38] Third, it argues that Mitsunaga's and MAI's "general good deeds, a . . . polygraph, or various business projects around Hawai'i" fail to qualify as "essential element[s]" of the charged offense or defense permitted under Rule 405(b) because they "are not . . . character traits at all, much less ones that are an essential element of any charge, claim or defense in this case."[39] Finally, the United States

---

[34] *Id.* at 3.

[35] *Id.*

[36] *Id.* at 4 (internal quotations omitted).

[37] *Id.*

[38] *Id.* at 5.

[39] *Id.* at 5–6.

argues that the evidence is barred by Rule 403 because it has little probative value and could "confuse the jury . . . and elicit unfair prejudice" by suggesting decision-making on an emotional basis.[40]

Mitsunaga casts the United States' concerns as "premature" and contends that his right to present a complete defense "includes both the accomplishments and good works of MAI [and] Mitsunaga."[41] He clarifies that the Defendants do not seek to introduce evidence of any prior polygraph test.[42] First, he argues that evidence of Mitsunaga's and MAI's prior good acts is necessary to "rebut the government[']s arguments and [to present] the defense of the case," in response to what he sees as the United States' likely argument "that MAI is a corrupt company . . . and that Mr. Mitsunaga and others at MAI therefore acted in accordance when they made contributions to Kaneshiro so that he would prosecute [L.J.M.]."[43] He claims that such evidence will show that "MAI is a successful legitimate business that receives consideration and approval for building projects based on merit," "Mitsunaga himself has made significant contributions to the community that cannot be connected to any effort to exert influence," and "Mitsunaga and others at MAI made campaign contributions to Kaneshiro in line with their long history of civic-mindedness and political involvement."[44]

---

[40] *Id.* at 6.
[41] Dkt. 527 at 2.
[42] *Id.*
[43] *Id.* at 3–4.
[44] *Id.* at 4.

Alternatively, Mitsunaga argues that evidence of his good deeds is admissible as "reverse 404(b)" evidence because it is "offered to demonstrate that Mr. Mitsunaga had an altruistic motive for donating to the Kaneshiro campaign[,] rebutting the government's argument that the donations . . . were the *quid* for the prosecution of LJM."[45] He maintains this evidence satisfies the Ninth Circuit's four-part test because it proves a material point that Mitsunaga made donations "out of a sense of civic duty and responsibility," is not too remote in time, Mitsunaga performed the acts at issue, and the act of donating to political campaigns is similar to those Mitsunaga made to the Kaneshiro campaign, "which speaks directly to [Mitsunaga's] motive and intent."[46] He further argues that concerns may be properly addressed by a limiting instruction.[47]

1. Evidence of Mitsunaga's and MAI's prior good acts generally is irrelevant.

First, the Court is not convinced that specific instances of Mitsunaga's and MAI's prior good acts, as evidenced by numerous awards, accolades, and commendation letters for community projects, meet the threshold admissibility standard for relevant evidence. "Evidence of prior acts . . . must be sufficiently related and proximate in time to the crime charged to be relevant."[48] The Court observes that these specific projects occurred and commendations were received over decades, including several years prior to and after the alleged conspiracy, and thus they are "not probative of [Mitsunaga's] state of mind at the

---

[45] *Id.* at 8.
[46] *Id.* at 9.
[47] *Id.*
[48] *United States v. Barry*, 814 F.2d 1400, 1404 (9th Cir. 1987) (citing *United States v. Hooten*, 662 F.2d 628, 634–35 (9th Cir. 1981), *cert. denied*, 455 U.S. 1004 (1982); *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir. 1983)).

time he [allegedly] committed the crime[s]."[49] While prior good acts "may be relevant where it is alleged that the defendant engaged in continuing 'bad acts'" or "where such 'good acts' would undermine the underlying theory of prosecution," the United States is not alleging Mitsunaga engaged in the charged conduct continuously.[50] Moreover, certain prior "good acts" do not tend to undermine the argument that Mitsunaga could have made illegal campaign contributions during the period of the alleged conspiracy.

   2.   Evidence of Mitsunaga's and MAI's prior good acts is inadmissible character evidence.

Second, the Court is not convinced that this evidence is admissible character evidence under Rule 404(a). The evidence tends to show that Mitsunaga and MAI have participated in community projects and have received commendations for these deeds. The Court fails to see how this evidence is relevant to a pertinent character trait of Mitsunaga as it relates to the alleged conspiracy. Moreover, it appears Mitsunaga seeks to use this evidence—which encompasses a broad diversity of projects, awards, and donations spanning decades—generally to "rebut" the argument that he made illegal donations to Kaneshiro's reelection campaign, in particular. However, a defendant "may not [use] prior

_____

[49] *Barry*, 814 F.2d at 1404 (finding letters of commendation written twelve years before crime occurred "had no bearing on appellant's state of mind at the time he committed the offense").
[50] *United States v. Spayd*, No. 3:19-CR-0111-JMK, 2022 WL 4367621, at *2 (D. Alaska Sept. 20, 2022) (citing *United States v. James*, No. 19-CR-0382 (JS), 2022 WL 2106268, at *6 (E.D.N.Y. June 10, 2022)); *United States v. Hills*, No. 1:16CR329, 2018 WL 3120637, at *3 (N.D. Ohio June 24, 2018) (evidence of prior good acts "may be probative, however, where a defendant is alleged to have 'always' or 'continuously' committed the acts alleged.")).

'good' acts generally . . . to show a predisposition not to commit crimes."[51] Thus, this evidence is improper propensity evidence under Rule 404(a).

Further, the Court observes that this evidence is offered in the form of specific act evidence, which is only admissible where a defendant's "character or character trait is an essential element of a charge, claim, or defense."[52] The Court fails to see how Mitsunaga's and MAI's prior good deeds generally offer evidence of a specific "character trait" that is essential to the charged conduct or a defense in this case.[53]

3. Evidence of Mitsunaga's and MAI's prior good acts generally does not constitute "reverse 404(b)" evidence, but evidence of Mitsunaga's donations to other campaigns and candidates is admissible under Rule 404(b), subject to a limiting instruction.

Third, the Court is not convinced that evidence of Mitsunaga's and MAI's prior good acts generally constitutes proper "reverse 404(b)" evidence. Mitsunaga submits that this evidence tends to demonstrate that his donations to Kaneshiro's campaign were "altruistic" in nature and is important to showing Mitsunaga's "motive and intent."[54] However, evidence of Mitsunaga's and MAI's prior good acts generally does not "prove[] a material point" that all of Mitsunaga's donations—including those to Kaneshiro—were motivated by a similar "sense of civic duty and responsibility."[55] Thus, this evidence wholesale does not satisfy the Ninth Circuit's four-part test for admissibility.[56]

---

[51] *United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014).
[52] Fed. R. Evid. 405(b).
[53] *See United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995).
[54] Dkt. 527 at 9.
[55] *Id.* at 8.
[56] *See United States v. Charley*, F.4th 637, 647 (9th Cir. 2021).

However, Mitsunaga's donations to other campaigns and political candidates may qualify as admissible 404(b) evidence. Mitsunaga seeks to admit such evidence for the proper purpose "to demonstrate that [he] had an altruistic motive for donating to the Kaneshiro campaign[,] rebutting the government's argument that the donations . . . were the *quid* for the prosecution of LJM."[57] The Court agrees that this specific evidence—rather than evidence of his or MAI's prior good acts generally—satisfies the Ninth Circuit's four-part test because: (1) it tends to prove a material point that Mitsunaga made donations to Kaneshiro for civic purposes; (2) such donations are not too remote in time; (3) Mitsunaga performed the relevant acts at issue (donations); and (4) the act of donating to political campaigns is similar to Mitsunaga's contributions to Kaneshiro's reelection campaign, "which speaks directly to [Mitsunaga's] motive and intent."[58] Thus, Mitsunaga's donations to other campaigns and political candidates satisfies the Ninth Circuit's four-part test for admissibility.[59] However, the Court finds that a limiting instruction is necessary to guide the jury's proper consideration of this evidence for the limited purpose of showing Mitsunaga's motive and intent for contributing to Kaneshiro's campaign.

4. <u>The limited probative value of Mitsunaga's and MAI's prior good acts is substantially outweighed by a risk of unfair prejudice or confusing the jury under Rule 403.</u>

Finally, the Court finds that the probative value of Mitsunaga's and MAI's prior good acts generally is substantially outweighed by a risk of unfair prejudice under

---

[57] Dkt. 527 at 8.

[58] *Id.* at 9.

[59] *See Charley*, F.4th at 647.

Rule 403. Evidence related to Mitsunaga's and MAI's awards, accolades, and commendations for community projects and donations to community causes may imbue in jurors "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[60] Moreover, given the limited relevance of this evidence to the charges in this case, the Court shares the concern that the introduction of such evidence may "serve . . . to confuse the jury as to the real issues in the case."[61] Thus, evidence of Mitsunaga's and MAI's prior good acts generally is inadmissible.

However, the Court agrees that Mitsunaga may offer evidence of prior donations to campaigns and political candidates tending to demonstrate his intent and motivation for donations made to Kaneshiro under Rule 404(b). Given the strong probative value of this evidence, the Court finds that it is not barred by a risk of unfair prejudice or confusing the jury under Rule 403. Should such evidence be offered, the Court finds a limiting instruction is necessary to mitigate risk of unfair prejudice by directing the jury to consider it for this proper purpose of demonstrating motivation and intent is necessary.[62]

Thus, this portion of the United States' Motion is GRANTED in part and DENIED in part, subject to further Court rulings.

---

[60] *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

[61] Dkt. 514 at 6.

[62] In its Motion, the United States also notes that "defense has not provided notice as required under [Rule 404(b)]." Dkt. 514 at 6. However, under the Rule, the prosecutor—not the defense—bears the burden of providing "reasonable notice" if such evidence to be offered at trial. Fed. R. Evid. 404(b)(3). *See United States v. Thompson*, 606 F. Supp. 3d 1066, 1068 (W.D. Wash. 2022) (noting, but declining to consider, defendant's challenge that the government provided inadequate notice under Rule 404(b)(3)).

5.  Evidence of Mitsunaga's undisclosed polygraph test is inadmissible.

The Court notes that Mitsunaga clarified he does not seek to introduce evidence of any prior polygraph test.[63] Therefore, this part of the United States' Motion is DENIED as moot.

B.  *Evidence of Mitsunaga's political affiliation and prior political activities generally is inadmissible, but evidence of Mitsunaga's prior donations to campaigns and political candidates is admissible, subject to a limiting instruction, and the Court will add "Political Affiliations" to the Jury Charge and Jury Instructions.*

Responsive to comments in a March 10, 2024, news article and materials the United States received from Mitsunaga in reciprocal discovery, the United States observes that "Mitsunaga is poised to tell the jury his political affiliation at trial and history of performing positive deeds for the community and for his political party."[64] In its Supplemental Brief, the United States requests that the Court "prohibit Mitsunaga from arguing or introducing evidence of his 'lifelong' 'loyalty' to a particular political party or prior 'good deeds' done on behalf of a particular political party."[65] It argues that such evidence disclosing Mitsunaga's political affiliation and commitment to a particular political party is irrelevant, unfairly prejudicial, and improper character evidence.[66] The United States contends that evidence of Mitsunaga's political affiliations "has no probative value in this case" but at the same time poses a risk "of eliciting sympathy from like-minded jurors," causing them

---

[63] Dkt. 527 at 2 (noting that, "to alleviate the government's concerns . . . the defense does not intend to introduce evidence of any prior polygraph test").
[64] Dkt. 521 at 2.
[65] *Id.* at 4.
[66] *Id.* at 2–3.

to "decide guilt or innocence based on emotion and attachment to a political party rather than the evidence at trial."[67]

It further requests that the Court "add 'political affiliation' to the list of things the jury should not be influenced by in discharging its duties" in the Parties' Jointly Proposed Instruction No. 1, as follows:

> Perform these duties fairly and impartially. You should not be influenced by any person's race, color, religious beliefs, national ancestry, *political affiliation*, sexual orientation, gender identity, gender, or economic circumstances.[68]

It requests "political affiliation" be added "each time the admonition occurs" throughout the proposed instructions.[69]

In response, Mitsunaga argues that his political affiliation is a "central" component of his defense because it "explains why he donated" (for political party loyalty) and "belies the government's argument that political donations were made to exert influence, because political donations made to exert influence would be made across the board and not along party lines."[70] Thus, evidence of Mitsunaga's political affiliation "is relevant and probative evidence under [Rule] 401 to rebut the government argument that the MAI donor apparatus was used *in a nearly identical manner* to exert influence on other political candidates and used *again* to bribe Kaneshiro."[71] Mitsunaga further argues that the United States' concerns

---

[67] *Id.* at 3.
[68] *Id.* at 3–4 (quoting Dkt. 438 (Parties' Jointly Proposed Jury Instructions) at 4) (emphasis in original).
[69] *Id.* at 4.
[70] Dkt. 527 at 5–6.
[71] *Id.*

about the prejudicial effect of political affiliation evidence are overblown because "[t]his case is about political donations as bribes" and people "registered [with a specific party] are [not] less likely to be convicted in Hawai'i than [those registered with another party]."[72] He contends that any concerns "can easily be addressed by the government's requested jury instruction, a limiting instruction, and questioning during *voir dire*."[73]

1. Evidence of Mitsunaga's political affiliation and past political activities generally is inadmissible.

The Court finds that evidence related to Mitsunaga's specific political party affiliation, including evidence of prior "good acts" generally supporting a political party, is inadmissible. First, the Court is not convinced that Mitsunaga's past political activities and affiliation meet the threshold admissibility standard for relevant evidence under Rule 401. Mitsunaga's particular party affiliation has limited relevance to the conspiracy charges in this case and is not probative of whether Mitsunaga conspired to bribe Kaneshiro with campaign contributions.[74]

Second, the Court finds such evidence could constitute improper character evidence under Rule 404(a). The evidence tends to show that Mitsunaga belongs to a particular political party and has supported this party in the past. The Court fails to see how this evidence is relevant to a pertinent character trait of Mitsunaga as it relates to the alleged

---

[72] *Id.* at 6.
[73] *Id.* at 7.
[74] *See Low v. Trump Univ., LLC*, No. 310CV00940GPCWVG, 2016 WL 6647793, at *4 (S.D. Cal. Nov. 10, 2016) (noting that witnesses' political affiliation, voting preferences, and political contributions had "no apparent relevance and may be unduly inflammatory" and directing the parties to "provide advance notice . . . outside the presence of the jury if they intend to offer evidence of witnesses' political affiliation").

conspiracy. Moreover, it appears Mitsunaga seeks to use evidence of historic political donations to "explain" why he contributed to Kaneshiro's reelection campaign. However, a defendant may not use "prior good acts 'generally' . . . to show a predisposition not to commit crimes."[75] Thus, this evidence is improper propensity evidence under Rule 404(a).

Third, the Court observes that this evidence is offered in the form of specific act evidence, which is only admissible where a defendant's "character or character trait is an essential element of a charge, claim, or defense."[76] The Court again fails to see how Mitsunaga's political affiliation and prior political activities offer evidence of a specific "character trait" that is essential to the charged conduct or a defense in this case.[77]

Finally, the Court is not convinced that the probative value of Mitsunaga's particular political affiliation and past political activities is substantially outweighed by a risk of unfair prejudice under Rule 403 because such evidence is likely to "elicit[] sympathy from like-minded jurors."[78] The Court agrees that "registered Democrats are [not] less likely to be convicted in Hawai'i than registered Republicans" just because "the State of Hawai'i is largely comprised of registered Democrats."[79] However, given the limited probative value and relevance of this evidence to the charges in this case, the Court is concerned that its

---

[75] *United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014).
[76] Fed. R. Evid. 405(b).
[77] *See United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995).
[78] Dkt. 521 at 3.
[79] Dkt. 527 at 6.

introduction may be prejudicial or confuse the issues for the jury.[80] Thus, evidence of Mitsunaga's political affiliation and past political activities generally is inadmissible.

2. Evidence of Mitsunaga's prior donations to political campaigns and candidates is admissible under Rule 404(b).

As previously stated, the Court agrees that to the extent Mitsunaga seeks to admit evidence of his past political activities, he may offer *specific evidence of prior donations to political campaigns and candidates* tending to demonstrate that his contributions to Kaneshiro's reelection campaign were politically motivated or based on a shared political affiliation under Rule 404(b). Should such evidence be offered, the Court finds a limiting instruction is necessary to direct the jury to consider the evidence for this proper purpose of demonstrating motivation and intent to mitigate possible risk of unfair prejudice. Thus, this portion of the United States' Supplemental Brief is GRANTED in part and DENIED in part, subject to further Court rulings.

3. "Political affiliation" will be added to Jury Instruction No. 1 and all instructions containing the admonition against influences.

Given the potential prejudicial impact of evidence related to any Defendant's political party affiliation, the Court finds that adding "political affiliation" to Jury

---

[80] *See Low v. Trump Univ., LLC*, No. 310CV00940GPCWVG, 2016 WL 6647793, at *4 (S.D. Cal. Nov. 10, 2016); *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

Instruction No. 1 is warranted. Moreover, neither Mitsunaga nor the other Defendants object to this addition.[81] Therefore, Jury Instruction No. 1 will read in part as follows:

> You should not be influenced by any person's race, color, religious beliefs, national ancestry, political affiliation, sexual orientation, gender identity, gender, or economic circumstances.[82]

Additionally, "political affiliation" will be added to every jury instruction that contains this admonition. Thus, this portion of the United States' Supplemental Brief is GRANTED.

## V.    CONCLUSION

For the foregoing reasons, the Court

1.      **GRANTS in part and DENIES in part** the United States' Motion at Docket 514 as follows, subject to further Court rulings:

    a.      **GRANTS** the United States' request to exclude evidence of Mitsunaga's and MAI's prior good acts generally under Rule 401, Rule 404(a), and Rule 403;

    b.      **DENIES without prejudice** the United States' request to exclude evidence of Mitsunaga's prior contributions to political campaigns and candidates under Rule 404(b), subject to a limiting instruction;

    c.      **DENIES as moot** the United States' request to exclude specific evidence related to an undisclosed polygraph taken by Mitsunaga in an unrelated matter;

---

[81] *See* Dkt. 527 at 7 (noting that "the government's concerns can easily be addressed by the government's requested jury instruction").
[82] *See* Dkt. 521 at 4 (quoting Dkt. 438 (Parties' Jointly Proposed Jury Instructions) at 4).

2. **GRANTS in part and DENIES in part** the United States' Supplemental Brief at Docket 521 as follows, subject to further Court rulings:

    a. **GRANTS** the United States' request to exclude Mitsunaga's political affiliation and prior acts supporting a particular political party generally under Rule 401, Rule 404(a), and Rule 403;

    b. **DENIES without prejudice** the United States' request to exclude specific evidence of Mitsunaga's prior contributions to political campaigns and candidates under Rule 404(b), subject to a limiting instruction;

    c. **GRANTS** the United States' request to add "political affiliations" to the Jury Charge and Jury Instructions under Rule 403.

The Parties are directed to confer, and attempt to jointly file a complete set of proposed limiting jury instructions **on or before 4:30 p.m., March 20, 2024.** Counsel shall separately file any disputed proposed limiting jury instructions, supported by legal authority. A full set of agreed-upon and disputed proposed limiting instructions in Word format and modified to conform to the facts of the case shall also be emailed to Chambers' Proposed Orders Box.


    IT IS SO ORDERED.

    Dated this 19th day of March, 2024.

                          /s/  *Timothy M. Burgess*
                          TIMOTHY M. BURGESS
                          UNITED STATES DISTRICT JUDGE