UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>Defendants. | Case No. 1:22-cr-00048-TMB-NC<br><br>ORDER ON UNITED STATES'<br>MOTION *IN LIMINE* NO. 10 |

## I.   INTRODUCTION

Before the Court is the United States' "Motion *in Limine* No. 10: To Introduce Dwight Nadamoto's Memorandum to Keith Kaneshiro for Effect on the Listener" ("United States' Motion No. 10").[1] The United States asks the Court to admit a memorandum authored by City and County of Honolulu Department of Prosecuting Attorney ("DPA") Deputy Prosecuting Attorney Dwight Nadamoto (the "Nadamoto Memorandum") to demonstrate its effect on Keith Kaneshiro[2] and proposes a limiting instruction when introducing the evidence.[3] Defendants Keith Mitsuyoshi Kaneshiro ("Kaneshiro"), Dennis Kuniyuki Mitsunaga, Terri Ann Otani, Aaron Shunichi Fujii, Chad Michael McDonald and

---

[1] Dkt. 594 (United States' Motion *in Limine* No. 10).
[2] *Id.* at 1, 4.
[3] *Id.* at 8.

Sheri Jean Tanaka ("Defendants") oppose the United States' Motion No. 10.[4] The matter is fully briefed. For the following reasons, the Court **DENIES without prejudice** the United States' Motion.

## II.    BACKGROUND

Given the voluminous litigation in this case, the Court assumes the Parties are familiar with the factual and procedural history of this case. The Court incorporates by reference the factual and procedural history included in its Order at Docket 484.

Relevant here, in 2014, Kaneshiro appointed DPA Deputy Prosecuting Attorney Dwight Nadamoto ("Nadamoto") to investigate the possibility of prosecuting L.J.M. for theft against Mitsunaga and Associates, Inc. ("MAI").[5] In June 2014, Nadamoto submitted a memorandum to Kaneshiro that detailed the results of Nadamoto's investigation into MAI's theft claims.[6] Nadamoto's memorandum concluded that he "was unable to establish a theft occurred" under various theories of theft; that the prosecution team was "not able to prove that [L.J.M.] for more than one contiguous hour during the work week worked on outside projects"; and that the team could determine neither "that any of [the] jobs that [L.J.M.] worked on and was paid for were originally meant to be MAI projects" nor that

---

[4] Dkt. 601 (Defendants' Response in Opposition to United States' Motion *in Limine* No. 10).
[5] *See* Dkt. 70 at 5; Dkt. 594 at 2.
[6] *See* Dkt. 594-1 (Nadamoto Memorandum).

L.J.M "use[d] MAI materials to perform her outside jobs."[7] Thus, based on available evidence, Nadamoto recommended against L.J.M.'s prosecution.[8]

In July 2014, L.J.M.'s federal civil lawsuit against MAI proceeded to trial.[9] MAI filed several counterclaims, including breach of loyalty, intentional interference with prospective business advantage, conversion, and fraud.[10] On July 25, 2014, a jury found neither L.J.M. nor MAI liable on any claim or counterclaim, except for MAI's counterclaim against L.J.M. for breach of loyalty, for which the jury awarded MAI one dollar ($1.00) in nominal damages.[11] Kaneshiro subsequently reassigned L.J.M.'s prosecution to Jacob Delaplane ("Delaplane"), a recently hired prosecutor in the DPA Career Criminal Unit.[12]

### III.   LEGAL STANDARD

#### A. *Motions* in Limine

"A motion *in limine* is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence"[13] and may be used to request evidence be either excluded

---

[7] *Id.* at 14–15.

[8] *Id.* at 14.

[9] Dkt. 70 at 5; *see Mau v. Mitsunaga & Assocs., Inc.*, 1:12-cv-00468 DKW-BMK (D. Hawaii 2014).

[10] Dkt. 70 at 5.

[11] *Id.*

[12] *Id.* at 15 (noting that Kaneshiro reassigned L.J.M. case to "recently hired Deputy Prosecuting Attorney J.D., who was then assigned to the Career Criminal Unit of the DPA."); *see also id.* at 5–6; Dkt. 375 (United States' Opposition to Defendants' Motion *in Limine* No. 11) at 4 (noting Kaneshiro assigned L.J.M.'s prosecution to Delaplane); Dkt. 383-2 (Felony Information) at 1, 3 (identifying Delaplane and Kaneshiro as signatories).

[13] *Barnard v. Las Vegas Metro. Police Dep't*, No. 2:03-cv-01524-RCJ-LRL, 2011 WL 221710, at *1 (D. Nev. Jan. 21. 2011); *Research Corp. Techs. v. Microsoft Corp.*, No. CV-01-658-TUC-RCJ, 2009 WL 2971755, at *1 (D. Ariz. Aug. 19, 2009).

or admitted before trial.[14] Motions *in limine* are appropriate when the "mere mention of evidence during trial would be highly prejudicial."[15] "*[I]n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."[16]

A party seeking to exclude evidence through a motion *in limine* must satisfy a "high standard" and show the evidence is inadmissible on all potential grounds.[17] Otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[18]

### B.  Hearsay

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[19] Statements not offered for the truth of the matter asserted are not hearsay.[20] Under Federal Rule of Evidence ("Rule") 802, hearsay is inadmissible unless an exclusion or an exception applies. "A court judgment is hearsay 'to the extent that it is

---

[14] *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Fed. R. Evid. 609).

[15] *Barnard*, 2011 WL 221710, at *1 (quoting BLACK'S LAW DICTIONARY 1109 (9th ed. 2009)); *Research Corp.*, 2009 WL 2971755, at *1.

[16] *Ohler v. United States*, 529 U.S. 753, 758, n.3 (2000).

[17] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF Ry. Co. v. Quad City Testing Lab'y, Inc.*, No. CV-07-170-BLG-RFC, 2010 WL 4534406, at *1 (D. Mont. Oct. 28, 2010) (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

[18] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF*, 2010 WL 4534406, at *1 (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

[19] Fed. R. Evid. 801(c).

[20] Fed. R. Evid. 801; *United States v. Moran*, 493 F.3d 1002, 1013 (9th Cir. 2007).

offered to prove the truth of the matters asserted in the judgment.'"[21] "One common application of this principle is admitting a declarant's out-of-court statement for the purpose of establishing what effect it had on the listener."[22]

### C. Relevance and Prejudice

Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence[] and . . . the fact is of consequence in determining the action."[23] Relevant evidence is admissible unless the United States Constitution, a federal statute, the rules of evidence, or the Supreme Court provide otherwise; irrelevant evidence is inadmissible.[24] However, relevant evidence may still be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[25]

---

[21] *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) (quoting *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004)).
[22] *United States v. Lopez*, 913 F.3d 807, 826 (9th Cir. 2019).
[23] Fed. R. Evid. 401.
[24] Fed. R. Evid. 402.
[25] Fed. R. Evid. 403.

## IV.    DISCUSSION

*A. The United States' Motion* in Limine *No. 10 is DENIED without prejudice, such that the written Nadamoto Memorandum is inadmissible without Nadamoto's live testimony at trial, but the pure fact of the Nadamoto Memorandum is admissible for the limited purpose of demonstrating effect on a listener, subject to a limiting instruction.*

The United States seeks to admit the Nadamoto Memorandum for the non-hearsay purpose of demonstrating its effect on "Kaneshiro's response after receiving Nadamoto's memorandum."[26] The United States clarifies that Nadamoto "is expected to testify at trial that he submitted a legal memorandum to Kaneshiro in June 2014" regarding his analysis and conclusions in the Nadamoto Memorandum.[27]

First, the United States argues the Nadamoto Memorandum is non-hearsay evidence because it is being offered "for its effect on the listener—not for the truth of the matters asserted therein."[28] It submits that "[d]espite Nadamoto's refusal to charge [L.J.M.], his analysis for why charges were not warranted, and the civil jury's . . . verdict with respect to MAI's counterclaims, Kaneshiro . . . kept pushing the case forward," first by "reassign[ing] the case to [a] newly hired prosecutor" rather than returning the case the Nadamoto, and then by pursuing an appeal of Judge Nakasone's dismissal of L.J.M.'s felony information.[29] The Nadamoto Memorandum is "important non-hearsay evidence of the defendants' corrupt intent and of the corrupt *quid pro quo*," the United States argues,

---

[26] Dkt. 594 at 5.
[27] *Id.* at 2.
[28] *Id.* at 5.
[29] *Id.* at 3–4.

because it demonstrates that in pursuing L.J.M.'s prosecution, Kaneshiro "was not acting for legitimate prosecutorial objectives, but under a corrupt arrangement with the MAI defendants" in "a conspiracy to prosecute [L.J.M.] in exchange for bribes."[30]

Second, the United States argues that the probative value of the Nadamoto Memorandum is not substantially outweighed by its potential for unfair prejudice under Rule 403 because Kaneshiro's reaction to it is "not consistent with how an uncompromised prosecutor would behave" and "is highly probative evidence of the defendants' intent and the existence of an illegal agreement."[31] Moreover, the United States suggests any danger of unfair prejudice may be addressed with a limiting instruction that directs the jury that the Nadamoto Memorandum may only be considered to demonstrate its effect on the listener, and proposes the following limiting instruction:

> You are about to hear [OR HAVE HEARD] evidence that Dwight Nadamoto wrote a memorandum regarding his investigation into [L.J.M.'s] conduct. You may not consider this evidence for the truth of the matters asserted in Nadamoto's memorandum. Rather, you may consider this evidence only for the effect on the listener, that is, what effect Nadamoto's memorandum had, if any, on the actions and responses of any person, including any defendant, who learned about Nadamoto's memorandum.[32]

The United States submits "[i]t is proper to construct this limiting instruction . . . [to] encompass the actions and responses of people beyond Kaneshiro" because it "expects the trial evidence will show that [other Defendants] also learned about Nadamoto's analysis,

---

[30] *Id.* at 5–6 (emphasis added).
[31] *Id.* at 7 (citing *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1344 (3d Cir. 2002)).
[32] *Id.* at 8.

disagreed with it, and resumed pushing material directly to Kaneshiro" roughly concurrent with the conclusion of Nadamoto's investigation.[33]

Defendants object to the United States' attempt to admit the written Nadamoto Memorandum on the grounds that it is inadmissible hearsay and that its "probative value . . . is substantially outweighed by the risk of unfair prejudice under [Rule] 403."[34] Defendants argue that the Nadamoto Memoradum has limited probative value because "[the] same purpose [of demonstrating effect on a listener] could be accomplished without the admission of the document but rather admission of evidence that Nadamoto had declined the case."[35] Further, Defendants argue that the United States' proposed limiting instruction "is insufficient to cure the prejudice of the hearsay written memorandum" because it contains "prejudicial conclusions" about the L.J.M. investigation and would "present[] a Sixth Amendment [Confrontation] Clause issue" if it were admitted without Nadamoto being called to personally testify about its contents and subject to cross-examination.[36]

Defendants ask the Court to "require the government to call Mr. Nadamoto as a witness" should it seek to elicit evidence of his decision not to charge L.J.M.'s case.[37] Alternatively, Defendants clarify that if the pure fact of the Nadamoto Memorandum were

---

[33] *Id.* at 8–9.
[34] Dkt. 601 at 2.
[35] *Id.* at 3.
[36] *Id.* at 3–4.
[37] *Id.* at 2.

admitted, but not the written document, the proposed limiting instruction would be

appropriate with the following amendment in redline:

> You are about to hear [OR HAVE HEARD] evidence that Dwight Nadamoto
> wrote a memorandum regarding his investigation into [L.J.M.'s] conduct.
> You may not consider this evidence for the truth of the matters asserted in
> Nadamoto's memorandum. Rather, you may consider this evidence only for
> the effect on the listener, that is, what effect Nadamoto's memorandum had,
> if any, on the actions and responses of any person, including any defendant,
> who ~~learned about~~ read Nadamoto's memorandum.[38]

1. <u>The written Nadamoto Memorandum is inadmissible hearsay, its probative value is substantially outweighed by the risk of unfair prejudice under Rule 403, and it presents a Confrontation Clause issue without Nadamoto's testimony.</u>

The Court finds that the written Nadamoto Memorandum is inadmissible without

Nadamoto's live testimony. The Court finds that, absent Nadamoto's live testimony, the

written Nadamoto Memorandum is inadmissible hearsay, its probative value is

substantially outweighed by the risk of unfair prejudice under Rule 403, and its admission

would violate the Defendants' rights under the Confrontation Clause. The Court is also not

convinced that the written Nadamoto Memorandum is necessary to demonstrate

Kaneshiro's and the Defendants' response to Nadamoto's recommendation declining to

file charges against L.J.M., and agrees that its probative value is substantially outweighed

by a risk of unfair prejudice. The Court's main concern is that admission of the Nadamoto

Memorandum could, as Defendants put it, "eliminate the need to call Nadamoto as a

witness[] and deprive defendants of their ability to cross-examine [him] about the contents

---

[38] *Id.* at 4.

of his report."[39] Should the United States seek to admit the written Nadamoto

Memorandum based on Nadamoto's live testimony, or to refresh his recollection as to his

testimony, it may reapply to the Court for its admission at that time.

2. The pure fact of the Nadamoto Memorandum is admissible for the non-hearsay purpose of demonstrating effect on a listener, and its probative value is not substantially outweighed by a danger of unfair prejudice under Rule 403, subject to a limiting instruction.

The Court finds that the pure fact of the Nadamoto Memorandum is not hearsay to

the extent the United States seeks to use it to show its effect on Kaneshiro and other

Defendants in responding to the investigation against L.J.M. An out-of-court statement is

not hearsay if it is offered for a purpose other than to prove the truth of the matter asserted.[40]

"One common application of this principle is admitting a declarant's out-of-court statement

for the purpose of establishing what effect it had on the listener."[41]

Here, the United States seeks to use the Nadamoto Memorandum to show

Kaneshiro's response to it by continuing to pursue prosecution of L.J.M., not to prove the

truth of the factual findings or legal reasoning found therein (i.e., that there was no evidence

of theft to pursue criminal charges against L.J.M.). The Court agrees that the Nadamoto

Memorandum could tend to demonstrate that "[Kaneshiro] was not acting for legitimate

prosecutorial objectives, but under a corrupt arrangement with the MAI [D]efendants."[42]

Kaneshiro's and the Defendants' responses to the Nadamoto Memorandum are probative

---

[39] *Id.* at 3.
[40] *See* Fed. R. Evid. 801(c)(2); *United States v. Lopez*, 913 F.3d 807, 826 (9th Cir. 2019).
[41] *Lopez*, 913 F.3d at 826.
[42] Dkt. 594 at 5.

and central to the charged conspiracies. Thus, its effect on Kaneshiro and other Defendants

who subsequently learned about it is a non-hearsay purpose used to establish effect on the

listener. Therefore, the Court finds the pure fact of the Nadamoto Memorandum is relevant

to the alleged conspiracy charges under Rule 401 and is being offered for a non-hearsay

purpose.

Further, the Court finds that the probative value of the pure fact of the Nadamoto

Memorandum is not substantially outweighed by the risk of unfair prejudice under

Rule 403. That the Nadamoto Memorandum recommends declining to file charges against

L.J.M. is central to the United States' argument that Kaneshiro's and other Defendants'

responses were "not consistent with how an uncompromised prosecutor would behave"

and "is highly probative evidence of the defendants' intent and the existence of an illegal

agreement."[43]

Nonetheless, the Court finds that a limiting instruction is necessary to effectively

guide the jury's consideration of the Nadamoto Memorandum only for its effect on

Kaneshiro and other Defendants who learned about it, not for the truth of the matter

asserted. The Court finds the following limiting instruction is appropriate:

> You are about to hear [OR HAVE HEARD] evidence that Dwight Nadamoto
> wrote a memorandum regarding his investigation into [L.J.M.'s] conduct.
> You may not consider this evidence for the truth of the matters asserted in
> Nadamoto's memorandum. Rather, you may consider this evidence only for
> the effect on the listener, that is, what effect Nadamoto's memorandum had,

---

[43] *Id.* at 7 (citing *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1344 (3d Cir. 2002)).

if any, on the actions and responses of any person, including any defendant, who learned about Nadamoto's memorandum.[44]

The Court notes that this language is consistent with other limiting instructions adopted by the Court for evidence admissible to demonstrate effect on a listener.[45] Moreover, the Court finds this language is more consistent with the intent of the instruction—to limit the use of Nadamoto's Memorandum to demonstrate its effect on those who knew about and responded to it—than the Defendants' recommendation, which limits the scope to those who "read" the written Memorandum, which is not admissible at this time. The Parties may lodge objections, if any, to this proposed limiting instruction **on or before 4:30 PM on April 3, 2024.**

## V.    CONCLUSION

For the foregoing reasons, the Court DENIES without prejudice the United States' Motion No. 10 at Docket 594. Further, the Parties are directed to lodge objections, if any, to the Court's proposed Limiting Instruction **on or before 4:30 PM on April 3, 2024.**

IT IS SO ORDERED.


Dated this 3rd day of April, 2024.

/s/   *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[44] *Id.* at 4.
[45] *See* Dkt. 593 at 4, 10 (Limiting Instructions No. 2, 7).