UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br>     v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>                 Defendants. | Case No. 1:22-cr-00048-TMB-NC<br><br>ORDER ON UNITED STATES'<br>MOTION *IN LIMINE* NO. 12<br>**(Dkts. 612 and 615)** |

## I.    INTRODUCTION

Before the Court is the United States' Redacted and Unredacted "Motion *in Limine* No. 12: To Admit Evidence of Sheri Tanaka's Intimidation of Grand Jury Witness" (together, "United States' Motion No. 12").[1] The United States seeks the Court's "approval to introduce . . . evidence[] [of] [Defendant] Tanaka's intimidation of a grand jury witness."[2] Defendants Terri Ann Otani ("Otani") and Sheri Jean Tanaka ("Tanaka") oppose the United States' Motion No. 12.[3] The matter is fully briefed. For the following reasons, the Court **GRANTS** the United States' Motion.

---

[1] Dkt. 612 (Redacted United States' Motion *in Limine* No. 12); Dkt. 615 (Sealed Unredacted United States' Motion *in Limine* No. 12).
[2] Dkt. 612 at 2.
[3] Dkt. 627 (Tanaka and Otani Response in Opposition to United States' Motion *in Limine* No. 12).

## II. BACKGROUND

Given the voluminous litigation in this case, the Court assumes the Parties are familiar with the factual and procedural history of this case. The Court incorporates by reference the factual and procedural history included in its Order at Docket 484.

Relevant here, on March 27, 2024, the United States interviewed Joann Aurello ("Aurello"), a witness in this case.[4] During this interview, Aurello newly alleged that she had a previously unknown encounter with Defendant Tanaka before Aurello's appearance before the grand jury investigating this case ("Aurello-Tanaka Encounter").[5] After this interview, the Federal Bureau of Investigations ("FBI") prepared a 302 Report ("FBI Report") and the United States sent a notice letter to Defendants on March 28, 2024, regarding Aurello's new allegation.[6]

*A. Aurello's Allegations Regarding the Aurello-Tanaka Encounter*

According to Aurello, on July 19, 2021, the FBI called to notify her that she would be required to appear before a grand jury in this case.[7] Phone records corroborate that immediately following this call, Aurello called Otani.[8] Further, in the following week,

---

[4] Dkt. 612 at 5. Although the United States redacted Aurello's name in the redacted version of its Motion No. 12, the Defendants named Aurello in their publicly filed response. *See* Dkt. 612; Dkt. 627.
[5] Dkt. 612 at 2–3.
[6] *Id.* at 3, 5.
[7] *Id.* at 3, 5, 6.
[8] *Id.* at 6.

Aurello, Otani, and Tanaka exchanged several calls.[9] At some point after the FBI notified Aurello that she would be a witness, she received a call from Tanaka asking her to meet.[10]

Aurello and Tanaka were both in Los Angeles at the time, and Aurello accepted Tanaka's request to meet.[11] After their phone conversation, Tanaka picked Aurello up in her vehicle and drove her out of Los Angeles and into an unknown area in the surrounding hills.[12] After entering a residential area, Tanaka pulled over to the side of the road, exited the vehicle, and instructed Aurello to leave her cell phone in the vehicle, explaining that reception in the area was poor.[13]

When they exited the vehicle, Tanaka began to discuss the grand jury investigation.[14] Aurello objected and told Tanaka she did not wish to continue the conversation.[15] However, Tanaka proceeded to tell Aurello that the grand jury was inquiring about political contributions.[16] She instructed Aurello to say "no" if the grand jury asked her whether Aurello had made political contributions.[17] Tanaka and Aurello then reentered the vehicle and Tanaka drove them both back to Los Angeles.[18] After this

---

[9] *Id.*
[10] *Id.* at 5.
[11] *Id.*
[12] *Id.*
[13] *Id.* at 5–6.
[14] *Id.* at 6.
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*

encounter with Tanaka, Aurello instructed her husband and daughter not to speak with Tanaka further.[19]

### B. *United States' Motion* in Limine *No. 12*

The United States seeks to admit evidence of the Aurello-Tanaka Encounter under Federal Rule of Evidence ("Rule") 404(b) as evidence of Tanaka's knowledge and consciousness of guilt.[20] The United States argues this evidence "passes muster under the Ninth Circuit's test for Rule 404(b) evidence."[21] First, the United States contends the evidence "tends to prove a material point"[22] related to the charged offenses because "[Aurello's] testimony will show that Tanaka sought to isolate, intimidate, and control her" by taking her to a remote area and instructing her on how to testify before the grand jury, despite Aurello's objections to discussing the subject.[23] Second, the United States asserts this evidence is "not too remote in time"[24] because the Aurello-Tanaka Encounter "occurred during the time when the grand jury was conducting its investigation into the conspiracy" and "when the authorities were looking for proof of the underlying crime."[25] And third, the United States argues this evidence "is sufficient to support a finding that

---

[19] *Id.*
[20] *Id.* at 8.
[21] *Id.*
[22] *Id.* (quoting *United States v. Lague*, 971 F.3d 1032, 1038 (9th Cir. 2020)).
[23] *Id.* (citing *States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976)).
[24] *Id.* at 9 (quoting *Lague*, 971 F.3d at 1038).
[25] *Id.*

defendant committed the other act"[26] because "[Aurello's] expected testimony is credible" and "corroborated by [phone] toll records."[27]

The United States also argues this evidence is not barred under Rule 403 because it is probative of Tanaka engaging in "witness intimidation," about which "the jury is more than entitled to hear."[28] It contends that the Court's existing Limiting Instruction No. 5, which directs the jury's consideration of "evidence relating to the conduct of a [defendant or witness] in connection with grand jury proceedings,"[29] can effectively mitigate any risk of undue prejudice.[30]

Further, the United States argues "[t]here is good cause to excuse the lack of pretrial notice in this case." It notes that, consistent with Rule 404(b)(3)(C), the Court may "excuse lack of pretrial notice 'for good cause' if the prosecution provides written notice 'in any form during trial,'"[31] particularly "when measures are taken to mitigate potential prejudice to the defense."[32] Here, it did not learn about this evidence until March 27, 2024, and thus "could not provide pretrial notice with respect to evidence it did not know about."[33] It also notes that it has taken measures to meet the written notice requirements and mitigate

---

[26] *Id.* (quoting *Lague*, 971 F.3d at 1038).
[27] *Id.*
[28] *Id.* at 10.
[29] Dkt. 593 (Order Adopting Limiting Instructions) at 7.
[30] Dkt. 612 at 9–10.
[31] *Id.* (quoting Rule 404(b)(3)(C); citing *Lopez-Gutierrez*, 83 F.3d at 1241; *United States v. Holmes*, 111 F.3d 463, 468 (6th Cir. 1997); *United States v. Perez-Tosta*, 36 F.3d 1552, 1562 (11th Cir. 1994)).
[32] *Id.* at 11 (citing *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1241 (9th Cir. 1996)).
[33] *Id.* at 10–11 (citing *United States v. Scholl*, 166 F.3d 964, 976 (9th Cir. 1999); *Lopez-Gutierrez*, 83 F.3d at 1241).

potential prejudice to Defendants by providing written notice and the FBI Report to the Defendants one day after its interview with Aurello.[34] The United States clarifies that because Aurello is not expected to testify imminently, Defendants will have "at least one week to prepare for her testimony."[35]

    *C. Defendants Tanaka and Otani's Response in Opposition*

Opposing the United States' Motion No. 12, Tanaka and Otani incorporate arguments from Defendants' Motion *in Limine* No. 12[36] and Defendants' Response to the United States' Motion *in Limine* No. 5.[37] They argue that evidence related to Aurello's encounter with Tanaka "should be excluded because it is remote in time and fails to satisfy the Ninth Circuit's standard for the admissibility of 'other act' evidence under Fed. R. Evid. 404(b)" and because "[i]t is . . . more prejudicial than probative under Fed. R. Evid. 403."[38]

Further, Tanaka and Otani contend the "[United States] is deliberately withholding requested discovery directly relevant to the allegations concerning Aurello" by "refus[ing] to provide relevant information concerning how and when [it] served Ms. Aurello with that subpoena," namely the dates and times she received her subpoena, received a call from

---

[34] *Id.* at 10.
[35] *Id.* at 11.
[36] Dkt. 344 (Defendants' Motion *in Limine* No. 12).
[37] Dkt. 376 (Defendants' Response in Opposition to United States' Motion *in Limine* No. 5); Dkt. 627 at 2.
[38] Dkt. 627 at 2 (citing *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012)).

Tanaka, and met with Tanaka.[39] Although Tanaka requested this information and a copy of Aurello's grand jury subpoena, the United States had not, as of the time of Tanaka and Otani's filing, provided this material or responded in writing.[40]

Tanaka and Otani argue that this information is "critical impeachment material[]  that the government is required to produce" to the Defendants under *Brady v. Maryland* and *Giglio v. United States*.[41] Specifically, they allege that Aurello's statement to the FBI that she received her grand jury subpoena before she received Tanaka's phone call is a "false statement" because, "[a]ccording to the [United States], Ms. Aurello will now testify that Ms. Tanaka called [Aurello] *before* she received her grand jury subpoena."[42] They argue that this inconsistency "undermines the reliability of Ms. Aurello's memory" or, alternatively, "suggests that she deliberately misrepresented the sequence of events to the FBI."[43] They also suggest that the United States is "well-aware of this false statement and conspicuously avoided incorporating it" in the United States' Motion No. 12.[44] Therefore, they ask the Court to "not permit the [United States] to conceal this information and thereby insulate [Aurello] from effective cross-examination" and, should the United States refuse

---

[39] *Id.* at 2–3.
[40] *Id.* at 4.
[41] *Id.* at 5 (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Hanna*, 55 F.3d 1456, 1459 (9th Cir. 1995); *United States v. Sedaghaty*, 728 F.3d 885, 902 (9th Cir. 2013)).
[42] *Id.* at 4 (emphasis in original).
[43] *Id.*
[44] *Id.*

to provide this information, to "preclude the government from eliciting any testimony whatsoever from Ms. Aurello."[45]

### III.   LEGAL STANDARD

*A. Motions* in Limine

"A motion *in limine* is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence"[46] and may be used to request evidence be either excluded or admitted before trial.[47] Motions *in limine* are appropriate when the "mere mention of evidence during trial would be highly prejudicial."[48] "*[I]n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."[49]

A party seeking to exclude evidence through a motion *in limine* must satisfy a "high standard" and show the evidence is inadmissible on all potential grounds.[50] Otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[51]

---

[45] *Id.* at 5–6.
[46] *Barnard v. Las Vegas Metro. Police Dep't*, No. 2:03-cv-01524-RCJ-LRL, 2011 WL 221710, at *1 (D. Nev. Jan. 21. 2011); *Research Corp. Techs. v. Microsoft Corp.*, No. CV-01-658-TUC-RCJ, 2009 WL 2971755, at *1 (D. Ariz. Aug. 19, 2009).
[47] *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Fed. R. Evid. 609).
[48] *Barnard*, 2011 WL 221710, at *1 (quoting BLACK'S LAW DICTIONARY 1109 (9th ed. 2009)); *Research Corp.*, 2009 WL 2971755, at *1.
[49] *Ohler v. United States*, 529 U.S. 753, 758, n.3 (2000).
[50] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF Ry. Co. v. Quad City Testing Lab'y, Inc.*, No. CV-07-170-BLG-RFC, 2010 WL 4534406, at *1 (D. Mont. Oct. 28, 2010) (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).
[51] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF*, 2010 WL 4534406, at *1 (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

B. *Rule 404(b)*

Under Federal Rule of Evidence ("Rule") 404(b)(1), evidence of a defendant's prior conviction, wrong, or act is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[52] "This prohibition reflects the 'underlying premise of our criminal justice system, that the defendant must be tried for what he did, not for who he is.'"[53]

Rule 404(b) "is inapplicable, however, where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment."[54] Courts have found evidence is "inextricably intertwined" with the crime charged "and therefore need not meet the requirements of Rule 404(b)" where (1) the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge" or (2) the evidence is necessary for "the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."[55]

Further, under Rule 404(b)(2), evidence falling within the scope of Rule 404(b) "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[56] To introduce evidence under Rule 404(b)(2),

---

[52] Fed. R. Evid. 404(b)(1).
[53] *United States v. Verduzco*, 373 F.3d 1022, 1026 (9th Cir. 2004).
[54] *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003) (citing *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993)).
[55] *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995).
[56] Fed. R. Evid. 404(b)(2).

> [t]he Government carries the burden to prove that the proposed evidence satisfies four requirements:
>
> (1) the evidence tends to prove a material point (materiality); (2) the other act is not too remote in time (recency); (3) the evidence is sufficient to support a finding that defendant committed the other act (sufficiency); and (4) [in certain cases,] the act is similar to the offense charged (similarity).[57]

If the Court finds these requirements are met, it must then determine, under Rule 403, whether the "probative value [of the evidence] is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[58]

Moreover, under Rule 404(b)(3), the prosecutor must notify the defense of the "other act" evidence to be introduced, including:

> (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
>
> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
>
> (C) do so in writing before trial — or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

### C. Relevance and Prejudice

Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence[] and . . . the fact is of consequence in determining the action."[59] Relevant evidence is admissible unless the United States

---

[57] *United States v. Charley*, 1 F.4th 637, 647 (9th Cir. 2021).
[58] Fed. R. Evid. 403; *see also United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005).
[59] Fed. R. Evid. 401.

Constitution, a federal statute, the rules of evidence, or the Supreme Court provide otherwise; irrelevant evidence is inadmissible.[60] However, relevant evidence may still be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[61]

D. Discovery Obligations

Under *Brady v. Maryland*,[62] the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[63] *Giglio v. United States*[64] extended this disclosure obligation to evidence relevant to the credibility of a witness where such credibility is "an important issue in the case."[65]

IV. DISCUSSION

A. The United States' Motion in Limine *No. 12 is GRANTED, such that evidence of the Aurello-Tanaka Encounter is admissible as "other act" evidence under Rule 404(b), subject to Limiting Instruction No. 5.*

The Court finds that evidence of the Aurello-Tanaka Encounter is admissible as "other act" evidence under Rule 404(b) and is not barred by Rule 403. The Court also finds

---

[60] Fed. R. Evid. 402.
[61] Fed. R. Evid. 403.
[62] 373 U.S. 83 (1963).
[63] *Id.* at 87.
[64] 405 U.S. 150 (1972).
[65] *Id.* at 154–55.

that good cause exists to excuse the United States' lack of prior notice of the Aurello-Tanaka Encounter.

1. <u>Evidence of the Aurello-Tanaka Encounter is admissible as "other act" evidence under Rule 404(b).</u>

The Court finds the evidence of the Aurello-Tanaka Encounter admissible as "other act" evidence under Rule 404(b). The United States seeks to introduce this evidence to demonstrate "[Tanaka's] and her co-conspirators' knowledge about the criminal conspiracy and their consciousness of guilt."[66] The Court agrees the alleged interaction, which would tend to show Tanaka's attempt to influence Aurello's grand jury testimony, appears probative of Tanaka and her co-defendants' knowledge of the alleged conspiracy and could demonstrate consciousness of guilt.[67] These purposes permit admitting the Aurello-Tanaka Encounter as "other act" evidence under Rule 404(b).[68]

Moreover, the Court finds that the evidence passes the Ninth Circuit's test for the admissibility of "other act" evidence under Rule 404(b).[69] First, the Aurello-Tanaka Encounter is probative of a material point related to the alleged conspiracy because it could tend to demonstrate that Tanaka sought to isolate and influence a grand jury witness to testify in a particular way. As "[e]vidence of conduct designed to impede a witness from

---

[66] Dkt. 612 at 3.
[67] *See United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976).
[68] *See* Fed. R. Evid. 404(b)(2).
[69] *See United States v. Lague*, 971 F.3d 1032, 1038 (9th Cir. 2020).

testifying truthfully may indicate consciousness of guilt," the Court agrees that Aurello's interaction with Tanaka "tends to prove a material point" of the charged conspiracy.[70]

Second, the Aurello-Tanaka Encounter is "not too remote in time" because it occurred during the grand jury investigation into the charged conspiracies, consistent with this Court's other rulings.[71]

Third, "the evidence is sufficient to support a finding that defendant committed the other act" because Aurello's expected testimony will allege Tanaka drove her out of Los Angeles, engaged Aurello in discussion about the grand jury investigation despite Aurello's protestations, and sought to influence Aurello's grand jury testimony by directing her to testify in a particular way.[72] Further, phone records will verify the sequence of the FBI's call to Aurello and the series of relevant calls that follow, including Tanaka's call to Aurello.[73] The Court finds this evidence could tend to demonstrate that Tanaka attempted to influence Aurello's grand jury testimony regarding conduct at issue in this case, which would demonstrate consciousness of guilt Thus, the Court finds that the Aurello-Tanaka Encounter is admissible as "other act" evidence under Rule 404(b).

---

[70] *Brashier*, 548 F.2d at 1325; *Lague*, 971 F.3d at 1038.
[71] *Lague*, 971 F.3d at 1038.
[72] *Id.*; Dkt. 612 at 5–6.
[73] Dkt. 612 at 6–7.

2. <u>The probative value of the Aurello-Tanaka Encounter is not substantially outweighed by a danger of unfair prejudice to Defendants.</u>

The Court also finds that the Aurello-Tanaka Encounter is not barred by Rule 403. The evidence appears highly probative to the United States' argument that Tanaka "attempt[ed] to shape a grand jury witness's testimony" through "witness intimidation," conduct evincing knowledge and consciousness of guilt of the charged conspiracies.[74] The Court agrees that such evidence, if the jury credits it, would "paint[] a vivid picture of witness intimidation" and therefore should be heard by the jury as probative evidence of consciousness of guilt.[75] The Court notes that Tanaka and Otani argue that the evidence is "more prejudicial than probative under [Rule] 403,"[76] but fail to identify any risk of unfair prejudice not already addressed by Limiting Instruction No. 5. Therefore, the Court concludes that the probative value of the Aurello-Tanaka Encounter is not substantially outweighed by a danger of unfair prejudice or any other Rule 403 concern. If the parties wish, the Court will read adopted Limiting Instruction No. 5 regarding other acts of alleged obstructive conduct during the grand jury investigation to guide the jury's consideration and mitigate risks to Defendants.

---

[74] *Id.* at 8, 10.
[75] *Id.* at 10.
[76] Dkt. 627 at 2. Under the Federal Rule of Evidence 403, the correct test is whether the probative value of relevant evidence is "<u>substantially</u> outweighed" by a risk of unfair prejudice. *See* Fed. R. Ev. 403 (emphasis added).

3. <u>Good cause exists to excuse the United States' lack of prior notice.</u>

Further, the Court finds that good cause exists to excuse the United States' lack of prior notice of this evidence under Rule 404(b)(3)(C). The United States first learned of the Aurello-Tanaka Encounter on March 27, 2024, after this trial was already underway, and expeditiously sent the FBI Report and written notice to Defendants the following day. Moreover, the Court notes that the United States has not yet called Aurello to testify, and that Defendants now have had more than a week to prepare for her cross-examination. The United States finds these circumstances constitute good cause to excuse the United States' lack of pretrial notice in this case.[77]

4. <u>The Court denies Tanaka and Otani's request to prohibit Aurello's testimony.</u>

Accordingly, the Court also denies Tanaka and Otani's request to prohibit Aurello from testifying at trial. Defendants ask the Court to preclude Aurello from testifying if the United States does not provide the requested information. The Court finds Aurello's expected testimony regarding the Aurello-Tanaka Encounter relevant and probative of the Defendants' knowledge of and consciousness of guilt for the charged conspiracies in this case. The Court also notes that, should Aurello testify, she will be subject to cross-

---

[77] *See United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1241 (9th Cir. 1996) (affirming district court's finding of good cause to excuse prosecution's lack of pretrial notice where "evidence was not made available to the government until the night before trial" and where prosecution made witness available to defense and provided defense investigative reports prior to witness' testimony); *United States v. Holmes*, 111 F.3d 463, 468 (6th Cir. 1997) (finding that district court's decision to "order[] the government to postpone calling [witness] until five days later, thereby giving the defense time to prepare" for Rule 404(b) evidence sufficiently "deal[t] with the defense's assertion of unfair surprise").

examination about any perceived inconsistencies in the FBI report. Therefore, the Court finds such a request premature at this time, and denies their request without prejudice.

> B. *The Court DEFERS ruling on Tanaka an Otani's request to compel at this time.*

At this time, the Court defers ruling on Tanaka and Otani's request to compel production of the grand jury subpoena and information regarding how and when Aurello was served. Defendants argue that, because Aurello's statements during her FBI interview on when she received her grand jury subpoena may have been false or inconsistent, these requested materials may hold exculpatory value and must be produced in accordance with the United States' *Brady* and *Giglio* obligations.[78] However, the Court notes that, regardless of when Aurello received her grand jury subpoena, the evidence indicates she received *notice* of her grand jury appearance prior to the Aurello-Tanaka Encounter. Therefore, at this time, the Court is not persuaded of the exculpatory value of this information relevant to the admissibility of evidence related to the Aurello-Tanaka Encounter. The Court also notes that, as Aurello is expected to testify regarding this evidence, she will be subject to cross-examination about when she received her grand jury subpoena and any perceived inconsistencies in the FBI Report. Therefore, the Court defers ruling on whether the United States must provide additional related documents unless and until the United States elicits testimony about the Aurello-Tanaka Encounter from

---

[78] Dkt. 627 at 5.

Aurello.[79] If Defendants wish for the Court to rule on their request, they must separately file a motion to compel Aurello's grand jury subpoena and related information.

Nonetheless, the United States remains required to comply with its obligations under *Brady* and *Giglio*. The United States must provide sufficient notice of whether it plans to elicit testimony regarding Aurello's grand jury subpoena or to introduce documents relied upon, and to supplement its production to Defendants promptly and accordingly.

## V.  CONCLUSION

For the foregoing reasons, the Court GRANTS the United States' Motion No. 12 at Docket 612 and 615.

IT IS SO ORDERED.

Dated this 15th day of April, 2024.

/s/   Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[79] *See United States v. Holmes*, No. 5:18-CR-00258-EJD-1, 2021 WL 3395146, at *9 (N.D. Cal. Aug. 4, 2021) (deferring ruling on whether prosecution had to disclose identities and documents relied upon in discovery letter under *Brady* and *Giglio* "unless and until the Government elicit[ed] testimony concerning the [disputed evidence] from those witnesses" and where defendant did "not indicate[] why any of the information or evidence she [sought] [was] relevant, helpful in establishing her defense, not cumulative, or not exempt from disclosure"); *United States v. Grace*, 401 F. Supp. 2d 1069, 1077 (D. Mont. 2005) (noting that "*Brady* violations are generally raised and adjudicated post-trial, upon the revelation by the government or discovery by the defense of information favorable to the accused that should have been disclosed before trial, [and that it is] [o]nly after trial has concluded and a complete trial record exists may a court analyze whether information the government has not produced constitutes a *Brady* violation").