UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>                  Defendants,<br><br>and<br><br>MITSUNAGA & ASSOCIATES, INC.<br><br>                  Intervenor. | Case No. 1:22-cr-00048-TMB-NC<br><br>ORDER ON MITSUNAGA &<br>ASSOCIATES, INC.'S ASSERTION OF<br>ATTORNEY-CLIENT PRIVILEGE<br>**(Dkts. 435, 640)** |

## I.    INTRODUCTION

Before the Court is Intervenor Mitsunaga & Associates, Inc.'s ("MAI") assertion of attorney-client privilege in this matter.[1] The matter is fully briefed, and the Court finds that a hearing on the issues is not necessary for resolution at this time.

---

[1] Dkts. 435-1 (Lois Mitsunaga Declaration); 640 (MAI Attorney Client Privilege Brief).

## II.     BACKGROUND

On February 2, 2024, Defendant Dennis Mitsunaga ("Mitsunaga") filed a "Trial Brief" noticing the Court of a "potential conflict between the assertion and exercise of the attorney-client privilege and a defendant's right to exercise their Sixth Amendment right to provide testimony in their defense" ("Mitsunaga Trial Brief").[2] Mitsunaga identified that the potential conflict pertained to Defendant Sheri Jean Tanaka's ("Tanaka") decision whether to testify in her own defense because Tanaka served as MAI's corporate counsel.[3]

Attached to the Mitsunaga Trial Brief was a Declaration of Lois Mitsunaga, President and CEO of MAI, which stated that Lois Mitsunaga "hereby assert[s] MAI's attorney-client privilege regarding any and all attorney-client privileged communications made between attorney Sheri Tanaka and any current or former MAI representatives, officers, or employees."[4] Also attached to the Mitsunaga Trial Brief was an email from Tanaka ("Tanaka Attorney-Client Privilege Notice") informing Mitsunaga that "no decision has been made as to whether [Tanaka] will testify," but that if she does, "her testimony may possibly include certain communications subject to the attorney-client privilege."[5] Tanaka expressed her belief that if such a conflict arose, her constitutional right to testify would prevail over the attorney-client evidentiary privilege, particularly "because MAI is not a defendant in this case."[6]

---

[2] Dkt. 435 (Mitsunaga Trial Brief) at 2.
[3] *Id.* at 2–3.
[4] Dkt. 435-1 (Lois Mitsunaga Declaration) at 2.
[5] Dkt. 435-2 (Tanaka Attorney-Client Privilege Notice) at 2.
[6] *Id.*

The Court first invited MAI to intervene if it sought to continue to assert attorney-client privilege in this case.[7] When MAI did not do so, the Court then directed MAI to intervene and brief the issues, and directed the other parties to do so as well.[8]

### A. MAI's Attorney-Client Privilege Brief

Pursuant to the Court's order, MAI intervened[9] and filed briefing on the issue of its attorney-client privilege claim.[10] MAI articulates its position that it "has not waived the privilege" and "continues to assert an attorney-client privilege based on the fact that MAI hired Ms. Tanaka to provide legal advice and she acted as corporate counsel to MAI."[11] It asserts that "[n]one of the parties in this case have the power to waive the attorney-client privilege between MAI and its counsel, Ms. Tanaka," because "[o]nly the current managers of MAI, not displaced managers, can waive the privilege, regardless of whether the communication at issue occurred during the tenure of previous management."[12]

---

[7] Dkt. 549 (Order on United States' Motion *in Limine* No. 6) at 13 ("[I]f MAI continues to seek to assert an attorney-client privilege in this case from Tanaka's role as corporate counsel, the Court will require MAI to intervene expediently. Further, the Court will require MAI to brief the elements and all relevant issues regarding its assertion of attorney-client privilege in this case, including how it plans to raise any objections. The Court will also require responses from the Defendants and the United States.").
[8] Dkt. 587 (Order Setting Briefing Schedule Regarding Attorney-Client Privilege Issues) at 2 ("[T]he Court directs MAI to appear and brief its position on MAI's claimed attorney-client privilege and all issues related to this claim. In its brief, MAI must identify how it intends to lodge objections, if any. Should MAI fail to appear and support its claim by the date certain below, the Court will thereafter consider any asserted attorney-client privilege impliedly waived.").
[9] Dkt. 619 (MAI Motion to Intervene).
[10] Dkt. 640 (MAI Attorney-Client Privilege Brief).
[11] *Id.* at 5.
[12] *Id.* at 5 (citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-349 (1985)).

MAI stated that attorney-client privilege is governed by the Ninth Circuit's eight-part test,[13] but that "Tanaka is not yet in a position to have to decide whether she might testify, much less what she might testify to" and that the Court cannot determine whether such communications are privileged before the relevant communications have even been identified.[14] Noting that "Tanaka's counsel cited *United States v. W.R. Grace*,"[15] MAI also suggested the process utilized in that case "might be instructive in determining an acceptable procedure here," arguing that if Tanaka decides to testify, the Court should consider an *ex parte in camera* review on the record of any material over which MAI asserts privilege, with just MAI's counsel, Tanaka, and Tanaka's counsel present.[16]

### B.  Tanaka's Attorney-Client Privilege Brief

In her brief filed April 8, 2024, Tanaka states that "[i]t is premature" for her to decide "whether to testify in her own defense."[17] Rather, she states that she "reserves her constitutional right to testify at trial."[18] Finally, she asserts that her "Sixth Amendment constitutional right to testify in her own defense would prevail over a client's evidentiary privilege to exclude attorney-client communications, particularly for any client who is not a defendant in this case."[19]

---

[13] As articulated in *United States v. Sanmina Corp. & Subsidiaries*, 968 F.3d 1107, 1116 (9th Cir. 2020).
[14] Dkt. 640 at 6.
[15] *Id.* at 6–7 (citing *United States v. W.R. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006)).
[16] *Id.* at 7.
[17] Dkt. 646 (Defendant Tanaka's Attorney-Client Privilege Brief) at 2.
[18] *Id.*
[19] *Id.* (citing *W.R. Grace*, 439 F. Supp. 2d at 1148).

### C. The United States' Attorney-Client Privilege Brief

In its briefing, the United States suggests that "[i]f history is any guide, the Court should consider the pending and forthcoming privilege briefs from the defendants and MAI with extreme skepticism" because the asserted "attorney-client privilege appears to be a hand-in-glove attempt to engineer a legal conundrum to the benefit of the individual defendants."[20] Noting close relationships between MAI's CEO Lois Mitsunaga, Defendant and former CEO Dennis Mitsunaga, and Tanaka, the United States argues that "[u]ltimately, the Court will be well positioned to determine that MAI has no valid privilege to allege from the back of the courtroom during trial."[21] The United States argues that such privilege claims fail because MAI cannot establish all eight elements of attorney-client privilege "over whatever unknown testimony is in issue," because attorney-client privilege cannot be used "as a sword and a shield," and because the privilege "is pierced where the crime-fraud exception applies."[22]

First, the United States argues that "MAI appears to be asserting the privilege for personal reasons—to protect Dennis Mitsunaga—not legitimate business reasons that would fall within a traditional corporate attorney-client context."[23] It points to "[t]he close relationship between MAI and Mitsunaga," demonstrated in part by the fact that "Mitsunaga himself filed his daughter's purported invocation of MAI's attorney-client

---

[20] Dkt. 643 (United States' Attorney-Client Privilege Brief) at 1–2; *see also* Dkt. 654 (United States' Sealed Unredacted Attorney-Client Privilege Brief).
[21] Dkt. 643 at 1–2.
[22] *Id.* at 2.
[23] *Id.* at 14.

privilege."[24] Therefore, the United States argues, this personal purpose renders the assertion an "abuse" of the attorney-client privilege, wherein Lois Mitsunaga is "simply acting for herself and those personally close to her and using the corporate shield as a weapon."[25]

Next, the United States suggests several grounds on which it argues the assertion should fail. It argues that attorney-client privilege cannot be employed "both as a sword and a shield," indicating that it is improper for MAI to assert "it was acting at the direction of counsel, but . . . [that] it will not waive the attorney-client privilege."[26] The United States notes that any communications between Tanaka (as MAI's representative) and "the outside world—to the unemployment office, to the Hawaii State Court, to Kaneshiro's office, and to the District Court for the District of Hawaii" cannot satisfy the attorney-client privilege elements as they are voluntary disclosures that "cannot be considered to have been made in confidence."[27] It also notes that MAI has not yet "establish[ed] that legal advice was sought from Tanaka," observing that "[t]he simple fact that an attorney is present in a communication does not, by default, make those privileged communications."[28]

Finally, the United States argues that even if MAI establishes the elements of attorney-client privilege, the privilege is waived for relevant evidence in this case "because

---

[24] *Id.*
[25] *Id.* (citing *Clark v. United States*, 289 U.S. 1, 15 (1933) ("The privilege takes flight if the relation is abused.")).
[26] *Id.* at 15.
[27] *Id.* at 15–16.
[28] *Id.* at 16.

the crime-fraud exception permeates everything MAI and the defendants did in this case."[29] It argues that, given its view of the case establishing Tanaka's role "subvert[ing] the justice system in order to advance the goals of the conspiracy," any attorney-client communications relevant to this case "were made for the purpose of furthering the charged conspiracies."[30]

### D. MAI's Response Brief

In response, MAI notes that it agrees that "it is premature for [Tanaka] to decide to testify" but that it disagrees that Tanaka's "Sixth Amendment right to testify in her defense would automatically prevail over MAI's attorney-client privilege."[31] It again suggests that "[d]etermining whether the Sixth Amendment right of Ms. Tanaka trumps MAI's right to confidential attorney-client communications will require considering Ms. Tanaka's proffered testimony once she has invoked her right to testify."[32]

MAI also suggests that the United States has no standing to take a position the issue, beyond cross-examination, and that it "is between MAI and Ms. Tanaka, and is for the Court to determine whether the proposed testimony is privileged."[33] Relatedly, MAI disagrees that Mitsunaga is "poised to use the privilege as a sword and shield" because Mitsunaga "is not asserting the privilege" and cannot do so, "even if he wanted to."[34]

---

[29] *Id.* at 16–17.
[30] *Id.* at 19.
[31] Dkt. 667 (MAI's Response Brief) at 2.
[32] *Id.* at 3–4.
[33] *Id.* at 6.
[34] *Id.*

Case 1:22-cr-00048-TMB-NC   Document 774   Filed 05/04/24   Page 8 of 16   PageID.11653

Finally, MAI argues that "[t]he crime-fraud exception to the privilege does not apply to the unique facts of this issue since MAI is asserting the privilege and is not charged" in this case.[35] It suggests that none of the cases the United States cites as authority "involve a lawyer seeking to testify to privileged communications, claiming the privilege is trumped by her Sixth Amendment rights" and that "[i]t would defeat the purpose of Ms. Tanaka's testimony if she, a criminal defendant, argued she could testify in her own defense because the attorney-client privilege did not apply due to the crime-fraud exception."[36]

### E.  The United States' Response Brief

In response, the United States suggests that either the Court should find that "MAI has failed to establish that an attorney-client privilege exists" or that, "given MAI's failure to abide by the Court's clear instructions, the Court should find the privilege waived" for its failure to present any "basis for its assertion of attorney-client privilege (whether publicly, under seal, or otherwise)."[37]

Regarding Tanaka's brief, the United States asserts that her "basic response does not abide by the Court's order, which required the parties to 'brief MAI's claimed attorney-client privilege.'"[38] Rather, the United States argues that Tanaka and MAI should "flesh[] out" the issue "*before* . . . Tanaka chooses whether to testify," such that MAI may "at least list categories of communications that it expects would surface during Tanaka's testimony

---

[35] *Id.* at 7.
[36] *Id.* at 9.
[37] Dkt. 668 (United States' Response Brief) at 2.
[38] *Id.* at 7 (quoting Dkt. 587 at 3).

-8-

which might contain privileged information so that the United States may file a more informed response."[39] The United States further "requests that the Court fashion a proceeding that enables the United States to meaningfully engage with the privilege analysis."[40]

The matter is fully briefed, and the Court finds that a hearing on the issues is not necessary for resolution at this time.

### III.    LEGAL STANDARDS

Attorney-client privilege protects confidential disclosures made by a client to an attorney . . . to obtain legal advice . . . as well as an attorney's advice in response to such disclosures."[41] Corporations may hold and assert attorney-client privilege.[42] But whether claimed by an individual or a corporation, eight elements must be established:

> (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived.[43]

---

[39] *Id.* at 7 & n.2.
[40] *Id.* at 7–8, 7 n.3 (citing *United States v. Hansen*, Case No. 18-cr-00346-DCN, 2019 WL 6137450, *2 (D. Idaho, Nov. 19, 2019) (unpublished) ("The Court appreciates [defendant's] desire to maintain his attorney-client privilege, but this presents a sticky situation. Side—in this case, the Government—is somewhat at a disadvantage; it knows that [defendant] is attempting to invoke the attorney-client privilege, but it does not know the claimed basis for that privilege. This obviously limits the Government and forces it to defend a very broad, general claim.")).
[41] *Id.* (citing *Chen*, 99 F.3d at 1501; *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997) (explaining that the "attorney-client privilege is a two-way street").
[42] *United States v. Grace*, 439 F. Supp. 2d 1125, 1137 (D. Mont. 2006) (citing *Upjohn Co. v. United States*, 449 U.S. 449 U.S. 383, 395 (1981)).
[43] *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002).

"[T]he burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it."[44]

## IV. DISCUSSION

The Court first denies MAI's blanket claim of privilege because it is improperly asserted. Next, because the Court observes that no evidence has yet arisen in this case for which MAI has met its burden of establishing attorney-client privilege, the Court agrees that the remaining issues are not ripe unless and until Tanaka testifies, or until MAI meaningfully asserts attorney-client privilege satisfying all eight elements over any other evidence.

If Tanaka chooses to testify in her own defense, the Court will conduct a privilege review comporting with *United States v. Zolin*[45] and *United States v. Christensen*.[46] The Court notes that significant portions of the evidence may be considered waived by, among other things, third-party disclosure and the crime-fraud exception, and further that any attorney-client privilege must be balanced against Tanaka's Sixth Amendment rights.

*A. MAI's blanket attorney-client privilege claim is denied as improperly asserted.*

First, MAI's blanket claim of attorney-client privilege in this matter "regarding any and all attorney-client privileged communications made between attorney Sheri Tanaka

---

[44] *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) (citing *United States v. Bump*, 605 F.2d 548, 551 (10th Cir. 1979); *United States v. Landof*, 591 F.2d 36, 38 (9th Cir. 1978); *In re Horowitz*, 482 F.2d 72, 81 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973)).
[45] 491 U.S. 554 (1989).
[46] 828 F.3d 763 (9th Cir. 2015).

and any current or former MAI representatives, officers, or employees" fails.[47] The governing law is firmly settled that "[t]he claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable."[48] Further, "[t]he scope of the privilege should be 'strictly confined within the narrowest possible limits.'"[49] "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."[50]

Here, MAI has not met its burden of establishing attorney-client privilege as required by the Ninth Circuit.[51] MAI has failed to identify any evidence whatsoever in this case in which it established all eight of these elements by seeking Tanaka's legal advice as a corporate lawyer for MAI as a corporate entity, with communications relating to that purpose made in confidence without waiver. Indeed, the Court observes that on the record before it and in MAI's briefing, no evidence has yet been presented that constitutes confidential attorney-client communications between Tanaka and MAI regarding her legal advice to MAI as a corporate entity. Further, assuming those elements could be established,

---

[47] *See* Dkt. 435-1 at 2.
[48] *United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015) (quoting *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)).
[49] *Christensen*, 828 F.3d at 803 (quoting *Lawless*, 709 F.2d at 487; 8 Wigmore, Evidence § 2291).
[50] *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) (citing *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977); *Radiant Burners, Inc. v. American Gas Ass'n*, 320 F.2d 314, 322–23 (7th Cir.) (en banc), *cert. denied*, 375 U.S. 929 (1963) (quoting VIII J. Wigmore, Evidence s 2291, at 554 (McNaughton rev. 1961))).
[51] *See United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002).

the Court sees no evidence relevant to this case that would not be waived by voluntary disclosure[52] or by the crime-fraud exception.[53]

As such, MAI's improper blanket assertion of attorney-client privilege "regarding any and all attorney-client privileged communications made between attorney Sheri Tanaka and any current or former MAI representatives, officers, or employees" is rejected.

> *B. The remaining issues regarding MAI's attorney-client privilege are not ripe unless and until Tanaka decides to testify or MAI establishes attorney-client privilege satisfying all eight elements.*

Thus concluding, the Court next determines that the issue of MAI's attorney-client privilege is likely not ripe unless and until Tanaka decides to testify or MAI meaningfully asserts attorney-client privilege as to any other evidence by satisfying its burden of establishing all eight elements.

Beyond Tanaka's potential testimony, the Court sees no evidence protected by MAI's attorney-client privilege presented in this case pursuant to the Ninth Circuit's eight-part test. "Without a showing that a communication was made by a corporate officer or employee to corporate counsel for purposes of the corporation's obtaining legal advice, the privilege is inapplicable."[54]

---

[52] *See Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) ("[I]t has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject.") (collecting cases).
[53] *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992); *United States v. Hodge & Zweig*, 548 F.2d 1347, 1354 (9th Cir. 1977).
[54] *United States v. Agnello*, 135 F. Supp. 2d 380, 383–84 (E.D.N.Y.), *aff'd*, 16 F. App'x 57 (2d Cir. 2001).

At this stage, the Court is convinced that only a vanishingly narrow realm of evidence could be both protected by MAI's attorney-client privilege and also relevant to this case. Thus far, the Court has seen no indication that evidence will be introduced that is properly protected by attorney-client privilege between Tanaka and MAI. Further, as the United States observes, if any attorney-client privilege between Tanaka and MAI could be established for any evidence in this case thus far, the crime-fraud exception would waive any relevant communications "made for the purpose of furthering the charged conspiracies."[55] As such, the Court cannot find that MAI's attorney-client privilege is a live issue ripe for review.

Therefore, the Court determines that the issue of MAI's attorney-client privilege is not ripe unless and until Tanaka decides to testify.

### C. If Tanaka testifies, the Court will conduct a privilege review governed by the standards articulated in Zolin and Christensen.

None of the proposals for privilege review proffered by MAI, Tanaka, or the United States correctly identify the governing Ninth Circuit law for the procedure. MAI and Tanaka point to the District of Montana's approach in *United States v. W.R. Grace*[56] to suggest an *ex parte in camera* assessment of privilege, which MAI suggests should be held on the record to assist in appellate review.[57] The United States asserts that at this stage, any

---

[55] Dkt. 654 at 18–18 (citing *United States v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002), as amended on denial of reh'g (Mar. 13, 2002) ("Communications from Defendant to [attorney] simply were not privileged, because Defendant was using [attorney] to perpetuate the CCM fraud.").
[56] 439 F. Supp. 2d 1125, 1148 (D. Mont. 2006).
[57] Dkt. 640 at 7; Dkt. 646 at 2.

privilege could be considered waived for inadequate briefing and, if not, that MAI "should be required to identify communications it believes implicate the attorney-client privilege and brief all elements of the attorney-client privilege."[58]

Neither proposal is procedurally sufficient under Ninth Circuit law. If Tanaka testifies, the Court will evaluate the evidence according to the Ninth Circuit's recognized "procedures for handling the investigation of potentially privileged materials established in *United States v. Zolin*."[59] As the Ninth Circuit has clearly articulated, the *Zolin* analysis requires a two-step review: Step One requires the Court to determine "whether an evidentiary showing is sufficient to allow *in camera* review under the *Zolin* test"; and, Step Two requires that, if an adequate showing under *Zolin*'s first step has been made, the Court must determine whether "in [its] sound discretion" it should "engage in *in camera* review."[60] Further, in Step Two, Court will determine whether any of Tanaka's testimony would contain privileged attorney-client communications under the eight-part test and, if so, whether Tanaka's right to testify in her own defense outweighs MAI's attorney-client privilege protecting it as to each statement.

If Tanaka chooses to testify, to assist in the Court's determination under *Zolin*, the Court will require expedited briefing and argument from MAI and Tanaka. Tanaka must articulate any and all attorney-client communications with MAI that she intends to

---

[58] Dkt. 668 at 1, 8.
[59] 491 U.S. 554 (1989).
[60] *United States v. Christensen*, 828 F.3d 763, 798 (9th Cir. 2015) (citing *Zolin*, 491 U.S. at 572; *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992); *Grand Jury Subpoena* 92-1(SJ), 31 F.3d 826, 829 (9th Cir. 1994)).

introduce and explain the role of each communication in her defense. MAI must articulate in detail how each communication Tanaka identifies meets all eight elements of attorney-client privilege, supporting its claim with pinpoint caselaw citations and establishing that the communication has not been waived by voluntary disclosure, the crime-fraud exception, or any other form of waiver. Upon review of the briefing, the Court will then determine, in its discretion, whether *in camera* review is warranted.

Finally, should Tanaka testify, the Court is cognizant that protecting a defendant's constitutional right to testify in her own defense is paramount, and considers any attempt to automatically stymie this right legally indefensible. The Court observes that other courts have rejected such attempts, declaring "[a] rule that automatically barred a corporate officer from testifying in so important a personal matter [as in the officer's own defense] without obtaining the permission of the corporation would be unwise," particularly considering that corporate officers would face "dire implications" while "the corporation faces no such issue as imprisonment in lieu of bail."[61]

---

[61] *United States v. Agnello*, 135 F. Supp. 2d 380, 384 (E.D.N.Y.), *aff'd*, 16 F. App'x 57 (2d Cir. 2001) (citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985); *Upjohn Co. v. United States*, 449 U.S. 383 (1981)).

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** MAI's blanket assertion of attorney-client privilege as improper and finds that the remaining issues regarding MAI's attorney-client privilege are not yet ripe; thus, they are denied without prejudice.

IT IS SO ORDERED.

Dated this 4th day of May, 2024.

/s/  *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE