UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>Defendants. | Case No. 1:22-cr-00048-TMB-NC<br><br>ORDER ON DEFENDANT DENNIS MITSUNAGA'S EMERGENCY MOTION *IN LIMINE* NO. 24: TO EXCLUDE EVIDENCE OF CONFIDENTIAL PRETRIAL SERVICES COMMUNICATIONS OR, ALTERNATIVELY, FOR A LIMITING INSTRUCTION<br>**(Dkt. 776)** |

## I.    INTRODUCTION

Before the Court is Defendant Dennis Kuniyuki Mitsunaga's ("Mitsunaga") "Emergency Motion *in Limine* No. 24: to Exclude Evidence of Confidential Pretrial Services Communications or, Alternatively, for a Limiting Instruction" ("Motion No. 24").[1] Mitsunaga seeks to exclude a letter to Mitsunaga from United States Probation Officer ("USPO") Erin Patrick ("Patrick") prohibiting Mitsunaga's contact with certain persons as a special condition of Mitsunaga's pretrial release, as well as an attached list of persons with whom contact was prohibited ("No-Contact List") (together, the "No-Contact Letter").[2] Codefendants Keith Mitsuyoshi Kaneshiro, Terri Ann Otani, Aaron Shunichi

---

[1] Dkt. 776 (Defendant Mitsunaga's Motion No. 24).
[2] Dkt 174-2 at 1–2 (No-Contact Letter, October 24, 2022).

Fujii, Chad Michael McDonald, and Sheri Jean Tanaka ("Codefendants") took no position on Motion No. 24.[3] The United States filed a "Response in Opposition to Defendants' Motion *in Limine* No. 24" ("Response in Opposition").[4] The matter is fully briefed.

For the following reasons, the Court **DENIES** Motion No. 24, such that the No-Contact Letter is admissible.

## II.    BACKGROUND

Given the voluminous litigation in this matter, the Court assumes the Parties are familiar with the factual and procedural history of the case. The Court incorporates by reference the factual and procedural history included in its Order at Docket 484.

Relevant here, Motion No. 24 raises one issue: whether the No-Contact Letter to Mitsunaga from USPO Patrick laying out a condition of no-contact with specified persons as a special condition of Mitsunaga's pretrial release,[5] which Mitsunaga filed publicly in April 2023 as part of a Motion to Modify Conditions of Release,[6] is admissible.

### A.  Mitsunaga's Motion No. 24

Mitsunaga seeks "to exclude evidence and/or testimony of confidential U[nited] S[tates] Probation and Pretrial Services ("USPPS") communications, or, alternatively, for a limiting instruction."[7] Mitsunaga suggests that the United States "advised of its intention to admit" the No-Contact Letter and posited that the No-Contact Letter "is no longer

---

[3] *See* Dkt (absence).
[4] Dkt. 778 (United States' Response in Opposition).
[5] Dkt 174-2 at 1–2.
[6] Dkt. 174 (Motion to Modify Conditions of Release).
[7] Dkt. 776 at 2. While Mitsunaga frames the issue broadly, only the No-Contact Letter is at issue.

confidential because it was filed in this matter as an exhibit to a Motion to Modify Conditions of Release on April 4, 2023."[8]

Mitsunaga argues that the No-Contact Letter remains confidential and that therefore it cannot be introduced as evidence of consciousness of guilt under 18 U.S.C. § 3153(c).[9] Mitsunaga acknowledges that he filed the No-Contact Letter on the public docket as an exhibit to his April 2023 Motion to Modify Conditions of Release.[10] However, he argues that it remains barred by 18 U.S.C. § 3153(c) because it is "confidential pretrial services information that was developed by USPO Patrick in the course of performing pretrial services functions, which includes performing any post release investigation or supervision."[11] Mitsunaga contends the No-Contact Letter should remain confidential because he filed it associated with a bail determination as permitted under 18 U.S.C. § 3153(c)(1), and therefore it "is not information regularly appearing on the public docket—such as the Protective Order or the Court's order of release with conditions."[12] Therefore, Mitsunaga argues that introducing the No-Contact Letter "falls squarely within the strict prohibition of 18 U.S.C. § 3153(c)(3) and 'is not admissible on the issue of guilt' in this matter."[13]

---

[8] *Id.*
[9] *Id.* at 2–3.
[10] *Id.* at 3 (citing Dkt. 174).
[11] *Id.* at 4.
[12] *Id.* (citing 18 U.S.C. § 3153(c)(1) ("Except as provided in paragraph (2) of this subsection, information obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the purposes of a bail determination and shall otherwise be confidential.")).
[13] *Id.* at 5 (citing 18 U.S.C. § 3153(c)(3)).

Alternatively, Mitsunaga requests that the following limiting instruction be given if the Court admits evidence of "Court Orders and/or USPPS communications":[14]

> In this case there are court orders that prohibit unauthorized dissemination of protected material and prohibit certain contact with specified people. You have previously heard evidence that Dennis Mitsunaga allegedly attempted to influence the testimony of a witness, Rudy Alivado, through another witness Joanna Lau Kameoka. You may consider this evidence for its bearing on the question of Defendant Mitsunaga's knowledge and consciousness of guilt of the offenses charged in the indictment.
>
> Of course, it is for you to determine whether you believe this evidence and, if you do believe it, whether you accept it for the purposes offered. You may give it such weight as you feel it deserves.
>
> I instruct you that this evidence is admitted for your consideration only as it relates to Dennis Mitsunaga, and shall not be considered by you as to, or against, any other defendant.[15]

### B.  United States' Response in Opposition

Opposing the Motion No. 24, the United States confirms that it "intends to introduce evidence showing that Mitsunaga was prohibited by Court order from contacting witnesses and disseminating grand jury material," as this Court already ruled generally admissible as proposed, though perhaps not through USPO Patrick.[16] Further, the United States asserts that the No-Contact Letter, particularly the No-Contact List, "is not 'confidential' Pretrial Services information at all—it is part of Mitsunaga's release conditions."[17] It argues that

---

[14] *Id.* at 6.
[15] *Id.*
[16] Dkt. 778 at 3 (citing Dkt. 753 (Order on Motion No. 22) at 11–12).
[17] *Id.* at 1.

Mitsunaga cannot claim that the evidence is confidential because "the list is on the public docket of the case, filed publicly by Mitsunaga himself."[18]

Rather, the United States indicates that "to establish Mitsunaga's knowledge of the No-Contact Order," it will establish the following three facts "through the public records of this case":

> (1) by court order, Dennis Mitsunaga was prohibited from contacting witnesses in this case, including Rudy Alivado, whether directly, indirectly, or through third parties (ECF Nos. 21, 174-2);
>
> (2) Mitsunaga filed his own No-Contact [L]ist with the Court (ECF No. 174-2); and
>
> (3) by court order, Mitsunaga was prohibited from giving grand jury material to witnesses (ECF No. 47).[19]

The United States suggests that these are facts "not subject to reasonable dispute," citing but not expressly arguing that these facts could be admitted through Rule 201(b) which permits judicial notice of adjudicative facts.[20]

Further, the United States argues that "Mitsunaga is mistaken" that the No-Contact Letter is confidential under 18 U.S.C. § 3153 because it "falls outside the scope of § 3153(c)(1)'s confidentiality provision."[21] Rather, it argues, "[t]he [No-Contact Letter] is properly viewed as an extension of the Court's pretrial release order, as the order expressly

---

[18] *Id.* at 1–2.

[19] *Id.* at 3–4.

[20] *Id.* (citing Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")).

[21] *Id.* at 4–5.

included the forthcoming list."[22] It posits that "[v]iewed within the framework of § 3153(c)(1), the No-Contact List was not 'information obtained in the course of performing pretrial services functions'" because "Pretrial Services was acting as the Court's ministerial intermediary to ensure Mitsunaga's receipt of the Court-ordered No-Contact [L]ist."[23] Supporting this position, the United States clarifies that "[it] is not seeking to elicit information obtained by Pretrial Services or from Mitsunaga in the course of its interviews or supervision of Mitsunaga," so the underlying statutory concern with protecting the relationship between pretrial service officers and defendants does not apply.[24]

The United States also notes that Mitsunaga himself quotes the Ninth Circuit's position in *United States v. Santa*[25] that "[p]retrial services information does not include information appearing in the public records of the court."[26] It observes that here, Mitsunaga filed the  No-Contact Letter on the public docket over a year ago and that he "has never sought to remove it from the record or place it under seal."[27]

Alternatively, the United States suggests that "even if the No-Contact [L]etter was confidential at some point, Mitsunaga waived any confidentiality by filing it publicly."[28] Citing Ninth Circuit law on attorney-client privilege, spousal privilege, and voluntary

---

[22] *Id.* at 5.
[23] *Id.* at 6.
[24] *Id.*
[25] 769 F. App'x 450 (9th Cir. 2019).
[26] Dkt. 778 at 6–7 (quoting *Santa*, F. App'x at 452).
[27] *Id.* at 7.
[28] *Id.*

disclosure, the United States argues that this view of waiver "is how privileges operate; there is no reason to treat § 3153(c) differently."[29]

Regarding Mitsunaga's proposed limiting instruction, the United States clarifies that "[it] has no opposition to the Court providing a limiting instruction to govern the jury's review of the No-Contact Order, No-Contact List, and Protective Order," but requests the following modification:

> You have heard evidence that orders of the Court in this case prohibit the defendants from disseminating grand jury material and prohibit the defendants from contacting witnesses in this case, including Rudy Alivado. You have previously heard evidence that Dennis Mitsunaga allegedly attempted to influence the testimony of a witness, Rudy Alivado, through another witness, Joanna Lau Kameoka. You may consider the evidence of the Court orders prohibiting dissemination of grand jury material and prohibiting contact with witnesses only for its bearing on the question of Defendant Mitsunaga's knowledge and consciousness of guilt of the offenses charged in the indictment and for no other purpose.
>
> I instruct you that this evidence is admitted for your consideration only as it relates to Dennis Mitsunaga, and shall not be considered by you as to, or against, any other defendant.[30]

The United States also provides a redline version of the limiting instruction showing its proposed changes.[31]

---

[29] *Id.*
[30] *Id.* at 8.
[31] *Id.* at 10.

## III.   LEGAL STANDARD

*A.  Motions* in Limine

"A motion *in limine* is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence"[32] and may be used to request evidence be either excluded or admitted before trial.[33] Motions *in limine* are appropriate when the "mere mention of evidence during trial would be highly prejudicial."[34] "*[I]n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."[35]

A party seeking to exclude evidence through a motion *in limine* must satisfy a "high standard" and show the evidence is inadmissible on all potential grounds.[36] Otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[37]

*B.  Relevance and Prejudice*

Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence[] and . . . the fact is of consequence in

---

[32] *Barnard v. Las Vegas Metro. Police Dep't*, No. 2:03-cv-01524-RCJ-LRL, 2011 WL 221710, at *1 (D. Nev. Jan. 21. 2011); *Research Corp. Techs. v. Microsoft Corp.*, No. CV-01-658-TUC-RCJ, 2009 WL 2971755, at *1 (D. Ariz. Aug. 19, 2009).

[33] *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Fed. R. Evid. 609).

[34] *Barnard*, 2011 WL 221710, at *1 (quoting Black's Law Dictionary 1109 (9th ed. 2009)); *Research Corp.*, 2009 WL 2971755, at *1.

[35] *Ohler v. United States*, 529 U.S. 753, 758, n.3 (2000).

[36] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF Ry. Co. v. Quad City Testing Lab'y, Inc.*, No. CV-07-170-BLG-RFC, 2010 WL 4534406, at *1 (D. Mont. Oct. 28, 2010) (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

[37] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF*, 2010 WL 4534406, at *1 (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).

determining the action."[38] Relevant evidence is admissible unless the United States Constitution, a federal statute, the rules of evidence, or the Supreme Court provide otherwise; irrelevant evidence is inadmissible.[39] However, relevant evidence may still be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[40]

### C.  Evidence of Consciousness of Guilt

"[T]he concealment of evidence subsequent to a commission of a crime or evidence of conduct designed to impede a witness from testifying truthfully may indicate consciousness of guilt and should be placed before the trier of fact."[41] Further, the Ninth Circuit has stated that efforts to intimidate witnesses into "withholding information . . .  shows consciousness of guilt—second only to a confession in terms of probative value."[42] Further, the Ninth Circuit has held that evidence of witness tampering is admissible relative to other charges where it is "part and parcel of the allegations."[43]

---

[38] Fed. R. Evid. 401.

[39] Fed. R. Evid. 402.

[40] Fed. R. Evid. 403.

[41] *United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976); *see also United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996) ("[E]vidence of the [defendants'] attempts to induce witnesses to lie is indicative of consciousness of guilt and may be placed before the jury."); *United States v. Castillo*, 615 F.2d 878, 885 (9th Cir. 1980) ("An attempt by a criminal defendant to suppress evidence is probative of consciousness of guilt and admissible on that basis.").

[42] *United States v. Meling*, 47 F.3d 1546, 1557 (9th Cir. 1995).

[43] *United States v. Ho*, 651 F. Supp. 2d 1191, 1200–02 (D. Haw. 2009); *see, e.g., United States v. Begay*, 567 F.3d 540, 552 (9th Cir. 2009), *on reh'g en banc*, 673 F.3d 1038 (9th Cir. 2011) (finding evidence that defendant intimidated two government witnesses was admissible to show consciousness of guilt); *Meling*, 47 F.3d at 1558 (affirming district court's determination that an attempt to intimidate witnesses is admissible to show "consciousness of guilt—second only to a confession in terms of probative value"); *see also United States v. Rock*, 282 F.3d 548, 552 (8th

### D. Evidence Regarding Pretrial Services

According to 18 U.S.C. § 3153(c)(1), which governs the organization and administration of pretrial services:

> Except as provided in paragraph (2) of this subsection, information obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the purposes of a bail determination and shall otherwise be confidential.

Paragraph (2) provides certain exceptions to the confidentiality requirement, including:

> (A) by qualified persons for purposes of research related to the administration of criminal justice;
>
> (B) by persons under contract under section 3154(4) of this title;
>
> (C) by probation officers for the purpose of compiling presentence reports;
>
> (D) insofar as such information is a pretrial diversion report, to the attorney for the accused and the attorney for the Government; and
>
> (E) in certain limited cases, to law enforcement agencies for law enforcement purposes.[44]

---

Cir. 2002) (affirming denial of the defendant's motion to sever felon-in-possession charge from witness tampering charge; stating "[w]here evidence that a defendant had committed one crime would be probative and thus admissible at the defendant's separate trial for another crime, the defendant does not suffer any additional prejudice if the two crimes are tried together" (internal quotations and citations omitted)); *United States v. Gatto*, 995 F.2d 449, 454 (3d Cir. 1993) ("It is well-established that evidence of threats or intimidation is admissible under Rule 404(b) to show a defendant's consciousness of guilt . . . ."); *United States v. Balzano*, 916 F.2d 1273, 1281 (7th Cir. 1990) (applying general rule in affirming trial court's denial of motion to sever that "evidence of a defendant's attempts at intimidation of a witness or of a person cooperating with a government investigation is admissible to demonstrate a defendant's 'consciousness of guilt' of the charges which were the subject of the witness' testimony or cooperation"); *United States v. Fagan*, 821 F.2d 1002, 1007 (5th Cir. 1987) (explaining that evidence of mail fraud is admissible in a trial for witness tampering to show motive, while evidence of witness tampering is admissible in a trial for mail fraud to show "guilty knowledge"); *United States v. Monahan*, 633 F.2d 984, 985 (1st Cir. 1980) (stating that "[e]vidence of threats to witnesses can be relevant to show consciousness of guilt," particularly where a defendant's conduct "implies a knowledge and fear of particular and damaging testimony intimately related to the prosecution at hand").

[44] 18 U.S.C. § 3153(c)(2).

Moreover, paragraph (3) stipulates that:

> Information made confidential under paragraph (1) of this subsection is not
> admissible on the issue of guilt in a criminal judicial proceeding unless such
> proceeding is a prosecution for a crime committed in the course of obtaining
> pretrial release or a prosecution for failure to appear[.][45]

"[C]ourts have ruled that [information from a pretrial services report] may be used
to impeach a defendant."[46] Beyond use for impeachment, the Seventh Circuit has observed
that "[j]udges may certainly order disclosure permitted by the [Bail Reform] Act in
appropriate circumstances."[47] But "[d]istrict courts should exercise this power in
accordance with the pretrial services regulations and any relevant local rules."[48] Indeed,
the Seventh Circuit reversed a jury's conviction where a judge erroneously admitted a
USPO officer's testimony without showing there was good cause for disclosure under the
four factors set forth in the Guide to Judiciary Policy[49] or that the disclosure was "limited
to the minimum information necessary to carry out the purpose of the disclosure" and
consistent with all regulations and local rules.[50]

---

[45] 18 U.S.C. § 3135(c)(3).
[46] *United States v. Kerr*, 981 F.2d 1050, 1054 n.1 (9th Cir. 1992) (citing *United States v. Stevens*, 935 F.2d 1380, 1395 (3d Cir. 1991); *United States v. Wilson*, 930 F.2d 616, 619 (8th Cir.), *cert. denied*, 502 U.S. 872 (1991)).
[47] *United States v. Chaparro*, 956 F.3d 462, 476 (7th Cir. 2020).
[48] *Id.*
[49] *See* 8A Guide to Judiciary Policy § 240.20.30(i) ("The judge may order the disclosure of pretrial services information if such officer finds that there is good cause for such disclosure after considering: (1) any promise of confidentiality to the source of the information; (2) any harm that such disclosure might cause to any person; (3) the objective of confidentiality, as stated in the confidentiality regulations; and (4) the purpose of the disclosure.").
[50] *Chaparro*, 956 F.3d at 476.

## IV.    DISCUSSION

The Court concludes that the No-Contact Letter is not a confidential pretrial services communication protected by 18 U.S.C. § 3153. Rather, the No-Contact Letter is a public court record pursuant to the Court's pretrial release order that does not implicate the statutory concerns regarding safeguarding confidentiality in the pretrial services functions and, moreover, appears in the public docket.

"Congress did not impose a blanket prohibition on the use of pretrial services information."[51] "[T]he confidentiality provided under § 3153(c)(1) is not absolute, but is instead subject to exceptions."[52] When the Ninth Circuit decided *Santa*, the relevant Guide to Judiciary Policy section defining confidential pretrial services information articulated: "Pretrial services information does not include information appearing in the public records of the court."[53] Currently, as the United States points out, the Guide to Judiciary Policy section denotes that "[c]onfidentiality regulations do not apply to pretrial services information that normally appears in the court public records, such as demographic or biographical information."[54]

Here, the content of the No-Contact Letter does not implicate the statutory concerns regarding privacy between defendants and pretrial services officers warranting protection

---

[51] *United States v. Stevens*, 935 F.2d 1380, 1396 (3d Cir. 1991); *see id.* (noting that appellant "exaggerates a bit Congress's confidentiality concerns" and that "section 3153(c)(2)(C) creates an exception to the confidentiality requirement that requires a [Pretrial Services Officer] to disclose information gathered during the pretrial services process to the defendant's probation officer").
[52] *United States v. Morrison*, 778 F.3d 396, 400 (2d Cir. 2015).
[53] *United States v. Santa*, 769 F. App'x 450, 452 (9th Cir. 2019) (citing 8A Guide to Judiciary Policy, App'x 5A: Confidentiality Regulations § 2(A) (April 14, 2010)).
[54] Dkt. 778 at 6 n.3 (quoting 8A Guide to Judiciary Policy § 240.20.20(b)).

under 18 U.S.C. § 3153. Rather, the No-Contact Letter merely relays the no-contact provisions of Mitsunaga's release conditions, which are a matter of public record.[55] The Court is persuaded by the United States' argument that the letter contains no confidential "information obtained in the course of performing pretrial services functions," but rather is "properly viewed as an extension of the Court's pretrial release order."[56] Upon review of the letter, the Court finds persuasive the United States' argument that "USPPS was acting as the Court's ministerial intermediary to ensure Mitsunaga's receipt of the Court-ordered No-Contact list" as directed.[57] Further, the Court observes that the No-Contact Letter itself appears in the public docket. Moreover, it appears in the public docket because Mitsunaga filed it himself.[58] Therefore, the Court concludes that the No-Contact Letter is not confidential information protected by 18 U.S.C. § 3153.

Thus concluding, the Court proposes the following limiting instruction based on the United States' proposed amendments to Mitsunaga's proposed limiting instruction:

> You have heard evidence that Court orders in this case prohibit the defendants from disseminating grand jury material and from contacting

---

[55] In fact, the Ninth Circuit in *Santa* contemplated such a circumstance, observing that the contested statements, in that case between a USPO officer and a third party, "are not part of the public record" and that "if they were, there would be no need to call [the USPO officer] to testify." *Id.* at 452.

[56] Dkt. 778 at 5–6.

[57] *See* Dkt. 21 (Minutes, Initial Appearance; Arraignment and Plea as to Mitsunaga) at 2 ("Contact is prohibited directly, indirectly, or through third parties with: co-defendants, co-conspirators, or witnesses in this and any related case. The U.S. Attorney's Office will provide Pretrial Services with initial and updated lists of names of persons with whom contact is prohibited.").

[58] The Court is not wholly convinced that waiving confidentiality under 18 U.S.C. § 3153 operates like waiving spousal privilege or attorney-client privilege. *See Santa*, 769 F. App'x 450 at 453 n.4 ("But the protections of § 3153 are not [the defendant's] to waive. [Pretrial Services Officers] are court officers, and they may disclose confidential pretrial services information only as provided by law and with the court's permission."). But the Court need not reach this point as it concludes that no confidential information exists that would require waiver.

witnesses in this case, including Rudy Alivado. You have previously heard evidence that Dennis Mitsunaga allegedly attempted to influence the testimony of a witness, Rudy Alivado, through another witness, Joanna Lau Kameoka. You may consider the evidence of the Court orders prohibiting dissemination of grand jury material and prohibiting contact with witnesses only for its bearing on the question of Defendant Mitsunaga's knowledge and consciousness of guilt of the offenses charged in the indictment and for no other purpose.

I instruct you that this evidence is admitted for your consideration only as it relates to Dennis Mitsunaga, and shall not be considered by you as to, or against, any other defendant.[59]

The parties are directed to confer and submit any objections to the above proposed limiting instruction, supported by legal authority, **on or before 8:00 PM on May 7, 2024.**

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Mitsunaga's Motion No. 24 at Docket 776.

IT IS SO ORDERED.

Dated this 7th day of May, 2024.

/s/   *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[59] Dkt. 778 at 8.