UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>                    Defendants,<br><br>and<br><br>MITSUNAGA & ASSOCIATES, INC.<br><br>                    Intervenor. | Case No. 1:22-cr-00048-TMB-NC<br><br>ORDER ON DEFENDANTS' MOTION<br>FOR JUDGMENT OF ACQUITTAL<br>**(Dkt. 799)** |

## I.   INTRODUCTION

Before the Court are Defendants Keith Mitsuyoshi Kaneshiro, Dennis Kuniyuki Mitsunaga, Terri Ann Otani, Aaron Shunichi Fujii, Chad Michael McDonald, and Sheri Jean Tanaka's ("Defendants") Motion for Judgment of Acquittal (the "Motion").[1] The United States responded in opposition ("Response in Opposition").[2] The matter is fully

---

[1] Dkt. 799 (Defendants' Motion for Judgment of Acquittal).
[2] Dkt. 821 (United States' Response in Opposition).

briefed, and the Court finds that a hearing on the issues is not necessary for resolution at this time.

Concluding that the evidence is sufficient to support a conviction for each of the Defendants on each of the two counts charged, the Court DENIES the Motion.

## II.   BACKGROUND

Given the voluminous litigation in this matter, the Court assumes the Parties are familiar with the factual and procedural history of the case. The Court incorporates by reference the factual and procedural history included in its Order at Docket 484.

Relevant here, upon close of the Government's case, the Defendants moved for a judgment of acquittal under Federal Rule of Criminal Procedure ("Rule") 29, indicating that they had prepared a written brief.[3] The United States then indicated that it would prepare briefing in response.

### A. Defendants' Motion for Judgment of Acquittal

Asserting that the Court should enter a judgment of acquittal on both Counts One and Two, Defendants raise three arguments: first, that there is insufficient evidence regarding an agreement to commit bribery under Count One; second, that the applicable statute for Count Two is unconstitutionally vague as applied; and third, that there is insufficient evidence of a conspiracy against constitutional and statutory rights under Count Two.[4]

---

[3] Dkt. 800 (Minute Entry).
[4] Dkt. 799 at 2.

1. Evidence on Count One.

Defendants argue that the United States "failed to introduce sufficient evidence to sustain a conviction for the *quid pro quo* bribery conspiracy charged in Count One."[5] Specifically, they assert that in the United States' case-in-chief, no witnesses testified to hearing "Kaneshiro agree with any other defendants to prosecute Mau in exchange for campaign contributions"; "[n]or did any documentary evidence establish this alleged explicit agreement."[6]

Defendants point to law establishing that a *quid pro quo* must "be clear and unambiguous, leaving no uncertainty about the terms of the bargain."[7] Here, they argue, the evidence introduced at trial would allow the jury at "most" to "speculate," citing Ninth Circuit law establishing that "'mere speculation' is 'insufficient to support a verdict.'"[8] Pointing to the evidence of the "First Meeting (October 4, 2012)"; "Second Meeting (January 24, 2013)"; and "Case Reassignment (August 2014)," Defendants assert that the evidence "is simply insufficient to establish the requisite *quid pro quo*."[9] Regarding the First Meeting, the Defendants suggest that the evidence "does not establish [that] Kaneshiro did anything other than act for the benefit of a constituent shortly 'before or after campaign contributions [were] . . . received from those beneficiaries,' which the

---

[5] *Id.* at 7.
[6] *Id.*
[7] *Id.* at 8 (quoting *United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir. 1992) (citing *McCormick v. United States*, 500 U.S. 257, 273 (1991)); citing *United States v. Kincaid-Chauncey*, 556 F.3d 923, 943 (9th Cir. 2009)).
[8] *Id.* at 8–9 (quoting *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (en banc); citing *Briceno v. Scribner*, 555 F.3d 1069, 1079 (9th Cir. 2009); *O'Laughlin v. O'Brien*, 568 F.3d 287, 301 (1st Cir. 2009); *Gonzales v. Gipson*, 701 F. App'x 558, 561 (9th Cir. 2017)).
[9] *Id.* at 9–12.

Supreme Court has held does not equate to a *quid pro quo*."[10] Regarding the Second Meeting, the Defendants suggest that the "evidence established that Mitsunaga and others made campaign contributions to Kaneshiro near the date of this meeting, but once again this is insufficient to establish that a 'meeting of the minds' on a *quid pro quo* occurred on January 24, 2013."[11] Regarding the Case Reassignment, Defendants argue that the "evidence, viewed in the light most favorable to the government, at most establishes that Kaneshiro asked [Deputy Prosecuting Attorney Jacob] Delaplane to take an independent look at the case in light of the new evidence."[12] They also note that Delaplane and Dwight Nadamoto both testified that Kaneshiro never pressured them to charge Mau, which they argue "weigh[s] against the existence of an illicit *quid pro quo* to prosecute her."[13] Altogether, Defendants suggest this evidence "is insufficient to establish the existence of a *quid pro quo* between Kaneshiro and any of the [Mitsunaga and Associates, Inc. ("MAI")] defendants" such that a judgment of acquittal should be entered on Count One.[14]

### 2. Vagueness of § 241 as Applied under Count Two.

Next, Defendants argue that the United States' "theory of criminal liability under 18 U.S.C. § 241" that Defendants "conspired against Mau's statutory 'right to file a lawsuit in federal court' by using oppressive litigation tactics against her" "must be disallowed as unconstitutionally vague as applied."[15] Here, Defendants argue, the United States

---

[10] *Id.* at 10 (quoting *McCormick*, 500 U.S. at 272).
[11] *Id.* (citing *Carpenter*, 961 F.2d at 827).
[12] *Id.* at 11.
[13] *Id.*
[14] *Id.* at 11–12.
[15] *Id.* at 12.

"introduced no evidence that these filings were improper or frivolous, and even Mr. Osaki conceded that MAI was never sanctioned for filing them."[16] "To the contrary," they argue, the evidence established that there was nothing particularly unusual in the way that MAI defended the case."[17]

Further, Defendants suggest that the statute is vague as applied because "[n]othing in the plain language of § 241 or its 150-year history of enforcement would put defendants on fair notice that MAI's litigation tactics in the Mau civil case (or in the unemployment proceedings that came before) could be a federal felony with a possible ten-year sentence."[18] They remind the Court that in civil litigation, "a vast range of common conduct is specifically done in order to 'injure, oppress, threaten and intimidate' an adversary—and § 241 provides no guidance to the MAI defendants as to what conduct was permissible in the Mau civil case and what was not."[19]

Noting the United States' prior argument that "there is a material, discernable difference between paying off the city's most powerful prosecutor in order to pursue and punish an adversary, and threatening a civil action,"[20] Defendants present the following "thought experiment":

> [I]magine that this case did **not** involve an allegation that the MAI defendants bribed defendant Kaneshiro. In such a scenario, in what sense could MAI have been on notice that its civil litigation tactics—taken in response to Mau's federal discrimination lawsuit—could constitute a crime?[21]

---

[16] *Id.* at 15.
[17] *Id.*
[18] *Id.*
[19] *Id.* at 15–16.
[20] *Id.* at 16 (citing Dkt. 171 (United States' Response to Motion to Dismiss Count Two)).
[21] *Id.* (emphasis in original).

Defendants also observe that the United States "has never explained how MAI's litigation tactics—independent of any alleged bribery—could survive an as-applied vagueness challenge," reiterating their previous arguments "urg[ing] the Court to find that a *quid pro quo* is an essential element of Count Two, as charged in this case."[22] Therefore, Defendants argue, Count Two is unconstitutionally vague as applied because § 241 provides constitutionally inadequate notice considering that "the requirement for clarity is enhanced" for statues involving criminal sanctions.[23]

### 3. Evidence on Count Two.

Finally, Defendants argue that the "evidence fails to establish that defendants conspired against Mau's constitutional or statutory rights" for either of the two rights alleged under Count Two, such that a judgment of acquittal should be entered.[24] First, Defendants suggest that the "evidence at trial failed to establish that the [D]efendants conspired, within the statute of limitations, to have Ms. Mau 'seized' within the meaning of the Fourth Amendment."[25] Rather, they argue, Mau "remained at liberty throughout the duration of the state prosecution" because "[s]he easily posted bail, and that bail was exonerated on February 24, 2015" and "[h]er pretrial conditions were never onerous to begin with, and all travel restrictions were lifted a few months after charges were filed."[26] Moreover, pointing to the Court's prior rulings consistent with Ninth Circuit authority that

---

[22] *Id.* at 16 & n.2.
[23] *Id.* at 16–17 (quoting *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2012)).
[24] *Id.* at 17.
[25] *Id.*
[26] *Id.* at 18.

"pretrial restrictions" alone would not constitute a seizure, they suggest that "because her bond was exonerated and Ms. Mau was released on her own recognizance on February 24, 2015, the jury cannot conclude, based on the evidence introduced at trial, that a cognizable seizure occurred after June 1, 2017—the cut-off date for the statute of limitations."[27] Further, they suggest that "the evidence introduced at trial failed to establish that all the [D]efendants conspired with the *specific intent* of interfering with specific Fourth Amendment rights, an essential element for § 241."[28]

Second, Defendants assert that "evidence at trial also failed to establish that the [D]efendants conspired against Mau's statutory right to 'file a lawsuit in federal court'" to support the "various theories of this conspiracy" beyond a reasonable doubt.[29] On one hand, they argue, if "Count Two rests on a theory of false evidence, the government has failed [to] introduce sufficient evidence that any of the MAI defendants knowingly submitted any false evidence to the relevant authorities" given "the amorphous testimony of Rudy Alivado, who has said many contradictory things over the years and also to the jury in this case."[30] Pointing to various inconsistencies in Alivado's testimony, Defendants urge that the trial evidence "did not establish that Alivado gave false testimony in 2014— which necessarily means that the evidence is insufficient to establish that the MAI

---

[27] *Id.*
[28] *Id.* at 19 (emphasis in original).
[29] *Id.*
[30] *Id.* at 20.

[D]efendants knowingly submitted that 'false' testimony to the [Department of the Prosecuting Attorney] or the reviewing judge."[31]

On the other hand, Defendants argue, if "Count Two rests on a theory of aggressive litigation tactics . . . such evidence is insufficient to establish criminal conduct" because "it was Laurel Mau—not the MAI [D]efendants—who brought both the unemployment benefit proceedings and her federal discrimination lawsuit," while "MAI was forced to defend itself after Mau dragged the company into federal court."[32] Therefore, Defendants argue, the trial evidence "is insufficient to sustain a conviction based on the litigation tactics of the MAI [D]efendants."[33] Finally, Defendants echo their prior argument regarding specific intent under § 241 to suggest that "the evidence introduced at trial failed to establish that all of the [D]efendants conspired with the *specific intent* of interfering with Mau's 'right to file a lawsuit in federal court.'"[34]

In sum, the Defendants assert that for these reasons, the Court should enter a judgment of acquittal under Rule 29 as to both Counts 1 and 2.[35]

B. United States' Response in Opposition

Opposing, the United States argues that "Defendants' motion should be rejected in all respects"[36] because "[t]he evidence is sufficient to convict all Defendants for all charged crimes," including "Defendants' as-applied vagueness challenge to one crime charged in

---

[31] *Id.*
[32] *Id.* at 21.
[33] *Id.*
[34] *Id.* at 22 (emphasis in original).
[35] *Id.* at 22–23.
[36] Dkt. 821 at 2.

the Count Two conspiracy under 18 U.S.C. § 241."[37] The United States' Response in Opposition begins with "highlight[ing] select categories of evidence" at trial.[38]

1. Evidence on Count One.

First, the United States asserts that "the jury has heard abundant evidence proving the existence of the charged *quid pro quo* bribery conspiracy," such that "a rational trier of fact could find the necessary elements of the conspiracy beyond a reasonable doubt."[39] Pointing to the substantial weight of Ninth Circuit law supporting the principle that a *quid pro quo* agreement may be established by both direct and circumstantial evidence,[40] the United States suggests that here:

> [T]he direct and circumstantial evidence, including Kaneshiro's highly unfair and irregular treatment of Mau's case, discarding of Nadamoto's investigation, receipt of significant money from Mitsunaga (including in an envelope stuffed with checks), reassignment of the case to Delaplane, provision of Branco to rubber-stamp the felony information, call for an appeal, and more, is more than enough to prove there was a "meeting of the minds on a quid pro quo.[41]

---

[37] *Id.*
[38] *Id.* at 4; *see id.* at 4–17.
[39] *Id.* at 17 (citing *United States v. Figueroa-Paz*, 468 F.2d 1055, 1058 (9th Cir. 1972) (agreeing with district court that "the pattern of the evidence implicating appellant was 'simply too good to be true. . . . I think that the jury could . . . reasonably find beyond a reasonable doubt that this was a joint venture.'")).
[40] *Id.* at 17–18 (citing *United States v. Benjamin*, 95 F.4th 60, 67 (2d Cir. 2024); *United States v. Blagojevich*, 794 F.3d 729, 738 (7th Cir. 2015) ("'Nudge, nudge, wink, wink, you know what I mean' can amount to extortion under the Hobbs Act."); *United States v. Inzunza*, 638 F.3d 1006, 1014 (9th Cir. 2011) ("An official may be convicted without evidence equivalent to a statement such as: 'Thank you for the $10,000 campaign contribution. In return for it, I promise to introduce your bill tomorrow.' The connection between the explicit promise of official action and the contribution must be proved, but the proof may be circumstantial."); *United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir. 1992).
[41] *Id.* at 18.

Turning to the Defendants' arguments, the United States suggests that the Defendants' claim that "Ms. Nakamura testified that she did not recall **any** meetings with Kaneshiro where campaign contributions were discussed" is not dispositive on the issue of a *quid pro quo* because the witness's credibility is a question for the jury; because whether campaign contributions were "discussed" is "legally irrelevant" considering a "*quid pro quo* agreement need not be verbally expressed"; and because other evidence tends to show that Nakamura "downplay[ed]" when "Otani met Kaneshiro and Nakamura for lunch and handed over an envelope filled with thousands of dollars in campaign contributions."[42] Further, the United States suggests that the Defendants' argument regarding "additional evidence [that] emerged about Mau's criminal conduct" in her civil trial testimony "necessarily violates the Rule 29 standard, which requires the Court to draw all reasonable inferences from the evidence in favor of the prosecution" and is "demonstrably weak in any event" because of the evidence that emerged afterward.[43]

Overall, the United States maintains, "there is abundant evidence to support the bribery conspiracy" such that "[t]he jury should decide whether the conspirators are guilty of that charge."[44]

### 2. Vagueness of § 241 as Applied.

Next, the United States asserts that § 241 is not vague as applied here because "anyone with 'ordinary intelligence' would know that falsifying evidence against an

---

[42] *Id.* at 19.
[43] *Id.* at 20.
[44] *Id.*

opponent and bribing a prosecutor to bring charges against an opponent, in response to that opponent exercising her right to file a federal lawsuit, is criminally prohibited conduct."[45] The United States points to the United States Supreme Court's statements in *United States v. Price*[46] that "[t]he language of § 241 is plain and unlimited"[47] such that it has "a sweep as broad as its language."[48] Further, the United States points out, as the Supreme Court observed in *United States v. Guest*,[49] "when § 241 speaks of 'any right or privilege secured . . . by the Constitution or laws of the United States,' it means precisely that."[50]

The United States notes that "the Court rejected the Defendants' claim that the right to file a federal lawsuit did not fall within § 241's broad sweep."[51] Further, at this stage of trial, after the full presentation of the prosecution's case-in-chief, the United States argues, "there is no vagueness issue" because "[t]he scope of the evidence proving the conspiracy dooms Defendants' vagueness claim."[52] Noting the broad sweep of § 241, the United States argues that the statute provides reasonable notice "that bringing false accusations against a person, paying the prosecutor to initiate a criminal action, and presenting false information to the judiciary to get charges to stick, all because an opponent invoked her federal right to file a lawsuit, would invite criminal sanction."[53] It recommends that the Court reject the Defendants' proposed "thought experiment" as a misdirection because "[v]ery little of this

---

[45] *Id.* at 20–21.
[46] 383 U.S. 787 (1966).
[47] *Id.* at 800.
[48] *Id.* at 801.
[49] 383 U.S. 745 (1966).
[50] Dkt. 821 at 21 (quoting *Guest*, 383 U.S. at 753).
[51] *Id.* at 21 (citing Dkt. 195 (Order on Motion to Dismiss) at 12).
[52] *Id.* at 22–23.
[53] *Id.* at 22–23.

case falls within any reasonable definition of 'aggressive litigation tactics'" and the relevant "facts include the whole scope of wrongful conduct engaged in by the conspirators."[54] For example, the United States points out, "it is not 'aggressive litigation' to pay the prosecutor to prosecute an opponent,"[55] nor to "suborn perjury," "lie in declarations," "lie to the Magistrate Judge," "file a false police report against a courtroom adversary," nor "refer an opponent for felony prosecution."[56] Therefore, the United States suggests, "[t]he criminality of the Defendants' conduct is crystal clear," and Count Two should not be dismissed on vagueness grounds.[57]

### 3. Evidence on Count Two.

Last, the United States suggests that "[t]he conspiracy against Mau's rights is more than sufficiently established" by the evidence at trial.[58] Contrary to "Defendants['] claim that the evidence at trial is insufficient to establish they conspired to have Mau seized under the Fourth Amendment within the statute of limitations period," the United States argues that "there is ample evidence following [June 1, 2017]—including Kaneshiro's call to appeal the dismissal of Mau's case—establishing the conspiracy to deprive Mau of her Fourth Amendment rights remained ongoing within the limitations period."[59] Further, the United States asserts, the Defendants' claim regarding an alleged failure "to establish that all the [D]efendants conspired with the *specific intent* of interfering with specific

---

[54] *Id.* at 23.
[55] *Id.* at 23–24.
[56] *Id.* at 23–24.
[57] *Id.* at 24.
[58] *Id.*
[59] *Id.*

Fourth Amendment rights" should be rejected.[60] Rather, it asserts, "[t]he trial record is replete with evidence—some of which is recounted above, and all of which must be viewed in the light most favorable to the United States—establishing the intent of the conspirators to 'injure, oppress, threaten, or intimidate' Mau in the free exercise or enjoyment of her right to be free from unreasonable seizures."[61]

The United States also suggests that Defendants are incorrect "that the evidence failed to establish that they conspired against Mau's right to file a lawsuit in federal court" because the evidence at trial showed "Dennis Mitsunaga started his courtship of Kaneshiro within *a week* after MAI received Mau's federal lawsuit."[62] This was followed, they suggest, by evidence of "a bribery scheme, false declarations, perjured testimony, Kaneshiro's discarding of all prosecutorial judgment and protocol, Tanaka's use of Kaneshiro's office . . . to obtain information in [Mau's] civil case, Tanaka's use of Kaneshiro's '21-month investigation' [against] Mau in the civil case, and more."[63]

Further, the United States reminds the Court that Defendants' arguments regarding witness credibility, particularly regarding witness Rudy Alivado's testimony, "are not cognizable in the Rule 29 context."[64] They note that "Alivado's testimony that Tanaka coached him before his testimony, his false testimony itself, Tanaka's provision of his false testimony to inject into the grand jury proceedings, and Dennis Mitsunaga's attempt to

---

[60] *Id.* at 25 (quoting Dkt. 799 at 19).
[61] *Id.*
[62] *Id.* (emphasis in original).
[63] *Id.* at 25–26.
[64] *Id.* at 26.

tamper with Alivado's testimony, is additional substantial evidence supporting the charged conspiracy to violate [Mau's] civil rights."[65] Further, the United States suggests "abundant evidence supports the truth of Alivado's testimony that Sheri Tanaka coached him to lie at the federal civil trial."[66] Regardless, it observes, "Alivado's credibility . . . is beyond the scope of Rule 29 (along with all other credibility questions)."[67]

Defendants' remaining points, the United States suggests, are "unpersuasive arguments about the trial evidence and specific intent, including that evidence of "aggressive litigation tactics" is insufficient to establish criminal conduct" that are sufficiently addressed by the evidence presented at trial.[68] For these reasons, the United States suggests the Court should deny Defendants' Motion.[69]

### III.   LEGAL STANDARD

Pursuant to Rule 29(a):

> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction.

A court will deny a Rule 29 motion for judgment of acquittal if "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

---

[65] *Id.* at 27.
[66] *Id.*
[67] *Id.*
[68] *Id.* at 28.
[69] *Id.*

essential elements of the crime beyond a reasonable doubt."[70] The district court must draw all reasonable inferences from the evidence in favor of the prosecution.[71]

"[I]t is not the district court's function to determine witness credibility when ruling on a Rule 29 motion."[72] Rather, "it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts."[73]

## IV. DISCUSSION

Viewing the evidence in the light most favorable to the United States, the Court concludes a rational trier of fact could have found the essential elements of each crime as to each defendant beyond a reasonable doubt.

The Defendants argue that the United States failed to produce sufficient evidence at trial to support a conviction on either of the charged counts. The United States' response includes a review of the essential elements of each count charged and a detailed account of the evidence from which it argues a rational jury could convict each defendant of both counts. Having carefully reviewed the briefing, particularly the United States' review of the evidence supporting each count, the Court concludes—without repeating the details here—that the United States has produced sufficient evidence to support each element of each count.

---

[70] *United States v. Charley*, 1 F.4th 637, 643 (9th Cir. 2021).
[71] *United States v. Johnson*, 297 F.3d 845, 868 (9th Cir. 2002).
[72] *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002).
[73] *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977).

For example, the United States produced ample evidence supporting that: "[o]ther MAI employees did side jobs using MAI resources without repercussion"; "Mau was fired within hours after delivering her reply letter to Dennis Mitsunaga"; "[t]he EEOC confers Mau the right to sue MAI"; "[o]ne month after Mau received the right to sue, Fujii file[d] a false police report against Mau and Stanford Masui"; "Mau file[d] her federal lawsuit on August 20, 2012"; "Carl Osaki mail[ed] the complaint to Tanaka on September 21, 2012"; "[w]ithin seven days after Osaki mail[ed] the complaint to Tanaka, Mitsunaga start[ed] courting Kaneshiro"; "a yearslong bribery relationship between Kaneshiro and Mitsunaga" was established by the evidence at trial; a "flow of money" was sent "in exchange for Kaneshiro's agreement to investigate and prosecute Mau"; "Sheri Tanaka hid evidence from Carl Osaki, then lie[d] to the Court"; "[a]fter lengthy investigation, Dwight Nadamoto [found] no crime"; "Kaneshiro ke[pt] [the case] alive anyway"; "Sheri Tanaka suborn[ed] false testimony from Rudy Alivado at Mau's civil trial"; "Terri Otani file[d] a malicious, false tax complaint"; "Mau [was] arrested"; "[t]he civil rights violations start[ed] coming to light"; "[o]ver Kaneshiro's objection, the case [was] dismissed"; "Kaneshiro call[ed] for an appeal"; the "grand jury testimony of Chad McDonald, Aaron Fujii, and Terro Otani" was "facially incredible" and "establish[ed] the existence of the charged conspiracies"; "Terri Otani sought to intimidate her niece into not providing truthful testimony before the grand jury"; "Sheri Tanaka drove an upcoming Grand Jury witness, Joann Aurello, out of the city" and "tried to pressure Aurello [in]to making specific statements in the Grand

Jury"; and that "mid-trial, Dennis Mitsunaga flagrantly tampered with Rudy Alivado's testimony through Joanna Kameoka."[74]

The Court finds this evidence establishes each defendant's involvement in the charged conspiracies, including testimony from dozens of witnesses from MAI and the City and County of Honolulu Department of Prosecuting Attorney; several law enforcement and judiciary employees; audio recordings of grand jury testimony; phone records; campaign donation records; photographic and other recorded evidence from relevant incidents at MAI's offices and at court appearances; architectural design and project descriptions; relevant police reports and declarations from Aaron Fujii and Chad McDonald; voicemails from Terri Otani; evidence of MAI's business practices demonstrating that Mau was treated differently from other employees; past footage of Kaneshiro; and testimony from Rudy Alivado and Joanna Kameoka establishing that Sheri Tanaka "coached" Alivado to lie before the 2014 federal jury and that Dennis Mitsunaga attempted to tamper with Alivado's testimony before this jury.

The Court further declines to find that § 241 is vague as applied. The Court rejects the Defendants' misleadingly narrow proposition that the charged conduct in this case centers solely on "MAI's litigation tactics in the Mau civil case (or in the unemployment proceedings that came before)," such that § 241 would not provide clear guidance on what within "the vast range of common conduct is specifically done in order to 'injure, oppress, threaten and intimidate' an adversary" in civil litigation.[75] Contrary to the Defendants'

---

[74] Dkt. 821 at 4–17.
[75] *Id.* at 15–16.

portrayal, the scope of evidence that the United States presented relevant to the violation of § 241 charged in Count Two far exceeds a limited examination of MAI's litigation tactics in the Mau civil case alone. Rather, as the United States points out, the scope of evidence is significantly broader relevant to the DPA's investigation and prosecution of Mau, and in that context, the statute gives clear notice "that bringing false accusations against a person, paying the prosecutor to initiate a criminal action, and presenting false information to the judiciary to get charges to stick, all because an opponent invoked her federal right to file a lawsuit, would invite criminal sanction."[76] This conduct, supported by the evidence that the United States presented at trial, is well within the broad sweep of the language of § 241 and the rights it encompasses. Therefore, concluding that statute's language as applied clearly and sufficiently puts the Defendants on notice that such conduct is criminal, and agreeing with the United States that the criminality of such conduct "is crystal clear," the Court finds that the statute is not unconstitutionally vague as applied.

Construing all the evidence in the light most favorable to the United States, the Court finds that the evidence is sufficient such that a rational jury could sustain a conviction beyond a reasonable doubt as to each defendant on both counts. Accordingly, the Court **DENIES** the Motion.

---

[76] *Id.*

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion.

IT IS SO ORDERED.

Dated this 12th day of May, 2024.

/s/  *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE
